**ROBERT A. SOLOMON, P.C.**
Robert A. Solomon
91 Pacific Street
Newark, New Jersey 07105
(973) 344-6587 Telephone

**FRANK & BIANCO LLP**
Marvin L. Frank
New York, New York 10016
(212) 682-1853 Telephone

**NABLI & ASSOCIATES, P.C.**
Peter Y. Lee
Khaled (Jim) El Nabli
60 East 42nd Street, Suite 1101
New York, New York 10165
(212) 808-0716 Telephone

*Counsel for Plaintiff and the Class*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **AHMED KAMAL**, on behalf of himself and the putative class, <br><br> Plaintiff, <br> v. <br><br> **J. CREW GROUP, INC.**; <br> **J. CREW INC.**; <br> **J. CREW INTERMEDIATE LLC**; <br> **J. CREW INTERNATIONAL, INC.**; <br> **J. CREW OPERATING CORP.**; <br> **J. CREW SERVICES, INC.**; <br> **CHINOS HOLDINGS, INC.**; and <br> **CHINOS ACQUISITION CORPORATION**, <br><br> Defendants. | Civil Action No.: 2:15-cv-190-WJM-MF <br><br> *ELECTRONICALLY FILED* <br><br><br> **AMENDED CLASS ACTION COMPLAINT** <br><br> **Jury Trial Demanded** |

Plaintiff, Ahmed Kamal, on behalf of himself and all others similarly situated, through his undersigned attorneys, by way of his Amended Class Action Complaint, alleges as follows:

## OVERVIEW OF THE ACTION

1.     This is a class action based upon Defendants' violation of the Fair and Accurate Credit Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act, 15 U.S.C. §1681, *et seq., as amended*.  FACTA is designed to protect credit and debit cardholders[1] from identity theft and fraud.  The statute prohibits merchants who accept credit cards from issuing electronically-generated receipts at the point of sale that display more than the last five digits of the credit card number, thus limiting an identity thief's ability to obtain the consumer's account information, among other things.

2.     Defendants have violated FACTA repeatedly by printing and issuing sales receipts displaying not just the last four, but also the first *six* digits of customer credit card numbers throughout multiple locations across the United States, including the District of New Jersey.

3.     Plaintiff seeks, on behalf of himself and the class, statutory damages, punitive damages, costs, and attorneys fees, all of which are made expressly available by statute, 15 U.S.C. §1681, *et seq.*

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction under 28 U.S.C. §§1331 and 1337, and 15 U.S.C. §1681p, which provides that "An action to enforce any liability created under this title may be brought in any appropriate United States district court, without regard to the amount in controversy . . . ."

---

[1]  References to credit cards also include debit cards.

5.     Venue in this district is proper pursuant to 28 U.S.C. §1391 because Defendant transacts business in this District.

## PARTIES

1.     Plaintiff Ahmed Kamal purchased products at Defendants' store in this District, as well as stores in Maryland and Delaware, using a credit card and received an electronically printed receipt improperly displaying the first six digits of the credit card number as well as the last four digits, and was damaged thereby.  Plaintiff lives in New York, New York, and his family owns a condominium in Ocean City, Maryland.

2.     Defendant J. CREW GROUP, INC. is a Delaware for-profit corporation with a registered address for service of process located at c/o Corporation Service Company, 80 State Street, Albany, New York 12207.

3.     Defendant J. CREW INC. is a Delaware for-profit corporation with a registered address for service of process located at c/o Corporation Service Company, 830 Bear Tavern Road, Ewing, New Jersey 08628.

4.     Defendant J. CREW INTERMEDIATE LLC is a Delaware for-profit limited liability company with a registered address for service of process located at c/o Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

5.     Defendant J. CREW INTERNATIONAL, INC. is a Delaware for-profit corporation with a registered address for service of process located at c/o Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

6.     Defendant J. CREW OPERATING CORP. is a Delaware for-profit corporation with a registered address for service of process located at c/o Corporation Service Company, c/o Corporation Service Company, 80 State Street, Albany, New York 12207.

7.     Defendant J. CREW SERVICES, INC. is a Delaware for-profit corporation with a registered address for service of process located at c/o Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

8.     At all relevant times, the six foregoing defendants comprised the "J. Crew Group," a clothing apparel conglomerate founded in 1983 and former publicly-traded company which owned and operated, and continues to own and operate more than 300 retail stores throughout the United States, including the State of New Jersey.

9.     Defendant CHINOS HOLDINGS, INC. is a Delaware for-profit corporation with a registered address for service of process located at c/o Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

10.    Defendant CHINOS ACQUISITION CORPORATION is a Delaware for-profit corporation and wholly-owned subsidiary of defendant CHINOS HOLDINGS, INC., with a registered address for service of process located at c/o Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

11.    Upon information and belief and pursuant to a merger agreement dated November 23, 2011, defendant CHINOS HOLDINGS, INC. acquired the foregoing "J. Crew Group" entities by merging its subsidiary, defendant CHINOS ACQUISITION CORPORATION with defendant J. CREW GROUP, INC., which remained the surviving corporation and became the face of the "J. Crew" name throughout the world.

12.    At all relevant times, Defendants comprise a "person that accepts credit cards for the transaction of business" within the meaning of FACTA.

## CLASS ALLEGATIONS

13.     This action is brought on behalf of Plaintiff individually and as a class action on behalf of all persons or entities to whom Defendants provided an electronically printed receipt at the point of sale or transaction, in a sale or transaction occurring after January 10, 2010, which receipt displayed more than the last five digits of the customer's credit card number.  Excluded from the Class are the officers and directors of Defendants at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest.

14.     Because Defendants operate 253 retail stores and 118 factory stores in the U.S. that cater to thousands of customers who paid for their purchases with credit cards, joinder of all individual members would be impracticable.  While the exact number of Class members can only be determined by appropriate discovery, Plaintiff believes there are thousands of members of the Class since Defendants' entire 371 store business relies on their ability to accept, and the processing of, credit cards.  Members of the Class may be identified from records maintained by Defendants and their credit card processing company and may be notified of the pendency of this action by United States mail.

15.     Plaintiff's claims are typical of the claims of the other members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

16.     There are common questions of law and fact affecting members of the class, which common questions predominate over questions which may affect individual members. These include the following:

(a)    Whether Defendants had a practice of issuing and providing customers with electronically printed receipts which show more than the last five digits of the credit card number;

(b)    Whether Defendants' conduct was willful, knowing or reckless; and

(c)    Whether Plaintiff and the other members of the class are entitled to statutory damages, punitive damages, costs, or attorneys fees for Defendants' acts and conduct.

17.    Plaintiff will fairly and adequately represent the class members.  Plaintiff has no interests that conflict with the interests of other class members.  Plaintiff has retained counsel competent and experienced in the prosecution of class action litigation.

18.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to redress individually the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## FACTS

## BACKGROUND

19.    The purpose of FACTA is to prevent identity theft.  The Federal Trade Commission estimated that over 9 million persons each year have their identity assumed by criminals for financial gain, causing losses in excess of $50 billion.

20.    One common modus operandi of identity thieves is to obtain credit card receipts that are lost or discarded, or through theft, and use the information on them to commit fraud and theft.  Identity thieves who do this are known as "carders" and "dumpster divers."  This modus operandi is more common than the use of sophisticated electronic means to obtain the

information.  Robin Sidel, "Identity Theft - Unplugged Despite the High-Tech Threat, When You Get Ripped Off It's Usually Still the Old Way," WALL STREET JOURNAL, Oct. 5, 2006, p. Bl.

21.     In early 2003, the payment card industry and Congress announced that they were working together to combat identity theft.  A critical part of this joint effort was the redaction of personal data from credit card receipts presented to consumers at the point of sale.

22.     On March 6, 2003, Visa CEO Carl Pascarella held a joint press conference with Senators Judd Gregg, Jon Corzine, Patrick Leahy, and Dianne Feinstein to announce Visa USA's new account truncation program to protect consumers from identity theft.   At the press conference, Mr. Pascarella stated:

> Today, I am proud to announce an additional measure to combat identity theft and protect consumers.  Our new receipt truncation policy will soon limit cardholder information on receipts to the last four digits of their accounts. . . .
>
> The first phase of this new policy goes into effect July 1, 2003 for all new terminals.  I would like to add, however, that even before this policy goes into effect, many merchants have already voluntarily begun truncating receipts, thanks to the groundwork that we began together several years ago.

## CONGRESS ACTED TO STEM CREDIT CARD FRAUD

23.     The Fair and Accurate Credit Transaction Act was passed by Congress on November 22, 2003, and signed by President Bush on December 4, 2003, to assist in the prevention of identity theft and credit card fraud.  The statute makes it more difficult for identity thieves to obtain consumers' credit card information by reducing the amount of information identity thieves could retrieve from found or stolen credit receipts.  In his statement during the signing of the bill, President Bush declared that:

This bill also confronts the problem of identity theft.  A growing number of Americans are victimized by criminals who assume their identities and cause havoc in their financial affairs.  With this legislation, the Federal Government is protecting our citizens by taking the offensive against identity theft.

24.     The main provision of FACTA (codified as 15 U.S.C. §1681c(g) of the Fair Credit Reporting Act) provides that:

[N]o person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.

25.     FACTA details the liability for willful noncompliance:

§1681n.  Civil liability for willful noncompliance

(a) In general, any person who willfully fails to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer in an amount equal to the sum of –

(1)

(A)     Any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or

*       *       *

(2)     such amount of punitive damages as the court may allow; and

(3)     in the case of any successful action to enforce any liability under this section, the costs of this action together with reasonable attorneys fees as determined by the court …

26.     Congress gave merchants who accept credit cards three years to truncate the credit card number—until December 4, 2006.

**THERE WAS AN EXTENSIVELY ADVERTISED**
**THREE YEAR PHASE-IN PERIOD**

27.    FACTA's requirement that merchants not print more than the last five digits of the credit card number was phased in over a three year period.  During the three year phase-in period, there was extensive publicity regarding the law's requirements.

28.    In the January 2005 edition of the Massachusetts Restaurant Association Newsletter, an article appeared apprising Association members that both Visa and MasterCard require truncation of all but the last four digits of the cardholder account number.

29.    The April 2005 edition of the FOOD INDUSTRY ADVISOR, the newsletter for the Pennsylvania Food Merchants Association and Pennsylvania Convenience Store Council, included an article regarding the requirements of credit card truncation under FACTA which included the following language:

> [A]ccording to the FACT Act, "no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction. . . . ."

30.    This same article appeared in the April 2005 Edition of the NACS Magazine, published by the National Association of Convenience Stores.

31.    The Independent Insurance Agents & Brokers of America circulated a report to its members dated June 5, 2010 titled:  "Overview of the Fair Credit Reporting Act, The Fair and Accurate Credit Transactions Act, and the Drivers Privacy Protection Act."  In relevant part, this publication stated:

> Under the FACTA Act, businesses and others accepting credit or debit cards for payment may not print more than the last five digits of the card number nor may they print the expiration date upon any receipt provided to the cardholder at the point of sale.

32.     The Office of Thrift Supervision, United States Department of Treasury ("OTS"), is responsible, *inter alia*, for monitoring financial institution compliance with FACTA. Toward this end, the OTS publishes an Examination Handbook ("Handbook") which assists OTS field personnel when they perform an examination, or compliance audit, of a given financial institution. The April 2011 Edition of the Handbook states, in relevant part:

> **Truncation of Credit and Debit Card Account Numbers**
>
> Ensure that electronically generated receipts from ATM and POS terminals or other machines do not contain more than the last five digits of the card number and do not contain the expiration dates.

33.     Many retail trade associations apprised their merchant members that FACTA requires truncation of all but the last five digits of the cardholder account number.

34.     For example, the cover-article in the Winter 2007 edition of TEXAS BUSINESS TODAY includes an extensive discussion of the truncation requirements of FACTA.

35.     In May 2007, the Federal Trade Commission published a widely circulated and extensively publicized FTC Business Alert which reiterated the truncation requirements of FACTA.

36.     Since approximately 2007, The Department of Justice ("DOJ") has intervened on behalf of Plaintiffs in private FACTA class actions. In *Papazian v. Burberry Limited*, 07-cv-1479, (C.D. Cal.), for example, the DOJ filed a brief which, among other things, explained the purpose of FACTA and why compliance is so important:

> Congress sought with FACTA to "assist [] consumers in preventing identity theft and for mitigating its consequences once the crime has occurred." *See* 108 H. Rep. No. 263 (2003). The goal of the provision that became §1681c(g) was "to limit the opportunities for identity thieves to 'pick off' key card account information." S. Rep. No. 108-166 (2003). FACTA followed enactment of laws in at least 20 states with provisions similar to §1681c(g) that prohibited printing the full card number as well as the expiration date on receipts . . . .

Defendant's argument that a thief would not be able to make fraudulent charges using *only* a truncated card number and the full expiration date misses the point. Thieves might piece together (or 'pick-off,' in the words of Congress) different bits of information from different sources. The expiration date of a customer's credit/debit card, until recently printed on Defendant's receipts, is one of several pieces of information that can make it easier for criminals to rack up fraudulent charges. These dates are worth protecting even when not accompanied by other important financial information. (internal footnote omitted).

Congress' actions comport with common experience, testimony provided in support of the legislation, and the instructions credit card companies give to merchants . . . .

37.     Merchants, however, claimed to have misunderstood FACTA, despite it being not ambiguous.

## CONGRESS REJECTED THE ARGUMENT THAT
## PARTIAL COMPLIANCE CANNOT BE WILFULL

38.     On June 3, 2008, in the face of an avalanche of class action lawsuits against noncomplying and partially complying merchants, House Bill HR 4008 (known as the Credit and Debit Card Receipt Clarification Act of 2007, Pub.L. 110-241, §3(a), June 3, 2008, 122 Stat. 1566) (the "Clarification Act") (15 U.S.C. §1681n(d)), was passed and signed into law.

39.     The Clarification Act explicitly rejects the arguments of those merchants who had claimed that their partial compliance with FACTA was proof that their actions were not wilfull.

(d) Clarification of willful noncompliance. For the purposes of this section, any person who printed an expiration date on any receipt provided to a consumer cardholder at a point of sale or transaction between December 4, 2004, and the date of the enactment of this subsection [enacted June 3, 2008] but otherwise complied with the requirements of section 605(g) [*15 USCS § 1681c(g)*] for such receipt shall not be in willful noncompliance with section 605(g) [*15 USCS § 1681c(g)*] by reason of printing such expiration date on the receipt.

**CLASS ACTIONS ARE THE ONLY**
**VIABLE ENFORCEMENT MECHANISM**

40.   Congress, although faced with numerous class actions seeking statutory penalties from merchants that had violated FACTA, did not change the penalty provisions and did not eliminate class action enforcement.  Indeed, since the statutory penalty for willful noncomplaince is only $100 to $1,000, class actions are the only viable means for private enforcement.

41.   The statutory penalty provisions, and not the negligence provision, of FACTA are the only enforceable provisions of the statute.  The DOJ recognized that should a merchant print a consumer's account number on a receipt, and should that receipt fall into the hands of an identity thief, it is very unlikely that the victim's information will be traceable back to the merchant.[2]  Thus, even though 7% of all US residents over 16 experienced identity theft in 2012, very few of those would be able to trace the theft back to a merchant to obtain their rightfully-owed actual damages.  For this reason, the statutory damages provisions of 15 U.S.C. § 1681n are necessary to deter violators, while the negligence provion is, essentially, unenforceable.

42.   Now, over seven years after the passage of the Clarification Act, and twelve years after the passage of FACTA, Defendants still fail to comply, and, on information and belief, Defendants have never complied.   By failing to comply Defendants have deprived their customers of the protections that the statute was designed to confer, and exposes cardholders to increased risk of identity theft.

---

[2]  See Department of Justice, Bureau of Justice Statistics, "Victims of Identity Theft, 2012," at p.5 (68% of identity theft victims don't know how the offender obtained their information (available at http://www.bjs.gov/content/pub/pdf/vit12.pdf )).

**DEFENDANTS KNEW NOT TO PRINT MORE THAN THE
LAST FIVE DIGITS OF THE CREDIT CARD NUMBER**

43.     Defendants had actual knowledge of FACTA's truncation requirements specifically including the requirement that no more than the last five digits of the credit card account numbers be printed on receipts presented to consumers at the point of sale.

44.     VISA, MasterCard, the PCI Security Standards Council—a consortium founded by VISA, MasterCard, American Express, and JCB—companies that sell cash registers and other devices for the processing of credit card payments, and other entities directly informed Defendants about FACTA, including its specific requirements concerning the redaction of credit card numbers.

45.     Defendants accept Discover, American Express, Visa, and MasterCard branded credit cards.

46.     Upon information and belief, during all times relevant to this Complaint, Defendants had contracts with their credit card issuers, including VISA, Mastercard, Discover, American Express, and others, and those contracts prohibited Defendants from printing more than the last five digits of the credit card numbers.

47.     Visa USA's contracts with the American merchants which accept Visa brand credit cards are defined in part in a manual entitled CARD ACCEPTANCE GUIDELINES FOR VISA MERCHANTS ("Visa Rules").  The latest edition is the 2011 edition.

> *The Card Acceptance Guidelines for Visa Merchants* is a comprehensive manual for all businesses that accept Visa transactions in the card-present and/or cardabsent environment. The purpose of this guide is to provide merchants and their back-office sales staff with accurate, up-to-date information and best practices to help merchants process Visa transactions, understand Visa products and rules, and protect cardholder data while minimizing the risk of loss from fraud.

48.     Under the heading "Visa Rules," (page 11), it states that "Merchants must follow basic card acceptance rules for all Visa transactions."

49.     Visa Rules (page 13) prohibits the printing of the credit card numbers on credit card receipts:

> **Suppressed Account Number**
>
> Ensure that the Visa account number is suppressed in accordance with Visa rules and local laws and regulations.  Visa recommends that all but the last four digits of the account number be suppressed on the cardholder copy of the transaction receipt, unless otherwise required under local law.

50.     The truncation standards set forth in the Visa Rules are part of the contract between Visa and the merchants which accept its credit cards, here, Defendants.

51.     Similarly, MasterCard's agreements with the American merchants which accept MasterCard brand credit cards are defined in part in a manual entitled SECURITY RULES AND PROCEDURES, Merchant Edition ("MasterCard Rules").  The latest edition is dated 30 August 2013.

52.     Under the heading "Customer Obligations, 1.1 Compliance with the Standards," (page 1-1), it states that "This manual contains Standards.  Each Customer must comply fully with these Standards."

53.     MasterCard Rules (page 3-8) prohibits the printing of the first five digits of the credit card number on credit card receipts:

> **3.11.4  Primary Account Number Truncation and Expiration Date Omission**
>
> The Cardholder and Merchant receipts generated by all electronic POS Terminals, whether attended or unattended, cash disbursement receipts generated by electronic POS Terminals at financial institutions, and each printed ATM Terminal receipt must omit the Card expiration date.  In addition, the Cardholder receipt generated by all electronic POS Terminals, whether attended or unattended, and each printed ATM

> Terminal receipt **must reflect only the last four (4) digits of the PAN**.
> All preceding digits of the PAN must be replaced with fill characters, such
> as "X," "*," or "#," that are neither blank spaces nor numeric characters.
> (Emphasis added.)

54.    The truncation standards set forth in the MasterCard Rules are part of the contract

between MasterCard and the merchants which accept its credit cards, here, Defendants.

55.    Discover contracts with the American merchants which accept Discover brand

credit cards are defined in part in a manual entitled MERCHANT OPERATING REGULATIONS

("Discover Rules").  The latest edition is the 2011 edition.

### 1.2   Operating Regulations, Agreement, and Other Program Documents

> These Operating Regulations, with the exception of the Revision Summary, are
> incorporated into your Agreement.  Together with the Agreement and other
> Program Documents, these Operating Regulations contain procedures that you
> must follow in connection with, as applicable, your acceptance of Cards
> assigned Card Numbers within the Issuer Identification Number (IIN) Ranges
> listed in the Technical Specifications.

56.    Under the heading "3.2.1 Documentation of Card Sales," (page 10), Discover

Rules states that:

> For each Card Present Card Sale, you must provide a copy of the Transaction
> Receipt to the Cardholder.  You must include all of the following information on
> the Cardholder's copy of the Transaction Documentation:
>
> - Card Number, truncated where required by law

57.    The truncation standards set forth in the Discover Rules are part of the contract

between Discover and the merchants which accept its credit cards, here, Defendants.

58.    Defendants knowledge of and compliance with Visa Rules, MasterCard Rules,

and Discover Rules is promently displayed on each credit card receipt they print.  On each such

receipt Defendants printed the last **four** digits of the credit card number (in addition to

improperly printing the first six digits).  But FACTA allows the printing of the last **five** digits.

59.     Upon information and belief, prior to the transactions at issue, Defendants received periodic communications from credit card issuers advising them to not print more than the last five digits of the credit card number.

60.     Upon information and belief, prior to the transactions at issue, Defendants received statements from their merchant bank (or other similar entity that performed credit card payment clearing services for Defendants) which apprised Defendants of their obligation to not print more than the last five digits of the credit card number.

61.     Upon information and belief, prior to the transactions at issue, Defendants received written information from their POS (Point of Sale) provider(s) apprising Defendants of their obligation to not print more than the last five digits of the credit card number.

62.     Upon information and belief, prior to the transactions at issue, Defendants received information from trade associations and/or other similar entities apprising Defendants of their obligation to not print more than the last five digits of the credit card number.

63.     Defendants' knowledge of the FACTA requirements is also evidenced by its change to the credit card receipts to remove the middle digits of the credit card number and the expiration date.

64.     Upon information and belief, prior to the transactions at issue, Defendants received information from their liability insurance carrier terminating coverage for FACTA liability.  Commercial insurance coverage is negotiated for and bound by the signature of senior management and the specifics of the coverage are closely monitored.  In addition, the exclusions from an insurance policy can often be added back by riders—at additional cost.  That is part of the negotiation.

65.     Defendants' failure to eliminate a liability for which they had been denied insurance coverage, for which they were contractually required to comply, for which there was voluminous information available, and where they had partially complied, is willfull because they not only subjected their customers to an unjustifiably high risk of harm that is either known or so obvious that it should have been known, but they also subjected their shareholders to the risk of an uninsured loss.

66.     Upon information and belief, at the time of Plaintiff's transactions described herein, Defendants were routinely presenting receipts to their customers at the point of sale at their various retail stores which displayed the first six digits of the customers credit card number, in violation of the requirements of FACTA.

67.     Upon information and belief, Defendants had control over the receipt printers and used standardized computer software to print the offending receipts and that software printed the receipts the same way for each transaction throughout the class period.

**PLAINTIFF'S TRANSACTIONS**

68.     On December 18, 2014, Plaintiff visited Defendants' retail store in Ocean City, Maryland, where his family owns a condominium; made a purchase; and paid with a Discover-branded credit card.  At the point of sale, Plaintiff was given a receipt containing the first six digits *and* the last four digits of Plaintiff's credit card number, which is a direct violation of FACTA.  (Redacted copies of Plaintiff's credit card receipts discussed herein are annexed hereto.)

69.     On December 22, 2014, Plaintiff visited Defendants' retail store in Rehoboth Beach, Delaware, which is just outside of Ocean City, Maryland; made a purchase; and paid with a Discover-branded credit card.  At the point of sale, Plaintiff was given a receipt containing the

first six digits *and* last four digits of Plaintiff's credit card number, which is a direct violation of FACTA.

70.     On January 4, 2015, Plaintiff visited Defendants' retail store in Wayne, New Jersey, while he was out shopping; and paid defendants with a Discover-branded credit card.  At the point of sale, Plaintiff was given a receipt containing the first six digits *and* last four digits of Plaintiff's credit card number, which is a direct violation of FACTA.

## COUNT I

## <u>VIOLATION OF FACTA</u>

71.     Plaintiff hereby incorporates by reference the allegations contained in the above paragraphs of this Complaint as if fully set forth herein.

72.     Defendants accept credit cards in the course of transacting business with persons such as Plaintiff and the other class members.  In transacting such business, Defendants have control over and use cash registers or other machines or devices that print receipts electronically for credit card transactions.

73.     After October 10, 2008, the deadline for compliance as extended by the Clarification Act, Defendants, at the point of sale or transaction, provided Plaintiff and the other class members with electronically printed receipts, each of which included the more than the last five digits of the credit card number.

74.     Defendants were willful in printing more than the last five digits of the credit card number on the credit card receipts they gave to their customers.

75.     Defendants accept Discover, American Express, Visa, and MasterCard branded credit cards and, therefore, are a party to contracts requiring compliance with the foregoing requirements.

76.   Defendants' use of software, devices and machines that print receipts in violation of FACTA was willful as set forth above.

**WHEREFORE**, Plaintiff requests the Court to enter judgment in favor of Plaintiff and the class members and against Defendants, jointly and severally, as follows:

a.   Statutory damages of $100 to $1,000 per violation;

b.   Attorneys fees, litigation expenses, and costs;

c.   Such other and further relief as the Court may deem proper, including punitive damages.

Dated: March 25, 2015

**ROBERT A. SOLOMON, P.C.**

By:____/s/_____
     Robert A. Solomon (RS2895)
     rsolomon@metrolaw.com
     91 Pacific Street
     Newark, Ne Jersey 07105
     (973) 344-6587 Telephone
     (973) 344-7604 Facsimile

**FRANK & BIANCO LLP**
     Marvin L. Frank (MF1436)
     mfrank@frankandbianco.com
     275 Madison Avenue, Suite 705
     New York, New York 10016
     (212) 682-1853 Telephone
     (212) 682-1892 Facsimile

**NABLI & ASSOCIATES, P.C.**
     Peter Y. Lee (PL2405)
     peter.lee@leeadvocates.com
     Khaled (Jim) El Nabli (*pro hac vice pending*)
     Jim_elnabli@nablilaw.com
     60 East 42nd Street, Suite 1101
     New York, New York 10165
     (212) 808-0716 Telephone
     (212) 808-0719 Facsimile

*Counsel for Plaintiff and the Class*

# J.CREW

Ocean City Tanger Outlet Cente
12741 Ocean Gateway, Suite 760
Ocean City, MD 21842
410-213-7891

Trans: 3758        Date: 12/18/14 2:06 PM
Store: 135         Register: 3
Sales Associate:
  344017 (Elise)
Cashier: Lauren

| Item | Qty | Price | Amount |
|------|-----|-------|--------|
| 37804:fty oxford shirt., WD6906, XL | | | |
| 099103037002 1 | | 29.97 | 10.19 |
| 60% Off Clearance | | | (17.98) |
| Item Disc (15%) | | | (1.80) |

| | | |
|---|---|---|
| Subtotal | | 10.19 |
| Sales Tax | | 0.61 |
| **Total** | | **10.80** |

**Amount Tendered**
Discover                           10.80
      **7908
   Auth #: 01809R
   Transaction Type: Sale
   Entry Method: Swiped
   Auth Time: 2:06 PM

**Change**                          0.00

**Sales Tax Analysis**

| Agency | Rate% | Taxable | Tax |
|--------|-------|---------|-----|
| MARYLAND (State) | 6% | 10.19 | 0.61 |

**************************************
      You have saved $19.78
**************************************

J.Crew accepts returns of unworn,
unwashed, undamaged or defective
merchandise for full refund or
exchange within 30 days of original
purchase. Original receipt must
accompany merchandise purchased by
cash or check. Requests to
exchange merchandise received as a
gift must be accompanied by a gift
receipt. See store location or

# J.CREW

Rehoboth
36454 Seaside Outlet Drive - S
Rehoboth Beach, DE 19971
302-226-1377

Trans: 7568      Date: 12/22/14 3:31 PM
Store: 38        Register: 2
Sales Associate:
    0 (House)
Cashier: Shawnice

| Item | Qty | Price | Amount |
|------|-----|-------|--------|
| 53602:men's ss poly no pocket tee, BL6844, XL | | | |
| 099102935709 1 | | 19.50 | 8.29 |
| Item Disc (50%) | | | (9.75) |
| Item Disc (15%) | | | (1.46) |

|  | | |
|---|---|---|
| Subtotal | | 8.29 |
| Sales Tax | | 0.00 |
| **Total** | | **8.29** |

Amount Tendered
Discover                              8.29
███████████**7908
    Auth #: 02251R
    Transaction Type: Sale
    Entry Method: Swiped
    Auth Time: 3:30 PM

Change                               0.00

Sales Tax Analysis

Agency            Rate%  Taxable  Tax
DELAWARE (State)    0%     8.29   0.00

*************************************
        You have saved $11.21
*************************************

    J.Crew accepts returns of unworn,
   unwashed, undamaged or defective
  merchandise for full refund or
 exchange within 30 days of original
   purchase. Original receipt must
  accompany merchandise purchased by
     cash or check. Requests to
 exchange merchandise received as a
 gift must be accompanied by a gift
     receipt. See store location or
 www.jcrew.com for full return policy.

    Read our privacy policy at
    http://www.jcrew.com/privacy

  Thank you for shopping at J.Crew.

SOLD ITEM COUNT = 1



T11313H11411G944AHX13

Customer Copy

# J.CREW

Willowbrook
1665 Willowbrook Mall
Wayne, NJ 07470
973-890-7120

Trans: 8400      Date: 1/4/15 2:18 PM
Store: 644       Register: 1
Sales Associate:
    0 (House)
Cashier: Melissa

| Item | Qty | Price | Amount |
|------|-----|-------|--------|
| 91918:CLASSIC REPP PQ POLO, BL8133, XL | | | |
| 099102956775 1 | | 42.50 | 42.50 |
| | | Subtotal | 42.50 |
| | | Sales Tax | 0.00 |
| | | **Total** | **42.50** |

**Amount Tendered**
Discover                                   42.50
        ██████████**7908
        Auth #: 00443R
        Transaction Type: Sale
        Entry Method: Swiped
        Auth Time: 2:17 PM

**Change**                                  0.00 [1]

**Sales Tax Analysis**

Agency               Rate%  Taxable  Tax
NEW JERSEY (State)    0%     42.50    0.00

J.Crew accepts returns of unworn,
unwashed, undamaged or defective
merchandise for full refund or
exchange within 30 days of original
purchase. Original receipt must
accompany merchandise purchased by
cash or check. Requests to
exchange merchandise received as a
gift must be accompanied by a gift
receipt. See store location or
www.jcrew.com for full return policy.

Read our privacy policy at
http://www.jcrew.com/privacy

Thank you for shopping at J.Crew.

SOLD ITEM COUNT = 1

T1131XQ11311HG44AN77J

**Customer Copy**