# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

------------------------------------- X
:
AHMED KAMAL, on behalf of himself and
the putative class,                    :  Case No. 2:15-cv-00190-WJM-MF
:
                      Plaintiff,       :  *ELECTRONICALLY FILED*
:
              v.                       :
:
J. CREW GROUP, INC., et al.            :  Returnable:  May 4, 2015
:
                      Defendants.      :  ORAL ARGUMENT REQUESTED
:
------------------------------------- X

---

## DEFENDANTS' BRIEF IN SUPPORT OF THEIR
## MOTION TO DISMISS THE AMENDED COMPLAINT

---

**DLA PIPER LLP (US)**
51 John F. Kennedy Parkway, Suite 120
Short Hills, New Jersey 07078-2704
Telephone No.: (973) 520-2550
Fax No.: (973) 520-2551
*Attorneys for Defendants*

Of Counsel:
    Keara M. Gordon (admitted *pro hac vice*)
    Andrew O. Bunn

On the Brief:
    James V. Noblett
    Steven R. Marino

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................. 1

STATEMENT OF FACTS ........................................................................ 4

COMPARISON OF THE ALLEGATIONS IN THE COMPLAINT AND AMENDED COMPLAINT ........................................................................ 5

THE RELEVANT PROVISIONS OF FACTA .......................................... 6

ARGUMENT ........................................................................................... 8

I.    THE SOUTHERN DISTRICT PROPERLY INTREPRETED MOTIONS TO DISMISS CLAIMS FOR WILLFUL VIOLATIONS OF FACTA IN LIGHT OF *TWOMBLY* AND *IQBAL*. ............................................................ 8

    A.    The Plain Language of the Statute Creates a Two-Tier System of Liability. ........ 9

    B.    Courts Analyzing FACTA In Light of *Twombly* and *Iqbal* Have Articulated a Two-Prong Standard to Maintain the Two-Tier System of Liability. ............................................................ 10

        a.    *Crupar-Weinmann v. Paris Baguette America, Inc.* .................... 10

        b.    *Fullwood v. Wolfgang's Steakhouse, Inc., et al.* .......................... 11

        c.    *Katz v. Donna Karan Company, LLC, et al.* ............................... 13

    C.    The Southern District's Interpretation is Consistent with Congressional Intent and Common Sense. ................................... 14

II.   THE AMENDED COMPLAINT SHOULD BE DISMISSED BECAUSE THERE ARE NO PARTICULARIZED FACTS TO SUPPORT A PLAUSIBLE INFERENCE OF ACTUAL KNOWLEDGE (PRONG ONE). .................................. 15

    A.    Category One – General Advertisements and Publicity Related to FACTA. ....... 16

    B.    Category Two – Contracts with Credit Card Companies. .................................. 18

    C.    Category Three – Other Communications Purportedly Received by J. Crew. ...................................................................... 19

    D.    Category Four – Purported Correspondence from J. Crew's Liability Insurer. ................................................................. 20

III.  THE AMENDED COMPLAINT SHOULD BE DISMISSED BECAUSE THERE ARE NO PARTICULARIZED FACTS TO SUPPORT A PLAUSIBLE INFERENCE OF KNOWING OR RECKLESS CONDUCT (PRONG TWO).............. 22

IV.   AT A MINIMUM, THIS COURT SHOULD DISMISS ALL DEFENDANTS WHO ARE NOT PROPER PARTIES TO THIS LAWSUIT. ....................................... 23

CONCLUSION ....................................................................................... 24

# TABLE OF AUTHORITIES

**Page**

CASES

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ............................................................................ passim

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ............................................................................ passim

*Beyond Sys. Inc. v. Kraft Foods Inc.,*
   --- F.3d ---, 2015 WL 451944 (4th Cir. Feb. 4, 2015) ........................... 5

*Bilodeau v. McAfee,*
   No. 12-cv-04589-LHK, 2013 WL 3200658 (N.D. Cal. June 24, 2013) ................................. 18

*Bonner v. Redwood Mortg. Corp.,*
   No. C. 10-00479 WHA, 2010 WL 2528962 (N.D. Cal. June 18, 2010) .................................. 8

*Chonko v. Comm'r,*
   624 F. Supp. 2d 357 (D.N.J. 2008) ......................................................... 9

*Clark v. Rameker,*
   --- U.S. ---, 134 S. Ct. 2242 (2014) ....................................................... 9

*Creston Elecs., Inc. v. Cyber Sound & Sec. Inc.,*
   Civil Case No. 11-34962(FSH), 2012 WL 426282 (D.N.J. Feb. 9, 2012) ........................... 24

*Crupar-Weinmann v. Paris Baguette Am., Inc.,*
   No. 13 Civ. 7013(JSR), 2014 WL 2990110 (S.D.N.Y. June 30, 2014), *reconsid.*
   *denied,* 41 F. Supp. 3d 411 (2014) ................................................... passim

*Dock v. Rush,*
   432 Fed. Appx. 130 (3d Cir.2011) ......................................................... 24

*Fullwood v. Wolfgang's Steakhouse, Inc.,*
   No. 13 Civ. 7174(KPF), 2014 WL 6076733 (S.D.N.Y. Nov. 14, 2014) ........................ passim

*Gardner v. Appleton Baseball Club, Inc.,*
   No. 09-C-705, 2010 WL 1368663 (E.D. Wis. March 31, 2010) ........................................ 19

*Gen. Metalcraft, Inc. v. Liberty Mut. Ins. Co.,*
   796 F. Supp. 794 (D.N.J. 1992) ......................................................... 12

*Huggins v. SpaClinic, LLC,*
   No. 082667, 2010 WL 963924 (N.D. Ill. Mar. 11, 2010) ........................................... 17

**TABLE OF AUTHORITIES**

(continued)

**Page**

*In re Intelligroup Secs. Litig.,*
   527 F. Supp. 2d 262 (D.N.J. 2007) ............................................................................4

*Johnson v. Maynard,*
   Civil Action No. 11-4677(RMB), 2013 WL 6865584 (D.N.J. Dec. 23, 2013) ...............21, 22

*Katz v. Donna Karan Int'l, Inc.,*
   14 Civ. 740 (PAC), 2015 WL 405506 (S.D.N.Y. Jan. 30, 2015) ................................... passim

*Long v. Tommy Hilfiger, U.S.A., Inc.,*
   671 F.3d 371 (3d Cir. 2012)..........................................................................................7, 14

*Nickeo v. Virgin Islands Telephone Corp.,*
   42 F. 3d 804 (3d Cir. 1994)................................................................................................9

*O'Connor v. Trans Union, LLC,*
   No. 05-cv-74498, 2008 WL 4910670 (E.D. Mich. Nov. 13, 2008)......................................8

*Pearson v. Component Tech. Corp.,*
   241 F.3d 471 (3d Cir. 2001)..........................................................................................23, 24

*Reed v. Swatch Group (US),*
   Civil Action No. 14-896(ES), 2014 WL 7370031 (D.N.J. Dec. 29, 2014) .................7, 17, 19

*Safeco Ins. Co. of Am. v. Burr,*
   551 U.S. 47 (2007)................................................................................................... passim

*Schmidt v. Skolas,*
   770 F.3d 241 (3d Cir. 2014)..............................................................................................4

*Tucker v. Newark Police Dep't.,*
   Civil No. 09-4021(SRC), 2007 WL 1395439 (D.N.J. Dec. 14, 2010) ................................24

**STATUTES**

15 U.S.C. § 1681a(b) ............................................................................................................6

15 U.S.C. § 1681c(g)(1)...................................................................................................17, 19

15 U.S.C. § 1681n...........................................................................................................1, 9

15 U.S.C. § 1681n(a)(1)(A) ...............................................................................................2, 7

15 U.S.C. § 1681n(a)(3)......................................................................................................7

15 U.S.C. § 1681n(c) ..........................................................................................................8

## TABLE OF AUTHORITIES
(continued)

**Page**

15 U.S.C. § 1681n(d) ..............................................................................................14

15 U.S.C. § 1681o .............................................................................................1, 9

15 U.S.C. § 1681o(a)(1) ...................................................................................1, 7

15 U.S.C. § 1681o(a)(2) ........................................................................................7

15 U.S.C. § 1681o(b) ............................................................................................8

Pub.L. No. 110-241, § 2(a)(1) ..............................................................................6

Pub.L. No. 110-241, § 2(a)(3) ............................................................................14

Pub.L. No. 110-241, § 2(a)(4) ............................................................................14

Pub.L. No. 110-241, § 2(b) ................................................................................14

**RULES**

Federal Rule of Civil Procedure 8 ...............................................................16, 17

Federal Rule of Civil Procedure 11 ....................................................................20

## PRELIMINARY STATEMENT

Plaintiff Ahmed Kamal, who resides in Manhattan, alleges he made one purchase a piece at three separate J. Crew stores between December 18, 2014 and January 4, 2015.  Although J. Crew then-operated eight stores in Manhattan that sell men's clothes, Kamal does not allege that he made a single purchase from one of those locations during this two-and-one-half week period. Instead, he traveled hundreds of miles to and from Maryland, Delaware, and New Jersey, and he made a nominal purchase at one store in each of those states.  Kamal alleges that for each transaction, J. Crew[1] violated the Fair and Accurate Credit Transaction Act of 2003 ("FACTA") because the receipts issued to him disclosed more than the last five digits of his credit card number.  Kamal does not allege that he suffered any actual damages as a result.  However, in what is an apparent attempt to generate class action litigation in this District, Kamal, and his counsel (who are serial filers of FACTA complaints) seek to recover millions of dollars in statutory penalties and attorneys' fees based on J. Crew's purported "willful" violation of FACTA.  Their attempts to do so should be rejected.

FACTA states that retailers shall not "print more than the last 5 digits of the [credit] card number or the expiration date upon any receipt provided to the cardholder."  15 U.S.C. § 1681c(g)(1).  Liability under FACTA is based on a two-tiered system dependent upon whether the violation was negligent or willful.  15 U.S.C. § 1681n; 15 U.S.C. § 1681o.  There is no strict liability under the statute.  If the conduct is merely negligent, a plaintiff must plead evidence that he or she suffered actual damages—for example, the customer's receipt was stolen and his or her information was used to make unauthorized purchases.  15 U.S.C. § 1681o(a)(1).  If a plaintiff has no actual damages—as is the case here—he or she may only recover damages if he or she

---

[1]    Several of J. Crew's present and former affiliates that have no involvement in this dispute are improperly included as defendants.  *See* Section IV.  References to "J. Crew" in this Motion only refer to defendant J. Crew Group, Inc.

pleads facts that demonstrate the merchant's non-compliance was more than negligent, rising to the level of a "<u>willful</u>" violation.  15 U.S.C. § 1681n(a)(1)(A).  The Supreme Court has instructed that "where willfulness is a statutory condition of civil liability, we have generally taken it to cover not only knowing violations of a standard, but reckless ones as well."  *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007).

Post *Twombly/Iqbal*, courts have interpreted *Safeco* in the context of a claim for a willful violation of FACTA and concluded that "it is insufficient for a plaintiff to show merely that a defendant knew of the potentially applicability of FACTA or that the statute was in the picture." *Fullwood v. Wolfgang's Steakhouse, Inc.*, No. 13 Civ. 7174(KPF), 2014 WL 6076733, at *13 (S.D.N.Y. Nov. 14, 2014) (internal quotation marks omitted).  Instead, to state a claim for a willful violation of FACTA under current law, a plaintiff must plead particularized facts plausible to suggest: (i) that the defendant had actual knowledge of FACTA and its requirements; and (ii) "awareness that the defendant's behavior violates or recklessly runs the risk of violating those requirements."  *Id.*, at *8; *see also Crupar-Weinmann v. Paris Baguette Am., Inc.*, No. 13 Civ. 7013(JSR), 2014 WL 2990110, at *4 (S.D.N.Y. June 30, 2014), recons. den., 41 F. Supp. 3d 411 (S.D.N.Y. Sept. 2, 2014); *Katz v. Donna Karan Int'l, Inc.*, 14 Civ. 740 (PAC), 2015 WL 405506, at *4 (S.D.N.Y. Jan. 30, 2015).  These courts reasoned that to hold otherwise would inappropriately transform FACTA into a strict liability statute—without any consideration of whether the defendant's conduct was merely negligent.

In recognition of and in an attempt to meet this standard,[2] Kamal pled in his initial Complaint that (i) J. Crew had actual knowledge of FACTA and (ii) despite that knowledge, J. Crew knowingly or recklessly violated FACTA by printing extra digits in order "to monitor each

---

[2]     Kamal's New York counsel here was also counsel in two of the three decisions above, *Crupar-Weinmann* and *Fullwood*.

customer's specific purchases and returns, compile such data from stores across the United States, and share same within the entire J. Crew network."  (Compl. at ¶ 49).  J. Crew moved to dismiss the Complaint because there were no facts to support a plausible inference of a "willful" violation of FACTA—the purported rationale (*i.e.*, monitoring purchases) was nothing more than Kamal's and his counsel's guesses, self-serving deducement, and speculation.  (Dkt. Entry #: 15-1 at pp. 12-14).

In response to J. Crew's Motion to Dismiss, apparently recognizing the pleading deficiencies, Kamal chose to abandon his Complaint.  His Amended Complaint, however, fares no better.  Quite the contrary, the Amended Complaint makes no attempt to bolster the "willfulness" prong of Kamal's claim with any particularized facts specifically relating to J. Crew's purported knowing or reckless conduct.  Instead, Kamal has deleted the only allegations purporting to specify conduct by J. Crew; the Amended Complaint contains solely generic allegations about alleged knowledge of FACTA's requirements among businesses in general.

This "backwards" amendment is telling and may explain why, after the Southern District ruled against Kamal's New York counsel on two FACTA cases, Kamal made purchases outside of his state of residence, New York, and chose to bring suit here.  Apparently, Kamal's New York counsel seeks to urge in this Court a strict liability standard—that presumed knowledge and non-compliance are sufficient to state a claim for a willful violation even if the underlying conduct by the defendant was merely negligent.  Respectfully, this Court should reject Kamal's and his counsel's maneuvers.

It is clear that the Amended Complaint should be dismissed.  First, the Amended Complaint does not even contain particularized facts plausibly to suggest that J. Crew had actual knowledge of FACTA's requirements.  Kamal merely copies and pastes allegations from other

FACTA complaints that are not specific to J. Crew.  Second, Kamal and his counsel made the strategic decision to remove from the Amended Complaint all allegations related to purported knowing or reckless conduct specific to J. Crew.  Therefore, when viewed through the prism of *Twombly* and *Iqbal,* the Amended Complaint fails to state a plausible claim for a willful violation of FACTA.

The Amended Complaint should be dismissed with prejudice.

## STATEMENT OF FACTS

J. Crew is a nationally recognized "apparel and accessories retailer" that "offers a complete assortment of women's and men's apparel and accessories, including outerwear, loungewear, wedding attire, swimwear, shoes, bags, belts, hair accessories and jewelry."[3]  J. Crew operated 253 retail stores and 118 factory stores in the United States for the fiscal year ended February 1, 2014.  (Form 10-K at 19-20).  It operated retail stores in forty-three states, plus the District of Columbia, and factory stores in thirty-seven states.  (*Id.*)  Kamal resides in Manhattan (Am. Compl. at "Parties," ¶ 1), where there are currently twelve J. Crew stores alone, nine of which sell men's clothes.[4]

The Complaint alleges that Kamal made three purchases between December 18, 2014 and January 4, 2015.  (*Id.* at ¶¶ 68-70).  None of the purchases was made at a J. Crew location in Manhattan—or even in New York state—but in Maryland, Delaware, and New Jersey:

---

[3]  J. Crew Group, Inc., Annual Report for the Fiscal Year Ended February 1, 2014 (Form 10-K), at 3, http://www.sec.gov/Archives/edgar/data/1051251/000156459014000961/jcg-10k_20140201.htm (hereinafter "Form 10-K").  This Court may consider documents filed with the Securities and Exchange Commission because they are "matters of public record of which the court can take judicial notice."  *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014); *see also In re Intelligroup Secs. Litig.*, 527 F. Supp. 2d 262, 273 (D.N.J. 2007) (taking judicial notice of a Form 10-K in connection with a motion to dismiss).  A current listing

[4]  A listing of stores is available on J. Crew's website at https://stores.jcrew.com.

1. December 18, 2014:  Kamal purchased an oxford shirt for $10.80 at the Ocean City, Maryland location;

2. December 22, 2014:  Kamal purchased a t-shirt for $8.29 at the Rehoboth Beach, Delaware location; and

3. January 4, 2015:  Kamal purchased a polo shirt for $42.50 from the Wayne, New Jersey location (the Willowbrook Mall).[5]

(*Id.*)  In each instance, the receipt displayed, in addition to the last four digits of Kamal's credit card, the first six digits.  (*Id.*)  J. Crew partially complied with FACTA by redacting Kamal's name, the remaining digits, and the expiration date of his credit card.  (*Id.*)  There is no allegation that the receipts were given to anyone other than Kamal, or that Kamal suffered actual damages as a result of the appearance of the additional digits on his receipts.

## COMPARISON OF THE ALLEGATIONS IN THE COMPLAINT AND AMENDED COMPLAINT

The Complaint, filed on January 10, 2015 (Dkt. #: 1), contained three categories of allegations:

1. Generalized allegations about FACTA's passage and publicity that are not specific to J. Crew;

2. Conclusory allegations that J. Crew had actual knowledge of FACTA's requirements; and

---

[5]     J. Crew accepts Kamal's allegations as true for purposes of this Motion only.  In the event the case survives this Motion (which it should not), J. Crew reserves its right to assert as a defense that Kamal's purchases in Maryland, Delaware, and New Jersey were intentional and part of a litigation strategy.  *See, e.g., Beyond Sys. Inc. v. Kraft Foods Inc.*, --- F.3d ---, 2015 WL 451944 (4th Cir. Feb. 4, 2015) (applying doctrine of *volenti non fit injuria*, or "no wrong is done to one who consents" where the plaintiff took steps to facilitate the conduct giving rise to the lawsuits) (internal quotation marks omitted).  Indeed, it is unusual that a resident of Manhattan did not shop at one of the numerous J. Crew locations in Manhattan.  Instead, one month after the Southern District of New York issued its decisions in *Fullwood*—Kamal's New York counsel's second attempt at pleading a willful FACTA violation—Kamal inexplicably traveled to Maryland, Delaware, and New Jersey to shop at J. Crew.  Thus, Kamal's conduct suggests a calculated attempt to generate this lawsuit in a new forum in order to avoid the adverse outcomes his lawyers obtained in *Crupar-Weinmann* and *Fullwood* in the Southern District of New York.

3.  Speculative allegations that J. Crew knowingly or recklessly violated FACTA in order to distinguish one customer from another.

Allegations related to the third category have been removed completely from the Amended Complaint, which was filed on March 25, 2015 (Dkt. #: 21).[6]  Instead, the Amended Complaint contains allegations related solely to the first two categories:

| Category | Paragraph Numbers and Summary of Allegations |
|---|---|
| 1 – Generalized allegations about FACTA's passage and publicity that are not specific to J. Crew. | • ¶¶ 19-23, 27-37: History of FACTA and publicity related to its passage and requirements. |
| 2 – Conclusory Allegations that J. Crew had actual knowledge of FACTA's requirements. | • ¶¶ 43-58: Discover, American Express, Visa, and MasterCard entered into contracts with "merchants," and manuals issued by those credit card companies to "merchants" contained truncation requirements and a prohibition on printing expiration dates.<br>• ¶¶ 59-62: "Upon information and belief," information received by J. Crew from banks, point of sale providers, and trade associations related to FACTA.<br>• ¶¶ 64: "Upon information and belief . . . information received by J. Crew from its liability insurance carrier terminating coverage for FACTA liability." |

## THE RELEVANT PROVISIONS OF FACTA

FACTA amended the Fair Credit Reporting Act in order to "prevent criminals from obtaining access to consumers' private financial and credit information in order to reduce identity theft and credit card fraud."  Pub. L. 110-241, § 2(a)(1).  The operative provision of FACTA states:

> [N]o person[7] that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the

---

[6]  The Amended Complaint was filed pursuant to a stipulation by counsel.  (Dkt. Entry #20).  J. Crew thereafter withdrew its motion to dismiss the Complaint to file a new motion to dismiss tailored to the allegations in the Amended Complaint.  (Dkt. Entry #22).

[7]  "Person," as defined in FACTA, includes "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision of agency, or other entity."  15 U.S.C. § 1681a(b).

> card number or the expiration date upon any receipt provided to
> the cardholder at the point of the sale or transaction.

15 U.S.C. § 1681c(g)(1).

Liability under FACTA is based on a two-tiered system "dependent upon whether the

violation was negligent or willful." *Long v. Tommy Hilfiger, U.S.A., Inc.*, 671 F.3d 371, 374 (3d

Cir. 2012). First, if the violation was negligent, only "actual damages sustained by the consumer

as a result of the failure" are recoverable. 15 U.S.C. § 1681o(a)(1). In other words, statutory

damages are not recoverable for negligent violations. Second, if, in contrast, the conduct was

willful, "actual damages sustained by the consumer as a result of the failure *or* damages of not

less than $100 and not more than $1,000" are recoverable. 15 U.S.C. § 1681n(a)(1)(A); *see also*

*Long*, 671 F.3d at 374 (a plaintiff asserting a willful violation may "elect to recover either actual

damages or statutory damages").

Willful violations require a showing that the defendant knowingly or recklessly violated

FACTA. *Long*, 671 F.3d at 376 (citing *Safeco*, 551 U.S. at 57-58). A knowing violation occurs

when the defendant acts deliberately "with a purpose [to] disobey or disregard the law." *Reed v.*

*Swatch Group (US)*, Civil Action No. 14-896(ES), 2014 WL 7370031, at *3 (D.N.J. Dec. 29,

2014) (alteration in original) (internal quotation marks omitted). Recklessness, on the other

hand, entails a "disregard of the safety of another" that leads to an "an unjustifiably high risk of

harm that is either known or so obvious that it should be known." *Safeco*, 551 U.S. at 68-69

(internal quotation marks omitted).

FACTA provides for the recovery of attorney's fees and costs upon a "successful action

to enforce liability" under either a negligent or willful violation. 15 U.S.C. § 1681n(a)(3); 15

U.S.C. § 1681o(a)(2). FACTA provides in the alternative that if a pleading alleging a negligent

or willful violation was "unsuccessful" and "filed in bad faith or for the purpose of harassment,

the court shall award to the prevailing party attorney's fees reasonable in relation to the work expended in responding to the pleading." 15 U.S.C. § 1681n(c); 15 U.S.C. § 1681o(b).[8]

## ARGUMENT

I.  **THE SOUTHERN DISTRICT PROPERLY INTREPRETED MOTIONS TO DISMISS CLAIMS FOR WILLFUL VIOLATIONS OF FACTA IN LIGHT OF *TWOMBLY* AND *IQBAL*.**

An explicit distinction is drawn in the plain language of FACTA for noncompliance that is <u>negligent</u> versus <u>willful</u>.  In recognition of this two-tiered system of liability and the pleading standards enunciated in *Twombly* and *Iqbal*,[9] the Southern District has interpreted the statute to require a claim for a <u>willful</u> violation to plead facts creating a plausible inference that the defendant had (i) actual knowledge of FACTA and its requirements and (ii) despite that actual knowledge, knowingly or recklessly violated the statute.[10]  To hold otherwise would transform FACTA into a strict liability statute—without any consideration of whether the defendant's conduct was merely <u>negligent</u>, a plaintiff could state a claim for a <u>willful</u> violation based on presumed knowledge and partial non-compliance.  That interpretation, in light of *Twombly* and

---

[8]     J. Crew reserves its right to seek attorneys' fees and costs pursuant to 15 U.S.C. § 1681n(c) if this Motion is granted and it is determined that the Complaint was filed in bad faith. *See, e.g.*, *Bonner v. Redwood Mortg. Corp.*, No. C. 10-00479 WHA, 2010 WL 2528962, at *4 (N.D. Cal. June 18, 2010) (granting attorneys' fees pursuant to 15 U.S.C. § 1681n(c) because the plaintiff filed the complaint "in bad faith"); *O'Connor v. Trans Union, LLC*, No. 05-cv-74498, 2008 WL 4910670, at *7 (E.D. Mich. Nov. 13, 2008) (granting attorneys' fees pursuant to 15 U.S.C. § 1681n(c)).

[9]     *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[10]    That actual knowledge of FACTA's requirements is insufficient to state a willful violation claim is not limited to courts in New York.  In *Vidoni v. Acadia Corp.*, for example, the District Court of Maine stated:  "Merely being aware of a statute, then, is insufficient to state a claim for willfulness.  In cases where the Defendant is aware of a statute's requirements, the Plaintiff must also allege that there was something more than a negligent violation, i.e. a voluntary, deliberate, or intentional violation."  No. 11-cv-00448-NT, 2012 WL 1565128, at *4 (D. Me April 27, 2012).

*Iqbal*, is wrong.  Respectfully, this Court should instead follow the Southern District's approach and adopt the two-prong standard.[11]

### A.     The Plain Language of the Statute Creates a Two-Tier System of Liability.

It is well-settled that "the starting point in interpreting a statute" is its "plain language." *Nickeo v. Virgin Islands Telephone Corp.*, 42 F. 3d 804, 807 (3d Cir. 1994); *see also Chonko v. Comm'r*, 624 F. Supp. 2d 357, 362 (D.N.J. 2008) (Martini, J.).

FACTA codifies two bases for liability—(i) "Civil liability for <u>negligent</u> noncompliance" pursuant to 15 U.S.C. § 1681o; and (ii) "Civil liability for <u>willful</u> noncompliance" pursuant to 15 U.S.C. § 1681n.  (Emphasis added).  The statute does not provide for strict liability.  Moreover, Congress drew an explicit distinction between <u>negligent</u> and <u>willful</u> causes of action (and the underlying conduct that supports each cause of action).  As a result, it is improper to interpret FACTA in a manner that will render one provision meaningless.  *Clark v. Rameker*, --- U.S. ---, 134 S. Ct. 2242, 2248 (2014) ("a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous").  As explained below, courts have considered whether actual knowledge and mere noncompliance can state, *ipso facto*, a claim for <u>willful</u> noncompliance, but rejected that interpretation because to hold otherwise "would effectively have negligence read out of the statute."  *Fullwood*, 2014 WL 6076733, at *10.

---

[11]     This Court has not yet reached the precise issue of whether, in addition to actual knowledge, knowing or reckless conduct is required to state a plausible claim for a willful violation.  However, now that the issue is before this Court, it should follow the Southern District's approach.  *See Gen. Metalcraft, Inc. v. Liberty Mut. Ins. Co.*, 796 F. Supp. 794, 801 (D.N.J. 1992) ("Of course, we look for guidance to opinions . . . [from] our sister district courts.").

**B.     Courts Analyzing FACTA In Light of *Twombly* and *Iqbal* Have Articulated a Two-Prong Standard to Maintain the Two-Tier System of Liability.**

In the last nine months, the Southern District of New York has issued three opinions interpreting the plain language of FACTA in response to motions to dismiss putative class action complaints purporting to state a claim for a willful violation.  In each case, the court ruled that in order to state a claim for a willful violation pursuant to *Twombly* and *Iqbal*, a plaintiff must plead facts plausibly to suggest the defendant (i) had actual knowledge of FACTA and (ii) despite the actual knowledge, knowingly or recklessly violated FACTA.  They were right.

**a.     *Crupar-Weinmann v. Paris Baguette America, Inc.***

First, in a case filed by Kamal's New York counsel here, *Crupar-Weinmann v. Paris Baguette America, Inc.*, the plaintiff alleged that "on September 19, 2013, [she] purchased food items at Defendants' midtown Manhattan location, paid for the items with a credit card, [and] received an electronically printed receipt displaying the expiration date."[12]  (Case 1:13-cv-07013-JSR, Dkt. Entry #: 1 at ¶ 14).  The plaintiff further alleged that the defendant restaurant had actual knowledge of FACTA.  (*Id.* at ¶¶ 30-34).  Thus, the "central question" before the Southern District was:

> [W]hat plaintiff must plead to show a "knowing violation" under FACTA.  To judge from [the plaintiff's allegations], plaintiff appears to suggest that a knowing violation can be inferred solely from the fact that a defendant knew of the relevant statute and then violated it.  However, plaintiff fundamentally misreads what is required to show a knowing violation under FACTA.

*Id.* at *3.

---

[12]     Because the defendant complied with FACTA's requirements regarding the truncation of credit card digits, the printing of the expiration date represented only partial non-compliance by the defendant.

The court noted that *Safeco* "held that willfulness, for purposes of FACTA, requires either a knowing or reckless violation." *Id.* (citing *Safeco* at 551 U.S. at 56-60).  When viewed in connection with the plausibility standard articulated in *Twombly* and *Iqbal*, the court next held that to survive a motion to dismiss, a complaint must plead "sufficient *facts* to support a *plausible* inference that defendant knew that its conduct was violating the statute, and not simply that defendant knew about the existence of the statutory provision at issue." *Id.* (emphasis added).

Based on the defendant's partial compliance with FACTA, the court determined that there were no facts to support a plausible inference of a knowing or reckless violation:

> The fact that defendant changed its credit card receipt to partially comply with FACTA's requirements renders implausible the claim that defendant was attempting to willfully evade FACTA's restrictions. Plaintiff neither alleges nor offers any reason for this Court to plausibly infer that the defendant would know about FACTA's requirements and change its credit card receipt to comply with one portion of FACTA [the digits requirement], but would intentionally, knowingly, or recklessly choose not remove the expiration date.  At best, the allegation[s] . . . support[] an inference that defendant *negligently* violated FACTA, which does not suffice to state a claim in a case such as this, in which plaintiff does not allege actual damages.

*Id.* at *4 (emphasis added).  The court dismissed the complaint with prejudice.  *Id.*  at *5.[13]

**b.    *Fullwood v. Wolfgang's Steakhouse, Inc., et al.***

Second, in another case filed by Kamal's New York counsel here, *Fullwood v. Wolfgang's Steakhouse, Inc., et al.*, the plaintiff similarly alleged that "on October 3, 2013, [she] ate at Defendant's Park Avenue location, paid for her meal with a credit card, [and] received an

---

[13]    The plaintiff moved for reconsideration and, in attempt to cure the pleading deficiencies, attached a proposed amended complaint to her motion.  (Dkt. 1:13-cv-07013-JSR, Entry #26-3). The court was not persuaded by the additional allegations and denied the motion:  "The new allegations included in the proposed amended complaint are merely conclusory or do not plausibly suggest that defendant acted more than negligently in not complying with FACTA's requirements." *Crupar-Weinmann*, 41 F. Supp. 3d 411, 414 (S.D.N.Y. 2014).

electronically printed receipt displaying the expiration date." (Case 1:13-cv-07174-KPF, Dkt.

Entry #: 5 at ¶ 14) (internal parenthesis omitted).  The plaintiff also asserted that the defendant

restaurant had actual knowledge and, as a result, the alleged non-compliance sufficed to state a

claim for a willful violation.  (*Id.* at ¶¶ 30- 35).  The dispositive question in *Fullwood* was

analogous to the one in *Crupar-Weinmann*:

> [D]oes a willful violation flow automatically once knowledge of
> the statute's requirements is demonstrated? Or must there be
> awareness that the defendant's behavior violates or recklessly runs
> the risk of violating those requirements?

*Fullwood*, 2014 WL 6076733, at *8.

At the outset, the court acknowledged that there was a split in decisions among district

courts across the country:

> Some courts applying *Safeco* to violations of FACTA through
> inclusion of excess data on receipts have held that a complaint
> adequately alleges willfulness because it avers that [a defendant]
> was on notice of FACTA's truncation requirement, and thus it is
> plausible to infer either a knowing or reckless violation from the
> facts pleaded.  *Other courts* have held that "[i]n cases where the
> Defendant is aware of the statute's requirements, the Plaintiff *must
> also allege* that there was something more than a negligent
> violation, i.e. a voluntary, deliberate, or intentional violation."
> *Viodini*, 2012 WL 1565128, at *4; *accord Crupar-Weinmann*,
> 2014 WL 2990110, at *3-4.

*Id.* at *12-13 (first quotation marks and internal citations omitted) (emphasis added).

The court agreed "with the latter camp" because, pursuant to *Twombly*, the "key . . . is for

a complaint to cross the line from a level of knowledge of FACTA's requirements from which it

merely possible to infer a willful violation, to a level from which it is plausible to infer such a

violation."  *Id.* at *14.  The court noted that, to hold otherwise would mean that "if receipt of

information regarding the statute's requirements is all that is necessary, Congress's two-tiered

liability scheme would effectively have negligence read out of the statute."  *Id.* at *9-10.

The court, however, denied the defendant's motion to dismiss without prejudice and granted the plaintiff leave to file an amended complaint. *Id.* at *17.

### c.    *Katz v. Donna Karan Company, LLC, et al.*

Third, and most recently, in *Katz v. Donna Karan Company, LLC, et al.*, the plaintiff alleged that, "[o]n February 2, 2014, [he] used his Visa credit card to make a purchase at Defendants' store [in Manhattan]" and "was given a customer copy of a computer-generated cash register receipt that published the first six digits of [his] credit card number" and "the last four digits of [his] credit card number" (identical to the partial non-compliance here).  (Case 1:14-cv-00740-PAC, Dkt. Entry #1 at ¶¶ 24-25).

In a four-page opinion, the court reaffirmed the standard articulated in *Crupar-Weinmann* and dismissed the complaint with prejudice:

> [T]here are no factual allegations supporting a plausible inference that Defendants knew their conduct violated the truncation requirement or that Defendants consciously chose to violate FACTA.  Moreover, Plaintiff's claim is rendered further implausible by the complaint's failure to reconcile Defendants' partial compliance . . . with its alleged willful non-compliance. At most, Plaintiff's well-pleaded facts permit the Court to infer that Defendant negligently violated FACTA. . . .
>
> . . . Plaintiff's attempt at alleging recklessness—a higher standard, triggering statutory damages—cannot be achieved by merely alleging negligence—a lower standard, triggering actual damages. *Such a conflation not only erodes the difference between negligence and recklessness, but it also renders the pleading standards imposed by Rule 12(b)(6) meaningless; in practice, it would essentially permit all plaintiffs alleging willful FACTA violations to bypass Rule 12(b)(6) and proceed to discovery/summary judgment.*

*Katz*, 2015 WL 405506, at *4 (emphasis added).

Accordingly, all three cases stand for the principle that, when viewed in light of *Twombly* and *Iqbal*, *Safeco* can be read only to mean to that actual knowledge and mere noncompliance cannot state an *ipso facto* claim for a <u>willful</u> violation of FACTA.

**C.    The Southern District's Interpretation is Consistent with Congressional Intent and Common Sense.**

The two-prong standard in articulated in *Crupar-Weinmann* and reaffirmed in *Fullwood* and *Katz* is not only consistent with the plain language of FACTA, but also Congressional intent. With respect to the latter, FACTA's legislative history confirms that Congress did not intend to burden companies with abusive litigation, such as the Amended Complaint filed here.

After FACTA was passed in 2003, "many merchants mistakenly believed that [FACTA] would be satisfied solely by truncating the card number and not the expiration date." *Long*, 671 F.3d at 374; Pub.L. No. 110-241, § 2(a)(3).  As a result, "hundreds of lawsuits were filed alleging that the failure to remove the expiration date was a willful violation . . . even where the account number was properly truncated."  Pub.L. No. 110-241, § 2(a)(4).  In response, Congress amended FACTA so that any merchant who printed an expiration date, but otherwise complied with FACTA up until June 3, 2008, "shall not be in willful noncompliance" with FACTA.  15 U.S.C. § 1681n(d).  In doing so, Congress explicitly noted its intent to "ensure that consumers suffering from any actual harm to their credit or identity are protected *while simultaneously limiting abusive lawsuits that do not protect consumers but only result in increased cost to business and potentially increased prices to consumers*."  Pub.L. No. 110-241, § 2(b) (emphasis added).

If actual knowledge and mere non-compliance were sufficient to support a willful violation—as Kamal suggests—then FACTA would effectively become a strict liability statute. This would result in a floodgate of class action litigation seeking statutory penalties and

attorneys' fees even where a violation of the statute was merely negligent and even where consumers *suffered no actual harm*.  For example, a company could know of FACTA's requirements but then, through a programming error or a computer glitch, print extra digits on credit card receipts without intending to do so.  Under Kamal's "strict liability" theory, the defendant's lack of recklessness or willfulness would be irrelevant—the infraction would automatically be deemed willful, making the two-tiered structure of the statute irrelevant.  No violation would ever be considered negligent, notwithstanding Congress's clear intention to the contrary.

Kamal's theory would spawn precisely the type of "abusive lawsuits that do not protect consumers" that Congress intended to prevent.  (*Id.*)  The path to prevent such frivolous litigation is to give effect to the statutory language, view the Amended Complaint through the prism of *Twombly* and *Iqbal*, and adopt the resulting two-prong standard articulated in *Crupar-Weinmann* and reaffirmed in both *Fullwood* and *Katz*, which rejected similar efforts to create a strict liability standard.

## II.   THE AMENDED COMPLAINT SHOULD BE DISMISSED BECAUSE THERE ARE NO PARTICULARIZED FACTS TO SUPPORT A PLAUSIBLE INFERENCE OF ACTUAL KNOWLEDGE (PRONG ONE).

Kamal attempts to plead a plausible inference of actual knowledge based on four categories of allegations in the Amended Complaint:

1. General advertisements and publicity related to FACTA;

2. Contracts Kamal assumes J. Crew entered into with VISA, MasterCard, American Express, and Discover;

3. Other communications related to FACTA Kamal assumes were received by J. Crew; and

4. Correspondence Kamal assumes J. Crew received from its liability insurance carrier.

*See supra* at p. 6.  The allegations in these categories are not specific to J. Crew as they are

merely copied and pasted from Kamal's counsel's prior FACTA complaints.  If directed at J.

Crew, they are alternatively factually misleading or inaccurate.  As a result, these allegations

state—at best—a *possible* inference that J. Crew had knowledge of FACTA's requirements.

However, a mere possibility falls short of the plausibility standard required under Federal Rule

of Civil Procedure Rule 8(a).  *See Iqbal*, 556 U.S. at 678 ("The plausibility standard is not akin

to a 'probability requirement' but it asks for more than a sheer possibility that a defendant has

acted unlawfully.") (quoting *Twombly*, 550 U.S. at 556).

A.     **Category One – General Advertisements and Publicity Related to FACTA.**

Kamal first alleges that "there was extensive publicity regarding [FACTA's]

requirements" after its passage.  (Am. Compl. at ¶ 27).  To exemplify, the Amended Complaint

lists the following publications:

- ¶ 28:  In the January 2005 edition of the Massachusetts Restaurant Association Newsletter, an article appeared apprising Association members that both Visa and MasterCard require truncation of all but the last four digits of the cardholder account number.

- ¶ 29:  The April 2005 edition of the FOOD INDUSTRY ADVISORY, the newsletter for the Pennsylvania Food Merchants Association and Pennsylvania Convenience Store Council, included an article regarding the requirements of credit card truncation under FACTA . . .

- ¶ 30:  This same article appeared in the April 2005 Edition of NACS Magazine, published by the National Association of Convenience Stores.

- ¶ 31:  The Independent Insurance Agents & Brokers of America circulated a report to its members dated June 5, 2010, titled:  "Overview of the Fair Credit Reporting Act, The Fair and Accurate Credit Transactions Act, and the Drivers Privacy Protection Act." . . .

- ¶ 34:  For example, the cover-article in the Winter 2007 edition of TEXAS BUSINESS TODAY includes an extensive discussion of the truncation requirements of FACTA.

(Emphasis added).  These allegations do not satisfy *Twombly* and *Iqbal* for two reasons.

First, the Amended Complaint does not allege that J. Crew actually received and/or reviewed the cited list of articles or correspondence.  Indeed, in reviewing similar allegations, Judge Salas granted a FACTA motion to dismiss because "Plaintiffs neither assert nor show that this Defendant in particular actually received, reviewed, or was otherwise made familiar with FACTA's requirements."  *Reed*, 2014 WL 7370031, at *3; *see also Huggins v. SpaClinic, LLC*, No. 082667, 2010 WL 963924, at *2 (N.D. Ill. Mar. 11, 2010) (dismissing a FACTA claim when plaintiff alleged that "FACTA's requirements were well-publicized" because those allegations were "not specific to the defendant"); *Crupar-Weinmann*, 2014 WL 2990110, at *4 (finding similar allegations "merely conclusory" and "fail to establish . . . defendant's knowledge of FACTA").

Second, the allegations are copied and pasted from prior FACTA complaints that Kamal's New York counsel filed in the Southern District and those allegations have already been rejected there as insufficient.  Tellingly, J. Crew is an apparel and accessories retailer, yet the Amended Complaint refers to newsletters sent to *restaurants*.  (Am. Compl. at ¶¶ 28, 29).  Not coincidentally, the defendants in *Crupar-Weinmann* and *Fullwood* were, indeed, restaurants.  (*See* Case 1:13-cv-07013-JSR, Dkt. Entry #: 1 at ¶ 14; Case 1:13-cv-07174-KPF, Dkt. Entry #: 5 at ¶ 14).  These same exact allegations in the Amended Complaint also appear in the amended pleadings in those two cases.  (*Compare* Am. Compl. at ¶¶ 28-31, 34, *with* Case 1:13-cv-07013-JSR, Dkt. Entry #: 26-3 at ¶¶ 30-32, 35, *and* Case 1:13-cv-07174-KPF, Dkt. Entry #: 27 at ¶¶ 31-33, 36).  "*Twombly* and *Iqbal* teach that such cut-and-paste jobs are not a substitute for real facts that plausibly 'show,' under Rule 8, that the Plaintiff is entitled to relief."  *Gardner v. Appleton Baseball Club, Inc.*, No. 09-C-705, 2010 WL 1368663, at *6 (E.D. Wis. March 31, 2010); *see*

*also Bilodeau v. McAfee*, No. 12-cv-04589-LHK, 2013 WL 3200658, at *8 n.1 (N.D. Cal. June 24, 2013) ("This Court joins others that have cautioned Plaintiff's counsel that the copying and pasting of claims from one complaint to another is disfavored and undermines the claims for relief.") (internal quotation marks omitted).

This first category of allegations therefore fails to state a plausible claim that J. Crew had actual knowledge of FACTA and its requirements.

### B. Category Two – Contracts with Credit Card Companies.

Kamal next argues that the credit card companies J. Crew does business with "directly informed Defendants about FACTA." (Am. Compl. at ¶ 44). Kamal thereafter refers to "manuals" printed by Visa, MasterCard, and Discover for use by their "merchants" (the "Manuals") and cites therein to truncation-related requirements that the merchants are to abide by.[14] (*Id.* at ¶¶ 45-57). Kamal overstates the relevance of the Manuals.

As an initial matter, there are no allegations that J. Crew received or reviewed the Manuals. Moreover, the truncation-related requirements in the Manuals that Kamal quotes in the

---

[14] The Manuals are not attached to the Amended Complaint. However, a review of them in their entirety demonstrates that there are numerous factual inaccuracies in the Amended Complaint.

With respect to VISA, the Amended Complaint alleges that "[t]he latest edition is the 2011 edition." (Am. Compl. at ¶ 47). That is incorrect—there is a 2014 edition. *See* Card Acceptance Guidelines for Visa Merchants, http://usa.visa.com/download/merchants/card-acceptance-guidelines-for-visa-merchants.pdf.

With respect to MasterCard, the Amended Complaint alleges that "[t]he latest edition is dated 30 August 2013." *Id.* at ¶ 51. Again, that is incorrect—there is a February 5, 2015 edition, which was issued over a month prior to Kamal's filing of the Amended Complaint on March 25, 2015. *See* Security Rules and Procedures, http://www.mastercard.com/us/merchant/pdf/SPME-Entire_Manual_public.pdf. Moreover, Kamal refers to Section 3.11.4, "Primary Account Number Truncation and Expiration Date" in the "Security Rules and Procedures" manual for MasterCard. (Am. Compl. at ¶ 53). Section 3.11.4 is not included in the 2015 edition, and its contents are instead contained in a separate manual, MasterCard's Transaction Processing Rules Manual (which is not referred in the Amended Complaint).

Amended Complaint do not state that they are being imposed because FACTA mandates them.[15]

For example, the snippets do not contain the following language: "FACTA states that retailers

shall not 'print more than the last 5 digits of the [credit] card number or the expiration date upon

any receipt provided to the cardholder.'" (quoting 15 U.S.C. § 1681c(g)(1)). However, even if

the Manuals *did* explicitly inform merchants of FACTA's truncation requirements, this Court

rejected a similar argument that the Manuals constitute particularized *facts* to state a plausible

claim against a defendant:

> Additionally, the fact that credit card companies advised
> *merchants* of FACTA's requirements is in no way specific to
> Defendant, and such a generalized fact "could be alleged against
> *any* alleged FACTA violator, and as such [it is] essentially
> boilerplate."

*Reed*, 2014 WL 7370031, at *3 (emphasis and alterations in original) (quoting *Gardner*, 2010

WL 1368663, at *6); *see also Fullwood*, 2014 WL 6076733, at *9 ("Because credit card

companies have incorporated FACTA's requirements into their contracts, virtually every

merchant has been provided information regarding these rules to a similar extent as

Defendants.").

    This second category of allegations similarly fails to state a plausible claim that J. Crew

had actual knowledge of FACTA and its requirements.

### C.     Category Three – Other Communications Purportedly Received by J. Crew.

    Kamal further argues—upon information and belief—that J. Crew purportedly "received

periodic communications from credit card issuers advising them to not print more than the last

five digits of the credit card number." (Am. Compl. at ¶ 59). Allegations related to those

"periodic communications" include:

---

[15]     At best, a violation of the truncation requirements by a merchant would give rise to a breach of contract claim by the credit card company against that merchant.

- ¶ 60:  Upon information and belief, prior to the transactions at issue, Defendants received statements from their merchant bank . . . which apprised Defendants of their obligations to not print more than the last five digits of the credit card number.

- ¶ 61:  Upon information and belief, prior to the transactions at issue, Defendants received written information from their POS (Point of Sale) provider(s) apprising Defendants of their obligation to not print more than the last five digits of the credit card number.

- ¶ 62:  Upon information and belief, prior to the transactions at issue, Defendants received information from trade associations and/or other similar entities apprising Defendants of their obligation to not print more than the last five digits of the credit card number.

(Emphasis added) (internal parenthesis omitted).

Similar to the first two categories of allegations, Kamal does not allege that J. Crew *actually* received and/or reviewed any of the above communications.  Moreover, the deficiency of these allegations is confirmed in that they too are taken nearly verbatim from the amended complaints in *Crupar-Weinmann* and *Fullwood*.  (*Compare* Am. Compl. at ¶¶ 60-62, *with* Case 1:13-cv-07013-JSR, Dkt. Entry #: 26-3 at ¶ 60, *and* Case 1:13-cv-07174-KPF, Dkt. Entry #: 27 at ¶¶ 62-64).[16]

This third category of allegations also falls short of satisfying the *Twomby* and *Iqbal* pleading standards.

### D.   Category Four – Purported Correspondence from J. Crew's Liability Insurer.

In the fourth and final category, the Amended Complaint alleges that J. Crew had knowledge of FACTA based on hypothetical correspondence from its insurance carrier:

---

[16]   With respect to *Fullwood*, on February 27, 2015, the defendant's counsel informed the court of his "intent to file a motion pursuant to Rule 11 for sanctions" based on these very allegations.  (Dkt. 1:13-cv-07174-KPF, Entry #: 35 at p.1).  According to the defendant's counsel, "Plaintiff and her counsel merely copied nearly verbatim large swaths of the [amended complaint] from previously filed complaints in unrelated FACTA actions."  (*Id.*).  To illustrate, counsel provided a chart outlining the *nine* complaints that contained nearly identical allegations. (*Id.*, Entry #: 35-1).

> Upon information and belief, prior to the transactions at issue,
> Defendants received information from their liability insurance
> carrier terminating coverage for FACTA liability.  Commercial
> insurance coverage is negotiated for and bound by the signature of
> senior management and the specifics of the coverage are closely
> monitored.  In addition, the exclusions from an insurance policy
> can often be added back by riders—at additional cost.  That is part
> of the negotiation.

(Am. Compl. at ¶ 64).

The plaintiff, through Kamal's New York counsel here, pled a variation of this theory in the amended complaints in *Crupar-Weinmann* and *Fullwood*.  (Case 1:13-cv-07013-JSR, Dkt. Entry #: 26 at ¶ 67-69; Case 1:13-cv-07174-KPF, Dkt. Entry #: 27 at ¶¶ 67-69).  Specifically, it was alleged in those pleadings that *after* the original complaint was filed, insurance carriers for both defendant restaurants notified *the plaintiff's counsel* that coverage was being denied "because, among other things, the insurance policy specifically excludes a violations of the Fair and Accurate Credit Transaction Act."  (Dkt. 1:13-cv-07013-JSR, Entry #: 26-3 at ¶ 67; *see also* Dkt. 1:13-cv-07174-KPF, Entry # 27 at ¶ 67).  Whereas the court in *Fullwood* has not passed yet on the sufficiency of those allegations, the *Crupar-Weinmann* court stated in its opinion denying reconsideration that such allegations support a plausible inference that the defendant had actual knowledge.  *Crupar-Weinmann*, 41 F. Supp. 3d at 414.  That same result is *not* required here.

In this case, J. Crew's insurer is not alleged to have sent *any* coverage letter to Kamal's counsel.  Whereas Kamal's counsel in those other actions *had correspondence in their hand* that they incorporated into the amended complaints, here, there is no such letter alleged.  Kamal is simply speculating about what type of insurance coverage J. Crew may or may not have, whether coverage is or is not available, and whether any such coverage determination has been communicated to J. Crew.  *See Johnson v. Maynard*, Civil Action No. 11-4677(RMB), 2013 WL 6865584, at *5 (D.N.J. Dec. 23, 2013) ("'[T]he pleading standard of Rule 8 is that detailed in

*Iqbal*; thus, Plaintiff cannot plead his mere guesses or self-serving deducements, speculations, [or] bold conclusions . . . .  His facts should show that the alleged wrong was *more* than possible") (emphasis in original).

Consequently, the allegations in the Amended Complaint fail to allege particularized facts to state a plausible inference that J. Crew had actual knowledge of FACTA and its requirements, as required under prong one of the applicable pleading standard.

## III.    THE AMENDED COMPLAINT SHOULD BE DISMISSED BECAUSE THERE ARE NO PARTICULARIZED FACTS TO SUPPORT A PLAUSIBLE INFERENCE OF KNOWING OR RECKLESS CONDUCT (PRONG TWO).

Even if the allegations were sufficient to show that J. Crew did have actual knowledge of FACTA and its requirements (prong one)—which they are not—the Amended Complaint still should be dismissed because there are no particularized facts to support a plausible inference of "something more than a negligent violation, i.e. a voluntary, deliberate, or intentional violation" (prong two).  *Fullwood*, 2014 WL 6076733, at *13 (internal quotation marks omitted).  Simply put, "it is insufficient for a plaintiff to show merely that a defendant knew of the potential applicability of FACTA or that the statute was in the picture" (prong one), and courts have dismissed complaints with prejudice based on the failure to plead particularized facts in accordance with the second prong.  *Id.* (internal quotation marks omitted); *see also Crupar-Weinmann*, 41 F. Supp. at 415 (affirming dismissal with prejudice because "[t]he new allegations included in the proposed amended complaint . . . do not plausibly suggest that defendant acted more than negligently in not complying with FACTA's requirements"); *Katz*, 2015 WL 405506, at *3-4 (dismissing complaint with prejudice because the "complaint is devoid of any well-pleaded facts which allow the plausible inference that Defendants willfully, knowingly, or recklessly violated FACTA").

In the original Complaint, Kamal attempted to meet the second prong by alleging that J. Crew printed extra credit card numbers in order "to monitor each customer's specific purchases and returns, compile such data from stores across the United States, and share same within the entire J. Crew network." (Compl. at ¶ 49). In its initial motion to dismiss, J. Crew established that those allegations were "nothing more than Kamal's and his' counsel's improper guesses or [their] self-serving deducements, speculations, [or] bold conclusions," and Kamal retreated from them in his Amended Complaint. (Dkt. #: 15-1 at p. 13) (internal quotation marks omitted) (alteration in original). Indeed, Kamal made the strategic decision not to plead in the Amended Complaint *any* alternative particularized facts alleging how or why J. Crew would knowingly or recklessly violate a federal statute and risk millions of dollars in statutory penalties in exchange for no offsetting potential economic gain.

## IV.   AT A MINIMUM, THIS COURT SHOULD DISMISS ALL DEFENDANTS WHO ARE NOT PROPER PARTIES TO THIS LAWSUIT.

Even if the Court were to deny the preceding elements of this Motion (which it should not), all defendants but J. Crew Group, Inc. should nevertheless be dismissed because they are not proper parties to this lawsuit.

Kamal alleges that pursuant to a merger, Chinos Holdings, Inc. acquired J. Crew Group, Inc. "by merging its subsidiary, defendant Chinos Acquisition Corporation with . . . J. Crew Group, Inc., which remained the surviving corporation." (Am. Compl. at ¶ 11). As a result, defendant Chinos Acquisition Corporation no longer exists and should be dismissed from this action. Furthermore, Chinos Holding, Inc. is the parent of J. Crew Group, Inc., and there are no allegations in the Complaint to suggest that the corporate veil of the parent should be pierced. *See Pearson v. Component Tech. Corp.*, 241 F.3d 471, 484 (3d Cir. 2001) (stating it is "deeply

ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries").

With respect to the six J. Crew entities listed as defendants, two of them—J. Crew Intermediate LLC and J. Crew Services, Inc.—no longer exist and should be dismissed. Moreover, J. Crew Inc., J. Crew International, Inc., and J. Crew Operating Corp. are subsidiaries of J. Crew Group, Inc.  *See*  J. Crew Group, Inc., Subsidiaries of J. Crew Group, Inc. (Ex. 21.1), http://www.sec.gov/Archives/edgar/data/1051251/000119312511072649/dex211.htm.  Kamal alleges that J. Crew Group, Inc., the surviving corporation from the merger described above, "became the face of the 'J. Crew' name throughout the world," (Am. Compl. at ¶ 11), and there are no facts pled alleging its three subsidiaries were involved at all in his purchase transactions or the purportedly willful decision to violate FACTA.   Accordingly, the lack of any specific allegations as to J. Crew Inc., J. Crew International, Inc., and J. Crew Operating Corp. warrant their dismissal, leaving only J. Crew Group, Inc. as the sole defendant (if the case survives this Motion at all).

## CONCLUSION

Kamal has failed to state a claim for a willful violation of FACTA.  Because Kamal has already amended the pleading once, and any further amendment would be futile, dismissal with prejudice is therefore appropriate.  *See Creston Elecs., Inc. v. Cyber Sound & Sec. Inc.*, Civil Case No. 11-3492(FSH), 2012 WL 426282, at *13 (D.N.J. Feb. 9, 2012) ("Cyber Sound has already amended its counterclaims once in response to Crestron's first motion to dismiss and has, therefore, 'presented [its] best allegations, and . . . any further amendment would not cure the deficiencies'") (quoting *Dock v. Rush*, 423 Fed. Appx. 130, 134 (3d Cir. 2011)); *see also Tucker v. Newark Police Dep't.*, Civil No. 09-4021(SRC), 2007 WL 1395439, at *2 (D.N.J. Dec. 14, 2010) (dismissing amended complaint with prejudice where plaintiff was "given an opportunity

to remedy the deficiencies of his pleading in th[e] action").


Respectfully submitted,

**DLA PIPER LLP (US)**

s/ Andrew O. Bunn

Andrew O. Bunn                                     Keara M. Gordon (admitted *pro hac vice*)
James V. Noblett                                    DLA Piper LLP (US)
Steven R. Marino                                   1251 Avenue of Americas
DLA Piper LLP (US)                             New York, New York 10020-1104
51 John F. Kennedy Parkway, Suite 120   Telephone: (212) 335-4632
Short Hills, New Jersey 07078-2704      Facsimile: (212) 884-8632
Telephone: (973) 520-2562                   *Attorneys for Defendants*
Facsimile: (973) 520-2582
*Attorneys for Defendants*

Dated: April 8, 2015