**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  X
                  :

AHMED KAMAL, on behalf of himself and
the putative class,            :  Case No. 2:15-cv-00190-WJM-MF

        Plaintiff,        :  *ELECTRONICALLY FILED*

    v.             :
                  :
J. CREW GROUP, INC., et al.  :  Returnable:  August 1, 2016
                  :
        Defendants.     :  ORAL ARGUMENT REQUESTED
                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  X

---

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS
THE AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL
PROCEDURE 12(b)(1) DUE TO LACK OF STANDING**

---

        **DLA PIPER LLP (US)**
        51 John F. Kennedy Parkway, Suite 120
        Short Hills, New Jersey 07078-2704
        Telephone No.: (973) 520-2550
        Fax No.: (973) 520-2551
        *Attorneys for Defendants*

Of Counsel:
     Keara M. Gordon (admitted *pro hac vice*)
     Andrew O. Bunn

On the Brief:
     James V. Noblett
     Steven R. Marino

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT.................................................................................................................... 2

I.      SPOKEO REQUIRES THAT A "BARE PROCEDURAL VIOLATION" BE
        ACCOMPANIED BY "CONRETE HARM."...................................................... 2

        A.      Kamal Does Not Allege that He Suffered any "Concrete Harm".......................... 3

        B.      Kamal Alleges Only a "Bare Procedural Violation" .......................................... 7

II.     "HISTORY AND THE JUDGMENT OF CONGRESS" CANNOT SAVE THE
        AMENDED COMPLAINT ................................................................................ 7

        A.      Kamal's Reliance on Historical Origins of Protected Privacy Rights is
                Misplaced.......................................................................................... 7

                i.      Nickelodeon and Google Address a Plaintiff's Right to Seek
                        Redress for "Unauthorized Disclosures" of Private Information .............. 7

        B.      Kamal's Reliance on Congressional Intent is Misplaced ..................................... 9

CONCLUSION............................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Anjelino v. New York Times Co.,
   200 F.3d 73 (3d Cir. 1999)....................................................................................................3

Broderick v. 119TCbay, LLC,
   670 F. Supp. 2d 612 (W.D. Mich. 2009) ..........................................................................9, 10

Doe v. Chao,
   540 U.S. 614 (2004)............................................................................................................8

Gladstone Realtors v. Village of Bellwood,
   441 U.S. 91 (1979).............................................................................................................2

Gubala v. Time Warner Cable, Inc.,
   Case No. 15-cv-1078, 2016 WL 3390415 (E.D. Wis. June 17, 2016) ..................................3, 8

In re Google Inc. Cookie Placement Consumer Privacy Litig.,
   806 F.3d 125 (3d Cir. 2015)..........................................................................................1, 7, 8

In re Nickelodeon Consumer Privacy Litig.,
   -- F. 3d --, 2016 WL 3513782 (3d Cir. June 27, 2016).................................................. passim

In re Nickelodeon Consumer Privacy Litig.,
   MDL No. 2443, 2014 WL 3012873 (D.N.J. July 2, 2014).......................................................4

In re Nickelodeon Consumer Privacy Litig.,
   MDL No. 2443, 2015 WL 248334 (D.N.J. Jan. 20, 2015) ......................................................5

In re Toys "R" Us-Delaware Inc.-Fair and Accurate Credit Transactions Act (FACTA)
   Litig.,
   2010 WL 5071073 (C.D.Cal. Aug. 17, 2010)........................................................................9

Jamison v. Bank of Am., N.A.,
   No. 2:16-cv-00422, 2016 WL 3653456 (E.D. Cal. July 7, 2016)............................................3

Sartin v. EFK Diagnostics, Inc.,
   Civil Action No. 16-1816, 2016 WL 3598297 (E.D. La. July 5, 2016) ...................................3

Smith v. Ohio State University,
   -- F Supp. 3d. --, 2016 WL 3182675 (S.D. Ohio June 8, 2016) ..............................................3

Spokeo, Inc. v. Robins,
   136 S. Ct. 1540 (2016)................................................................................................ passim

Summers v. Earth Island Institute,
    555 U.S. 488 (2009)...................................................................................................2

**RULES**

Federal Rule of Civil Procedure 12(b)(1) ....................................................................10

**STATUTES/PUBLIC LAWS**

Cable Communications Policy Act ("CCPA") ................................................................3

Credit and Debit Receipt Clarification Act of 2007 (the "Clarification Act") ..............................10

Fair and Accurate Credit Transaction Act of 2003 ("FACTA")........................................... passim

Fair Credit Reporting Act ("FCRA").....................................................................1, 3, 5

Telephone Consumer Protection Act of 1991 ("TCPA") ................................................3

Truth in Lending Act of 1986 ("TILA")..................................................................3

**OTHER AUTHORITIES**

Bin List (Binlist) & Bin Ranges: List of Issuer Identification Numbers,
    https://www.bindb.com/bin-list.html............................................................................9

Black's Law Dictionary (10th ed. 2014)............................................................................6

Merriam-Webster's Collegiate Dictionary 356 (11th ed. 2012)......................................................6

**PRELIMINARY STATEMENT**

In Spokeo, Inc. v. Robins, the Supreme Court acknowledged that "[a] violation of one of the FCRA's [Fair Credit Reporting Act] procedural requirements *may result in no harm*." 136 S. Ct. 1540, 1550 (2016) (emphasis added). This is a case in which the alleged violations by Defendant J. Crew of the Fair and Accurate Credit Transaction Act of 2003 ("FACTA"), a subset of FCRA, "result[ed] in no harm" to Plaintiff Ahmed Kamal, depriving him of standing to sue.

There can be no dispute that Kamal alleges "a bare procedural violation, divorced from any concrete harm." Id. at 1549. As explained in J. Crew's opening brief, Kamal does not allege that the three receipts he received were misappropriated, that the information therein was disclosed to any third parties, or that his identify has been (or will be) stolen. Instead, the receipts were allegedly *handed to Kamal* physically by J. Crew employees, and they have been in the possession of *Kamal or his authorized representatives* (his lawyers) ever since. Nothing in Kamal's opposition overcomes his lack of "concrete harm," and this Court should reject his attempts to analogize this case to the actual, concrete harm suffered by Internet users when their user information and online activity was collected and disclosed, without their knowledge or consent, for purposes of delivering targeted advertisements. See In re Nickelodeon Consumer Privacy Litig., -- F. 3d --, 2016 WL 3513782 (3d Cir. June 27, 2016); In re Google Inc. Cookie Placement Consumer Privacy Litig., 806 F.3d 125 (3d Cir. 2015). This case is very different.

This Court should also reject Kamal's argument that he has the automatic right to sue—in the absence of any concrete harm—because Congress purportedly afforded him that right under FACTA. The Supreme Court in Spokeo already rejected such a blanket right to sue: "Congress' role in identifying and elevating intangible harms *does not* mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and

1

purports to authorize that person to sue to vindicate that right." Id. at 1549 (emphasis added).

Indeed, decades of Supreme Court precedent have made clear that notwithstanding Congress's

intent, "the requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be

removed by statute." Summers v. Earth Island Institute, 555 U.S. 488, 497 (2009); see also

Gladstone Realtors v. Village of Bellwood, 441 U.S. 91, 100 (1979) ("In no event . . . may

Congress abrogate the Art. III minima"). Spokeo now drives that point home.

In sum, Kamal cannot escape the reality that he has alleged nothing more than "a bare

procedural violation, divorced from any concrete harm." Spokeo, 136 S. Ct. at 1549. Recent

Supreme Court precedent reinforces that, without more, Kamal does not have standing to sue

under FACTA. The Amended Complaint should therefore be dismissed.

## ARGUMENT

### I.  SPOKEO REQUIRES THAT A "BARE PROCEDURAL VIOLATION" BE ACCOMPANIED BY "CONRETE HARM."

Spokeo, as the most recent Supreme Court decision addressing standing, is the guidepost

by which this Court should assess whether Kamal has pled an "injury in fact" sufficient to confer

standing. There, the Supreme Court stated *twice* that a "bare procedural violation," without any

associated "concrete harm" does *not* satisfy the constitutional requirement of standing:

- "[Plaintiff] could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." Id. at 1549.

- "[Plaintiff] cannot satisfy the demands of Article III by alleging a bare procedural violation. A violation of one of the FCRA's procedural requirements may result in no harm." Id. at 1550.

Kamal attempts to minimize those statements in his opposition. However, courts

assessing standing post-Spokeo have not overlooked Justice Alito's statements but, instead,

dismissed cases where, as here, a procedural violation of a statutory scheme was *not*

accompanied by "concrete harm."  See, e.g., Jamison v. Bank of Am., N.A., No. 2:16-cv-00422, 2016 WL 3653456, at *4 (E.D. Cal. July 7, 2016) (dismissing claim under the Truth in Lending Act of 1986 ("TILA") because "a procedural violation of the TILA requirements . . . does not inherently establish concrete harm"); Sartin v. EKF Diagnostics, Inc., Civil Action No. 16-1816, 2016 WL 3598297, at *4 (E.D. La. July 5, 2016) (dismissing claim under the Telephone Consumer Protection Act of 1991 ("TCPA") because the "allegations in the complaint establish nothing more than a bare violation of the TCPA, divorced from any concrete harm to [the plaintiff]"); Gubala v. Time Warner Cable, Inc., Case No. 15-cv-1078, 2016 WL 3390415, at *5 (E.D. Wis. June 17, 2016) (dismissing claim under the Cable Communications Policy Act ("CCPA") because "[g]iven the clear directive in Spokeo," the plaintiff did "not allege a concrete harm" in addition to the underlying procedural violation of the CCPA); Smith v. Ohio State University, -- F Supp. 3d. --, 2016 WL 3182675, at *4 (S.D. Ohio June 8, 2016) (dismissing putative class action under FCRA because plaintiffs "admitted that they did not suffer a concrete consequential damage as a result of [defendant's] alleged breach of the FCRA").

Kamal's attempts to characterize Spokeo as "of limited scope" and a "bizarre" and "unusual" case (ECF No. 51, Pl.'s Opp'n Br. to Mot. to Dismiss ("Opp. Br."), at p. 4) are undermined by the fact that courts across the country have affirmatively acted upon the holding that a "bare procedural violation, divorced from any concrete harm," does *not* satisfy Article III, Spokeo, 136 S. Ct. at 1549.  This Court should do the same.

**A.  Kamal Does Not Allege that He Suffered any "Concrete Harm".**

Kamal has not pled facts in the Amended Complaint to meet the "concrete harm" requirement articulated in Spokeo necessary to elevate his claim beyond that of a "bare procedural violation."  See Anjelino v. New York Times Co., 200 F.3d 73, 88 (3d Cir. 1999)

3

("Standing is established at the pleading stage by setting forth specific facts that indicate that the party has been injured in fact or that injury is imminent . . . ").

Kamal allegedly purchased items at three J. Crew stores and J. Crew printed a receipt in partial compliance with FACTA, which they were physically handed to Kamal.  (ECF No. 21, Am. Compl. at ¶¶ 1, 68-70).  Absent from the Amended Complaint are any allegations that:

- The three receipts were lost, misplaced, or stolen, or were ever in the possession of an unauthorized third party;

- The credit card information displayed in any of the three receipts was ever disclosed to a third party;

- Any unauthorized purchases were made on the credit card Kamal used to make the three purchases;

- Kamal had to obtain a new credit card;

- Kamal's identity was stolen; or

- There is a future risk that Kamal's identity will be stolen.

(See also ECF No. 50-1, Dfs.' Moving Br. in Supp't of Mot. to Dismiss ("Mov. Br"), at pp. 8-10).  In other words, Kamal's situation would be no different if he took the receipts and placed in them in drawer in his desk, locked the drawer, and threw away the key.

Kamal nonetheless argues in his opposition that he suffered concrete "harm" sufficient to confer standing.  In support of this assertion, Kamal relies primarily on a recent decision by the Third Circuit, In re Nickelodeon Consumer Privacy Litig., -- F. 3d --, 2016 WL 3513782 (3d Cir. June 27, 2016), which is distinguishable for multiple reasons.

First, the plaintiffs in Nickelodeon pled five statutory claims and one common law claim. Judge Chesler first dismissed three claims with prejudice and three claims without prejudice.  In re Nickelodeon Consumer Privacy Litig., MDL No. 2443, 2014 WL 3012873 (D.N.J. July 2, 2014).  After the plaintiffs repled, Judge Chesler then dismissed the remaining three claims with

prejudice.  In re Nickelodeon Consumer Privacy Litig., MDL No. 2443, 2015 WL 248334

(D.N.J. Jan. 20, 2015).  On appeal, the Third Circuit affirmed the dismissal of all of the statutory

claims and vacated only the dismissal of the common law claim (intrusion upon seclusion).

Nickelodeon, 2016 WL 3513782 at *2.  Thus, unlike Spokeo, the Third Circuit did not address

whether a violation of a statute, without more, is sufficient to confer standing.  See, Spokeo, 136

S. Ct. at 1544 ("This case presents the question of whether respondent Robins has standing to

maintain an action in federal court against petitioner Spokeo under the [FCRA].").

        Second, Nickelodeon involved "unlawfully collected personal information about

[plaintiffs] on the Internet, including what webpages [children] visited and what videos they

watched on Viacom's websites."  Nickelodeon, 2016 WL 3513782 at *1.  Specifically, the

defendants allegedly "unlawfully used cookies[1] to track" children's web browsing habits and to

"collect[] information" to "sell targeted advertising."  Id. at *3, *4.  As such, Nickelodeon

involved complex privacy concerns and the use of intrusive surveillance "cookies" without

plaintiffs' notice or permission, whereas this case involves merely printing a receipt from a

brick-and-mortar store.

        Third, given the nature of the factual allegations, the limited standing analysis by the

Third Circuit was confined to the improper *disclosure* of information on the Internet by Viacom

to Google that Google, in turn, compiled to track children's internet usage.  Nickelodeon, 2016

WL 3513782 at *3.  The Third Circuit emphasized that those allegations of unlawful *disclosure*

*to a third party* were sufficient to find that the plaintiffs had suffered a post-Spokeo "injury in

fact":

---

[1]        "An Internet 'cookie' is a small text file that a web server places on a user's computing
device.  Cookies allow a website to 'remember' information about a user's browsing activities
(such as whether or not the user is logged-in, or what specific pages the user has visited)."  Id. at
*2.

> The purported injury here is clearly particularized, as each plaintiff complains about the *disclosure* of information relating to his or her online behavior.  While perhaps "intangible," the harm is also concrete in the sense that it involves a clear *de facto* injury, *i.e.*, *the unlawful disclosure of legally protected information*.

Id. at \*7 (emphasis added).  Kamal latches onto this disclosure language in his opposition.  (See Opp. Br. at p. 6).  Kamal even goes as far as to argue that it summarily "disposed of the standing questing raised by J. Crew."  (Id. at p. 1).  That is not so.

Fatal to Kamal's reliance on Nickelodeon is the fact that this is simply *not* an improper *disclosure* case—the words "disclose" or "disclosure" never appear in the Amended Complaint. (Compare ECF No. No. 21, Am. Compl., with 7/20/16 Bunn Decl., Ex. A, Amended Complaint in Nickelodeon, at ¶ 2 ("this is a case about Defendant[s'] . . . misuse of Internet technology to *disclose*[,] compile, store, and exploit the video viewing histories and Internet communications of minor children") (emphasis added) (internal citations omitted)).  Nor could they be.

Black's Law Dictionary defines "disclose" as "[t]o make (something) *known or public*; to show (something) after a period of inaccessibility or of being unknown; *to reveal*."  Black's Law Dictionary (10th ed. 2014) (emphasis added).  Webster's Dictionary similarly defines "disclose" to include "to make *known or public*."  Merriam-Webster's Collegiate Dictionary 356 (11th ed. 2012) (emphasis added).  Kamal's credit card information has *not* been made "known or public." Kamal does not allege that anyone besides himself or his lawyers have ever seen—or will ever see—his three receipts.  It defies logic for Kamal to argue that he suffered "harm" akin to those who had their online information collected and *disclosed* against their knowledge and without their authorization.  Because Kamal's personal information has not been disclosed, Kamal's

reliance on <u>Nickelodeon</u> and related cases is misplaced.  Kamal has not alleged a "concrete

harm" sufficient to meet the "injury in fact" standing requirements as articulated in <u>Spokeo</u>.[2]

**B.  Kamal Alleges Only a "Bare Procedural Violation".**

Without any "concrete harm," the Amended Complaint contains nothing more than "a

bare procedural violation."  <u>Spokeo</u>, 136 S. Ct. at 1549-50; Mov. Br. at p. 11.  The Supreme

Court recognized in "some circumstances" it may be the case that "[a] violation of one of the

FCRA's procedural requirements may result in *no harm*."  <u>Spokeo</u>, 136 S. Ct. at 1549-50

(emphasis added).  This is one of those cases.

## II. "HISTORY AND THE JUDGMENT OF CONGRESS" CANNOT SAVE THE AMENDED COMPLAINT.

According to Kamal, it is of no moment that he alleges a "bare procedural violation,

divorced from any concrete harm" because "history and the judgment of Congress" allow him to

do so under FACTA.  <u>Id.</u> at 1549.  But, "history and the judgment of Congress" cannot be used

by Kamal to overcome the Constitution.

**A.  Kamal's Reliance on Historical Origins of Protected Privacy Rights is Misplaced.**

**i.  <u>Nickelodeon</u> and <u>Google</u> Address a Plaintiff's Right to Seek Redress for "Unauthorized Disclosures" of Private Information.**

The linchpins to Kamal's opposition, <u>Nickelodeon</u> and <u>Google</u>, fail to advance Kamal's

positions here.  Kamal cites to the following language in <u>Nickelodeon</u>:

---

[2]     Kamal relies on a 2015 opinion (predating <u>Spokeo</u>) that addressed privacy concerns related to the use of "cookies."  <u>In re Google Inc. Cookie Placement Consumer Privacy Litig.</u>, 806 F.3d 125 (3d Cir. 2015).  <u>Google</u> is distinguishable for the same three reasons as <u>Nickelodeon</u>.  For example, the Third Circuit acknowledged that Judge Chesler did not "definitively resolv[e] the standing challenge," and the Third Circuit's standing analysis is similarly concise.  <u>Id.</u> at 134-35.  Moreover, the underlying conduct at issue in <u>Google</u> also dealt with dissemination of online information to enhance advertising opportunities.  <u>Id.</u> at 131-33.

>Insofar as Spokeo directs us to consider whether an alleged injury-in-fact has traditionally been regarded as providing a basis for a lawsuit, Google noted that Congress has long provided plaintiffs with the right to seek redress for unauthorized disclosures of information that, in Congress's judgment, ought to remain private.

(Opp. Br., at p. 1) (quoting Nickelodeon, 2016 WL 3513782, at *7) (internal alteration and quotation marks omitted).  Nickelodeon relies on  the Third Circuit's prior statement in Google that "the Supreme Court itself has permitted a plaintiff to bring suit for violations of federal privacy law absent any indication of pecuniary harm."  Google, 806 F.3d at 134 (internal footnote and citation omitted).

The reference in Google to Supreme Court precedent is to Doe v. Chao, 540 U.S. 614 (2004).  But, Doe is just another case about improper *disclosure* of *private* information.  There, the petitioner complained that the Office of Workers' Compensation Programs used his social security number on documents "sent to groups of claimants, their employers, and the lawyers involved in their cases."  Id. at 616-17.  And, the government conceded that it "disclos[ed] *Doe's Social Security number* beyond the limits set by the Privacy Act [of 1974]."  Id.

Here, in contrast, the credit card digits on Kamal's receipts have *not been disclosed* to anyone.  In the absence of any such disclosure, Kamal's attempts to piggy-back on prior Supreme Court (and Third Circuit) precedent addressing the relationship between *disclosure* and lack of pecuniary harm is misplaced.  Courts post-Spokeo have dismissed cases when, like here, the plaintiff fails to allege improper disclosure to an unauthorized third person.  See, e.g., Gubala, 2016 WL 3390415, at *4 ("[Plaintiff] does not allege that the defendant has disclosed his information to a third party. . . .").

Moreover, the private information at issue in Doe (the petitioner's social security number) is not analogous to the alleged FACTA violation here (the acting of printing the "first

8

six digits" of Kamal's credit card number).  (ECF No. 21, Am. Compl. at ¶¶ 2).  "This is because

the first six digits of any credit or debit card number identify the issuing bank or other entity, not

an account number unique to the consumer."  In re Toys "R" Us-Delaware Inc.-Fair and

Accurate Credit Transactions Act (FACTA) Litig., 2010 WL 5071073, at *11 (C.D.Cal. Aug. 17,

2010).[3]  Because the first six digits of Kamal's credit card number simply identifies the issuer of

his credit card, it reveals nothing more than what Kamal himself reveals in the Amended

Complaint, a publicly-filed document: that he used a "Discover-branded credit card."  (ECF No.

21, Am. Compl. at ¶¶ 70-70).

## B.  Kamal's Reliance on Congressional Intent is Misplaced.

While Congressional intent behind FACTA is probative of the standing analysis,

"Congress' role in identifying and elevating intangible harms *does not* mean that a plaintiff

automatically satisfies the injury-in-fact requirement whenever a statute grants a person a

statutory right and purports to authorize that person to sue to vindicate that right."  Spokeo, 136

S. Ct. at 1549 (emphasis added).  That is because "'Congress cannot erase Article III's standing

requirements[.]'"  Id. at 1547-48 (quoting Raines v. Byrd, 521 U.S. 811, 820, n.3 (1997))

(collecting cases); see also supra at p. 2.

Even if this Court peels back the Congressional intent behind FACTA, it does not support

Kamal's positions.  First, in enacting FACTA, "Congress [was] interested in preventing *the*

*actual harm of real identity theft*."  Broderick v. 119TCbay, LLC, 670 F. Supp. 2d 612, 619

(W.D. Mich. 2009) (emphasis added).

> FACTA addresses all aspects of the identify theft problem by, inter
> alia, establishing procedures to alert consumers about fraud and

---

3       See also Bin List (Binlist) & Bin Ranges: List of Issuer Identification Numbers,
https://www.bindb.com/bin-list.html ("The first 6 digits of a credit card number . . . identify the
institution that issued the card to the card holder.").

> identify theft issues, providing greater access to consumer credit
> reports, and establishing certain rights for identify theft victims.
> Truncation of credit card numbers is but one of many FACTA
> provisions designed to address these issues.  Reading the statute as
> a whole, the importance of protecting consumers from exposure to
> *actual, legitimate risks of identity theft becomes even more*
> *pronounced*.

(Id.) (emphasis added).  Indeed, when FACTA was amended by the Credit and Debit Receipt

Clarification Act of 2007 (the "Clarification Act"), Congress noted explicitly its intent to "ensure

that consumers suffering from any *actual harm* to their credit or identity are protected."  Pub.L.

No. 110-241, § 2(b) (emphasis added); see also Broderick, 670 F. Supp. at 620 ("Congress'

concern with actual, legitimate risks of identity theft . . . is also reflected by the [Clarification

Act]").  In this case, Kamal has not suffered "actual harm."  See supra p. 1.

Second, in connection with the Clarification Act, Congress referenced its goal of

"*limiting abusive lawsuits* that do not protect consumers but only result in increased cost to

business and potentially increased prices to consumers."  Pub.L. No. 110-241, § 2(b) (emphasis

added).  Spokeo's requirement of "concrete harm" and not just "a bare procedural violation" to

establish standing, 136 S. Ct. at 1549-50, closes the floodgates to "abusive lawsuits" because a

plaintiff, such as Kamal, should not be able to seek millions of dollars in class-wide damages

(and fees for his attorneys) when the digits on his or her credit card have not even been *disclosed*

to unwanted eyes.  The Amended Complaint is the precise definition of an "abusive lawsuit" as

Congress used that term.

## CONCLUSION

Plaintiff Ahmed Kamal has not suffered a "concrete" "injury in fact" necessary to confer

constitutional standing to sue, this Court lacks subject-matter jurisdiction, and the Amended

Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

Respectfully submitted,

**DLA PIPER LLP (US)**

s/ Andrew O. Bunn
Andrew O. Bunn
James V. Noblett
Steven R. Marino
DLA Piper LLP (US)
51 John F. Kennedy Parkway, Suite 120
Short Hills, New Jersey 07078-2704
Telephone: (973) 520-2562
Facsimile: (973) 520-2582
*Attorneys for Defendants*

Keara M. Gordon (admitted *pro hac vice*)
DLA Piper LLP (US)
1251 Avenue of Americas
New York, New York 10020-1104
Telephone: (212) 335-4632
Facsimile: (212) 884-8632
*Attorneys for Defendants*

Dated:  July 20, 2016