# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

```
------------------------------------- X
                                      :
AHMED KAMAL, on behalf of himself and :
the putative class,                   :   Case No. 2:15-cv-00190-WJM-MF
                                      :
            Plaintiff,                :   ELECTRONICALLY FILED
                                      :
      v.                              :
                                      :
J. CREW GROUP, INC., et al.           :   Returnable:  February 6, 2017
                                      :
            Defendants.               :   ORAL ARGUMENT REQUESTED
                                      :
------------------------------------- X
```

## DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS THE SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1) DUE TO LACK OF STANDING

**DLA PIPER LLP (US)**
51 John F. Kennedy Parkway, Suite 120
Short Hills, New Jersey 07078-2704
Telephone No.: (973) 520-2550
Fax No.: (973) 520-2551
*Attorneys for Defendants*

Of Counsel:
    Keara M. Gordon (admitted *pro hac vice*)
    Andrew O. Bunn

On the Brief:
    James V. Noblett
    Steven R. Marino

## TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ......................................................... 1

II.   STATEMENT OF FACTS ................................................................ 3

III.  COMPARISON OF THE SAC TO THE FAC ...................................... 4

IV.   RELEVANT PROCEDURAL HISTORY ........................................... 5

V.    ARGUMENT ............................................................................... 5

    A.   THE SAC SHOULD BE DIMISSED FOR LACK OF SUBJECT MATTER JURISDICTION BECAUSE THE PLAINTIFF HAS STILL NOT SUFFERED A "CONCRETE" INJURY-IN-FACT. ................... 5

        i.    Dismissal is Required for the Same Reasons this Court Articulated in its Opinion ........................................................... 6

            1.   This Court Has Already Given Congressional Intent the Appropriate Deference. .................................................. 6

            2.   This Court Has Already Found that a Traditional Privacy Right is Not Implicated. ................................................... 9

        ii.   This Court Already Found Unpersuasive the Contrary Minority Decisions. .......................................................... 10

    B.   DISMISSAL IS CONSISTENT WITH THE WEIGHT OF AUTHORITY. ...... 14

VI.   CONCLUSION ............................................................................ 16

## TABLE OF AUTHORITIES

**Page(s)**

CASES

Altman v. White House Black Mkt., Inc.,
   No. 15-2451, 2016 WL 3946780 (N.D. Ga. July 13, 2016) ........................................11, 12, 13

Bormes v. U.S.,
   759 F.3d 793 (7th Cir. 2014) .................................................................................................8

Braitberg v. Charter Comm's,
   __ F.3d __, 2016 WL 4698283 (8th Cir. Sept. 8, 2016) ....................................................13, 14

Broderick v. 119TCbay, LLC,
   670 F. Supp. 2d 612 (W.D. Mich. 2009) .............................................................................8, 9

Creative Hosp. Ventures, Inc. v U.S. Liab. Ins. Co.,
   444 F. App'x 370 (11th Cir. 2011) .........................................................................................10

Detter v. KeyBank N.A.,
   No. 16-00498, 2016 WL 2016 6699283 (W.D. Mo. Nov. 14, 2016) ....................................14

Flaum v. Doctor's Assocs., Inc. d/b/a/ Subway,
   __ F. Supp.3d __, 2016 WL 7015823 (S.D. Fla. Aug. 29, 2016) ...............................11, 12, 13

Guarisma v. Microsoft Corp.,
   __ F. Supp. 3d __, 2016 WL 4017196 (S.D. Fla. July 26, 2016) ................................... passim

Hammer v. Sam's East, Inc.,
   754 F.3d 492 (8th Cir. 2014) .............................................................................................13, 14

Hancock v. Urban Outfitters, Inc.,
   830 F.3d 511 (D.C. Cir. 2016) ...............................................................................................15

Hecht v. Hertz Corp.,
   No. 16-01485, 2016 WL 6139911 (D.N.J. Oct. 20, 2016) (Martini, J.) ..........................5, 6, 7

In re Orthopedic "Bone Screw" Prods. Lib. Litig.,
   132 F. 3d 152 (3d Cir. 1997)....................................................................................................4

Kamal v. J. Crew Group, et al.,
   No. 15-0190 ..............................................................................................................................11

Lujan v. Defs. Of Wildlife,
   504 U.S. 555 (1992)...................................................................................................................5

Meyers v. Nicolet Restaurant of De Pere, LLC,
   No. 16-2075 (7th Cir. Dec. 13, 2016) .......................................................................... passim

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Nicklaw v. CitiMortgage, Inc.*,
  839 F.3d 998 (11th Cir. 2016) ..................................................................5

*Noble v. Nevada Checker CAB Corp.*,
  No. 15-02322, 2016 WL 4432685 (D. Nev. Aug. 19, 2016) ......................11, 12, 15

*Owner-Operator Indep. Drivers Assoc., Inc. v. U.S. Dep't of Trans.*,
  __ F. Supp. 3d __, 2016 WL 5674626 (11th Cir. Sept. 30, 2016) ..........................15

*Raines v. Byrd*,
  521 U.S. 811 (1997) .................................................................................7

*Redman v. RadioShack Corp.*,
  768 F.3d 622 (7th Cir. 2014) .....................................................................8

*Shlahtichman v 1-800 Contacts, Inc.*,
  09 CV 4032, 2009 WL 4506535 (N.D. Ill. Dec. 2, 2009), *aff'd*, 615 F3d 794 (7th Cir
  2010) ...................................................................................................7

*Shoots v. iQor Holdings, US Inc.*,
  No. 15-563, 2016 WL 6090723 (D. Minn. Oct. 18, 2016) ....................................14

*Spokeo Inc. v. Robins*,
  __ U.S. __, 136 S. Ct. 1540 (2016)............................................... passim

*Stelmachers v. Verifone Sys.*,
  No. 14-04912, 2016 WL 6835084 (N.D. Cal. Nov. 21, 2016) ..........................11, 16

*Thompson v. Rally House of Kansas City, et al.*,
  No. 15-00886 (W.D. Mo. Oct. 6, 2016)............................................. passim

*Toys "R" Us – Delaware, Inc. Fair and Accurate Credit Transaction Act (FACTA) Lit.*,
  MDL No. 08-01980, 2010 WL 5071073 (C.D. Cal. Aug. 17, 2010) ......................9

*Waletzko v. Corelogic Credco, LLC*,
  No. 15-317, 2016 WL 5879597 (W.D. Wis. Oct. 7, 2016).....................................6

*Warth v. Seldin*,
  422 U.S. 490 (1975).................................................................................13

*Whole Enchilada, Inc. v. Travelers Prop. Cas. Co. of Am.*,
  581 F. Supp. 2d 677 (W.D. Pa. 2008)..........................................................10

*Wood v. J Choo USA, Inc.*,
  __ F. Supp. 3d __, 2016 WL 4249953 (S.D. Fla. Aug. 11, 2016) ...............11, 12, 13

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Zia v. CitiMortgage, Inc.*,
 __ F. Supp. 3d __, 2016 WL 5369316 (S.D. Fla. Sept. 26, 2016) ...........................................14

STATUTES

15 U.S.C. § 1681c(g)(1) ...................................................................................................3, 9

15 U.S.C. § 1681n(a)(1)(A) .................................................................................................4

Pub. L. No. 110-241 ............................................................................................................8

Pub. L. No. 110-241, § 2(a(1) ............................................................................................7

Pub. L. No. 110-241, § 2(b) ................................................................................................8

OTHER AUTHORITIES

Fed. R. Civ. P. 12(b)(1) ...................................................................................................3, 16

*The Fair Credit Reporting Act and Issues Presented By Reauthorization of the Expiring*
 *Preemption Provisions, Before the Comm. on Banking, Housing and Urban Affairs,*
 108th Cong., 78 (2003) ...................................................................................................7

## I.      PRELIMINARY STATEMENT

Plaintiff Ahmed Kamal's Second Amended Complaint ("SAC") suffers from the same deficiencies that required dismissal of his First Amended Complaint ("FAC"): the "allegations do not 'entail a degree of risk sufficient to meet the concreteness requirement'" of an injury-in-fact necessary to confer standing under Article III of the Constitution.  (Dkt. No. 63, Opinion on FAC ("Opinion") at *4) (quoting *Spokeo Inc. v. Robins*, __ U.S. __, 136 S. Ct. 1540, 1550 (2016)).  While Kamal attempted to cure these defects, he has not; *still absent* from the SAC are any allegations that, in the now *two years* that have passed since Kamal purportedly received the first receipt from J. Crew:

- Any of the three receipts were lost, misplaced, or stolen, or were ever in the possession of an unauthorized third party;

- The credit card information displayed in any of the three receipts was ever disclosed to an unauthorized third party;

- Any unauthorized purchases were made on the credit card Kamal used to make the three purchases;

- Kamal had to obtain a new credit card; or

- Kamal's credit information has been compromised or his identity has been stolen.

Kamal's situation therefore remains factually indistinguishable from that alleged in the FAC.  Without any new factual allegations, Kamal pivots and seeks to establish that the printing of purported non-compliant receipts by J. Crew is—without more—*legally* sufficient to confer standing.  He attempts to do so three ways, all of which have been rejected already by this Court.

First, the main additions to the SAC are supplementary allegations regarding Congressional intent behind the Fair and Accurate Credit Transactions Act ("FACTA").  (*See, e.g.*, SAC at ¶¶ 3, 33, 36, 38-42).  But, this Court already found that while Congressional intent is instructive to its standing analysis, *it is not dispositive*.  "'Congress' role in identifying and

elevating intangible harms does not mean that plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right . . . .'" (Opinion at 5-6) (quoting *Spokeo*, 136 S. Ct. at 1549). Even if the Court examines Congressional intent, it already has recognized that Congress sought "to ensure that consumers suffering from any *actual harm* to their credit or identity are protected." Opinion at *6 (emphasis in original) (internal quotation marks omitted). Kamal's receipts have always been in his possession, and it is impossible for him to claim that he has—or will ever—suffer any "actual harm." Thus, Kamal's attempts to elevate Congressional intent are futile.

Second, Kamal alleges in the SAC that he has a traditional privacy right over his financial information. (SAC at ¶ 46). Kamal attempts to latch onto the statement in *Spokeo* that when "traditional privacy rights" are implicated, the "right granted by statute can be sufficient *in some circumstances* to constitute injury in fact." *Spokeo*, 136 S. Ct. at 1544 (emphasis added). However, without a disclosure of the receipts to an unauthorized third party, no privacy rights— let alone "traditional" privacy rights—have been implicated in this case. (*See* Opinion at 6) ("While FACTA as a whole may implicate traditional privacy interests, Plaintiff's alleged injury does not."). Nothing has changed in this regard.

Third, the SAC repeats the word "substantive" in lieu of "procedural." (*See* SAC at ¶¶ 3, 36). It does so in reliance on the reasoning of a minority of federal district courts that have found standing to sue in FACTA cases based upon the erroneous finding that that a violation of FACTA "constitutes a concrete injury in and of itself because Congress created a substantive right for individuals to receive printed receipts that truncate their personal credit card information." *Guarisma v. Microsoft Corp.*, __ F. Supp. 3d __, 2016 WL 4017196, at *3 (S.D. Fla. July 26, 2016). But, Kamal already asked this Court to adopt the decisions by those federal

district courts in opposition to J. Crew's motion to dismiss the FAC.  (*See* Dkt. No. 54 at pp. 1-3; Dkt. No. 57 at pp. 1-2).  This Court explicitly acknowledged those "inconsistent" decisions in its Opinion and explained why they are unpersuasive.  Opinion at *4.  Nothing has changed on this point either.

The SAC should therefore be dismissed for the same reasons as the FAC.

## II.   STATEMENT OF FACTS[1]

The SAC alleges that Kamal made three purchases at three separate J. Crew stores between December 18, 2014 and January 4, 2015.  (*Id.* at ¶¶ 98, 100, 102).  In each instance, the receipt allegedly displayed, in addition to the last four digits of Kamal's credit card, the first six digits.  (*Id.*).[2]  J. Crew partially complied with FACTA by redacting Kamal's name, the remaining digits, and the expiration date of his credit card.  (*Id.*).

There is no allegation that, *in the last two years,* anyone other than Kamal (or his attorneys) ever saw or possessed his receipts, ever used his credit card number, that his identity was compromised, or that Kamal suffered actual damages as a result of the appearance of the additional digits on his receipts.  Instead, Kamal alleges he has been "expose[d] . . . to [an] increased risk of identity theft."  (*Id.* at ¶ 63; *see also id.* at ¶¶ 99, 101, 103 ("The printing of the first six digits, in violation of FACTA, also created a real risk of identity theft, which further harmed Plaintiff.")).

---

[1]      Several of J. Crew's present and former affiliates that have no involvement in this dispute are improperly included as defendants.  (SAC at ¶¶ 10-15, 16-18).  However, all defendants seek to dismiss the SAC pursuant to Federal Rule of Civil Procedure 12(b)(1), and for convenience purposes they will collectively be referred to as "J. Crew."

[2]      The operative provision of FACTA states:  "[N]o person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction."  15 U.S.C. § 1681c(g)(1).

Kamal alleges without factual basis that the partial non-compliance by J. Crew was "willful."[3] (*Id.* at ¶ 108).  As a result, he seeks to recover, on the behalf of the putative class, statutory damages "of $100 to $1,000 per violation." (*Id.* at 25, "WHEREFORE," at ¶ a); *see also* 15 U.S.C. § 1681n(a)(1)(A)).  All of the factual allegations relating to J. Crew and Kamal remain unchanged.

## III.   COMPARISON OF THE SAC TO THE FAC[4]

As he did previously, Kamal alleges in a conclusory manner that J. Crew's purported technical violation of FACTA exposed him to a "risk of identity theft."  (*Compare* FAC at ¶ 42, *with* SAC at ¶¶ 63, 99, 101, 103).  Kamal still fails to explain, however, how exactly he is at "risk of identity theft" when the receipts have *still not* been discarded, lost, or otherwise misappropriated.

Kamal instead attempts to recast his claim in the SAC by peppering his old allegations with new buzz words:

- **"Victims"**:  The SAC includes numerous statistics about the millions of "victims" of identity theft and fraud.  (SAC at ¶¶ 33, 37, 38, 40, 59).  Kamal uses those statistics to bolster his previous assertion that Congress passed FACTA to prevent further victimization, arguing that "Congress's determinations deserve *special deference*." (*Id.* at ¶ 38) (emphasis added).

- **"Privacy"**:  The SAC contains allegations that Kamal has a traditional "privacy" right over his financial information, which J. Crew allegedly violated by printing the receipts it gave to him.  (*Id.* at ¶¶ 42, 44-46).

---

[3]    This Court does not have subject-matter jurisdiction to reach the merits of the SAC—whether or not the violation was "willful"—because Kamal lacks standing to sue.  *See In re Orthopedic "Bone Screw" Prods. Lib. Litig.*, 132 F. 3d 152, 155 (3d Cir. 1997) ("If a court then determines that it lacks subject matter jurisdiction, it cannot decide the case on the merits.  It has no authority to do so.").  As a result, J. Crew is not challenging those allegations at this time; it expressly reserves the right to do so later, if this case survives this motion.

[4]    A redline comparison of the SAC to the FAC is attached as Exhibit A to the accompanying Declaration of Andrew O. Bunn, dated December 15, 2016 ("Bunn Decl.").

- **"Substantive"**:    Repeated throughout the SAC are allegations that Kamal has standing to sue because J. Crew violated a "substantive" right conferred by FACTA, as opposed to a "procedural" violation.  (*Id.* at ¶ 36 ("The rights conferred to Plaintiff by FACTA are concrete and substantive, and not merely procedural in nature); *see also id.* at 7, 10).  Essentially, Kamal asserts that replacing the word "procedural" with "substantive"—and holding all else equal—is sufficient to confer to standing.  (*Id.* at ¶ 3) ("Plaintiff has standing to bring this case because he has suffered a concrete and substantive harm because of Defendants' violation of FACTA.").

These purely semantic changes are insufficient to vest Kamal with standing here.

## IV.    RELEVANT PROCEDURAL HISTORY

On June 1, 2016, this Court granted J. Crew permission to file a motion to dismiss the FAC in response to *Spokeo*.  (Dkt. No. 49).  After multiple rounds of briefing (Dkt. Nos. 50, 51, 53-59), this Court issued its Opinion on October 20, 2016 (Dkt. No. 63), granting J. Crew's motion.  Opinion at *6 ("Without an 'injury in fact,' Plaintiff lacks standing to sue under Article III.").   The dismissal was without prejudice (Dkt. No. 64), and Kamal filed his SAC on November 17, 2016 (Dkt. No. 65).

## V.    ARGUMENT

### A.    THE SAC SHOULD BE DIMISSED FOR LACK OF SUBJECT MATTER JURISDICTION BECAUSE THE PLAINTIFF HAS STILL NOT SUFFERED A "CONCRETE" INJURY-IN-FACT.

In order to establish an injury-in-fact necessary to meet the Constitutional requirements of standing, "a Plaintiff must show 'an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical.'"  *Hecht v. Hertz Corp.*, No. 16-01485, 2016 WL 6139911, at *2 (D.N.J. Oct. 20, 2016) (Martini, J.) (quoting *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560 (1992)).  The Supreme Court's decision in *Spokeo* "confirmed that an 'injury-in-fact' must be 'concrete' even where Congress has authorized a private cause of action."  Opinion at *3 (citing *Spokeo*, 136 S. Ct. at 1548); *see also Nicklaw v. CitiMortgage, Inc.*, 839 F.3d 998, 1003 (11th Cir. 2016) ("[T]he requirement of

concreteness under Article III is not satisfied every time a statute creates a legal obligation and grants a private right of action for its violation.  A plaintiff must suffer some harm or risk of harm from the statutory violation to invoke the jurisdiction of a federal court."); *Waletzko v. Corelogic Credco, LLC*, No. 15-317, 2016 WL 5879597, at *8 (W.D. Wis. Oct. 7, 2016) ("the 'case or controversy' requirement in Article III, Section 2 of the Constitution still requires the plaintiff to prove she suffered an 'actual' or 'concrete' injury for that claim to proceed.").

"Where the alleged injury is heightened risk of future harm, the allegations must 'entail a degree of risk sufficient to meet the concreteness requirement.'"  Opinion at *3 (quoting *Spokeo*, 136 S. Ct. at 1550).  "In other words . . . a Plaintiff cannot 'allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III.'" *Hecht*, 2016 WL 6139911 at *2 (quoting *Spokeo*, 136 S. Ct. at 1549).

Kamal still alleges only a "bare procedural violation, divorced from any concrete harm." *Spokeo*, 136 S. Ct. at 1549.

### i.      Dismissal is Required for the Same Reasons this Court Articulated in its Opinion.

Kamal still seeks to establish that an allegation that a defendant printed information prohibited by FACTA on a receipt is—without more—sufficient to establish that the recipient has standing to sue.  Besides receiving the three receipts at issue, Kamal still does not have anything "more" to allege.  This Court has rejected already *all* of Kamal's arguments here.  It should do so again.

### 1.      This Court Has Already Given Congressional Intent the Appropriate Deference.

At the outset, this Court has already recognized that while "Congress may 'define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before[,]'" that "'does not mean that a plaintiff automatically satisfies the injury-in-fact

requirement whenever a statute grants a person a statutory right . . . .'"  Opinion at *5-6 (quoting *Spokeo*, 136 S. Ct. at 1549) (second alteration in original).  "Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing."  *Raines v. Byrd*, 521 U.S. 811, 820, n.3 (1997); *Hecht*, 2016 WL 6139911, at *2 ("In May 2016, the Supreme Court confirmed that 'Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.'") (quoting *Spokeo*, 136 S. Ct. at 1547-58).  Thus, additional allegations in the SAC related to Congressional intent do not—because they cannot—confer standing automatically on Kamal, who still has not alleged that he suffered any concrete harm.

Furthermore, Congressional intent behind FACTA *does not help* Kamal.[5]  FACTA was enacted "to prevent criminals *from obtaining* access to consumers' private financial and credit information in order to reduce identity theft and credit card fraud."  Pub. L. No. 110-241, § 2(a)(1) (emphasis added).  In order for a criminal to obtain "private financial and credit information," a consumer such as Kamal would have to first discard, lose, or otherwise have his or her receipt(s) misappropriated by a third party.  Congress explicitly contemplated such a prerequisite:  "'In other words, the receipt, *the part you discard*, does not show the whole number on there so people cannot go into the garbage can, pick it up, and duplicate your credit card number.'"  *Shlahtichman v 1-800 Contacts, Inc.,* 09 CV 4032, 2009 WL 4506535, at *4 (N.D. Ill. Dec. 2, 2009) (emphasis added) (quoting *The Fair Credit Reporting Act and Issues Presented By Reauthorization of the Expiring Preemption Provisions, Before the Comm. on*

---

[5]       Nor do the statistics he cites.  The statistics regarding Congress' acknowledgement of people who are "victims" of identity theft is misplaced.  (*See, e.g.*, SAC at ¶ 27 ("In 2014 alone, 3% of all Americans experienced at least one incident of the misuse of an existing credit card account.)).  Kamal is not a "victim" in any sense of the word.  According to the SAC, literally nothing adverse has happened to him in response to receiving three receipts that purportedly violate FACTA; two years later, his information has not been "misuse[d]."  (*Id.*).

*Banking, Housing and Urban Affairs,* 108th Cong., 78 (2003) (statement of Sen. Charles Schumer)), *aff'd,* 615 F3d 794 (7th Cir 2010).[6]   Kamal himself admits this point in the SAC. (*See* SAC at ¶ 28 ("One common modus operandi of identity thieves is to obtain Card receipts *that are lost or discarded, or through theft . . .*")) (emphasis added).

Kamal still does not allege that his receipts have been lost, stolen, or otherwise misappropriated.   Because Kamal retained his three receipts, he has not suffered the "actual harm" contemplated by Congress and as recognized by this Court.   Opinion at *6 (Congress sought "'to ensure that consumers suffering from any *actual harm* to their credit or identity are protected.'" (emphasis in original) (quoting Pub. L. No. 110-241); *see also Meyers v. Nicolet Restaurant of De Pere, LLC*, No. 16-2075, slip op. at  *7 (7th Cir. Dec. 13, 2016) (attached as Ex. B to Bunn Decl.) ("Congress sought to limit FACTA lawsuits to consumers 'suffering from any actual harm.'") (quoting Pub. L. No. 110-241, § 2(b)); *Broderick v. 119TCbay, LLC*, 670 F. Supp. 2d 612, 619 (W.D. Mich. 2009) ("Reading [FACTA] as a whole, the importance of protecting consumers *from exposure to actual*, legitimate risks of identity theft becomes even more pronounced. . . . Congress is not interested in specifying the content of a credit card receipt as part of some abstract, academic exercise.   Rather, *Congress is interested in preventing the actual harm of real identity theft*.") (emphasis added).

Consequently, Kamal's request that this Court give Congressional intent "special deference" does not change the analysis this Court previously applied. (SAC at ¶ 38)

---

[6]     *See also Bormes v. U.S.*, 759 F.3d 793, 798 (7th Cir. 2014) ("The concern underlying [FACTA] . . . is that the receipts printed at the point of sale *may be thrown away on the spot*.  If those receipts contain the full name, card number, and expiration date of the credit card, they may facilitate identity theft.") (emphasis added); *Redman v. RadioShack Corp.*, 768 F.3d 622, 626 (7th Cir. 2014) ("[S]hould the cardholder happen to lose the receipt of a transaction, the less information the receipt contains the less likely is an identity thief who happens to come upon the receipt to be able to figure out the cardholder's full account information.").

> ## 2. This Court Has Already Found that a Traditional Privacy Right is Not Implicated.

This Court has already found that "[w]hile FACTA as a whole may implicate traditional privacy interests, *Plaintiff's alleged injury does not*."  Opinion at *6 (emphasis added); *see also id.* at *3 ("[T]he alleged injury here entails an increased risk of suffering fraud or identity theft sometime in the future, *not a manifest violation of a traditional privacy interest*.") (emphasis added).  Despite this Court's unequivocal statement, Kamal seeks to change the analysis by repeating his allegation that a traditional privacy interest is implicated.  (*See* SAC at ¶¶ 44-46). That is not enough.

As alleged in both the FAC and SAC, Kamal was handed, at the point of sale, receipts on three separate occasions that displayed "more than the last 5 digits of [his] card number."  15 U.S.C. § 1681c(g)(1); (SAC at ¶¶ 98, 100, 102).  The receipts thereafter remained in Kamal's possession—he did not discard or lose them, nor were they stolen by a third party or otherwise misappropriated.  Any so-called "privacy" interest in the receipts was not invaded *because there was no disclosure of the information*.[7]

> The receipt is a contemporaneous record of a private transaction between [the merchant] and the customer, and [the merchant] neither broadcasted nor disseminated the receipt or the credit card information to the general public.  Indeed, [the merchant] provided the receipt only to the customer (who already knows the credit card number and its expiration date). . . .  In sum, providing a customer

---

[7]      Moreover, even if the information had been disclosed, the first six digits of Kamal's credit card do not reveal any private financial information, but instead, the identity of the issuing bank.  *See Toys "R" Us – Delaware, Inc. Fair and Accurate Credit Transaction Act (FACTA) Lit.,* MDL No. 08-01980, 2010 WL 5071073, at *11 (C.D. Cal. Aug. 17, 2010) ([T]he first six digits of any credit or debit card number identify the issuing bank or other entity, not an account number unique to the consumer. The seventh through sixteenth digits of a credit or debit card number contain unique identifiers. . . . The first six digits that were incorrectly printed on the receipt, therefore, provided only information about the issuing bank, not information unique to an individual consumer.").

> a contemporaneous record of a retail transaction involves no
> dissemination of information to the general public . . .

*Creative Hosp. Ventures, Inc. v U.S. Liab. Ins. Co.*, 444 F. App'x 370, 376 (11th Cir. 2011); *see*

*also Whole Enchilada, Inc. v. Travelers Prop. Cas. Co. of Am.*, 581 F. Supp. 2d 677, 699-700

(W.D. Pa. 2008) ("[A] violation of the truncation provision of FACTA is not … a publication or

an invasion of an individual's privacy right.").  It therefore defies logic to go further and claim

that a "traditional privacy interest" was violated when Kamal—and only Kamal—*received his*

*own information*.  *See* Opinion at *4 ("The purpose of credit card truncation is to limit

incremental risk of fraud or identity theft, not safeguard . . . some other traditional privacy

interest.").

### ii.      This Court Already Found Unpersuasive the Contrary Minority Decisions.

The majority of courts that have addressed whether a plaintiff like Kamal has post-

*Spokeo* standing to assert a FACTA claim have answered that question in the negative:

| **Courts Finding <u>No</u> Standing** | **Courts Finding Standing** |
|---|---|
| 1. United States Court of Appeals for the Seventh Circuit<br>   o *Meyers v. Nicolet Restaurant of De Pere, LLC*, No. 16-2075 (Ex. B to Bunn Decl.).<br><br>2. Northern District of California<br>   o *Stelmachers v. Verifone Sys.*, No. 14-04912, 2016 WL 6835084 (N.D. Cal. Nov. 21, 2016)<br><br>3. Western District of Missouri<br>   o *Thompson v. Rally House of Kansas City, et al.*, No. 15-00886 (W.D. Mo. Oct. 6, 2016) (Attached as Ex. C to the Bunn Decl.).<br><br>4. District of New Jersey<br>   o *Kamal v. J. Crew Group, et al.*, No. 15-0190<br><br>5. District of Nevada<br>   o *Noble v. Nevada Checker CAB Corp.*, No. 15-02322, 2016 WL 4432685 (D. Nev. Aug. 19, 2016) | 1. Southern District of Florida<br>   o *Guarisma*, 2016 WL 4017196<br>   o *Wood v. J Choo USA, Inc.*, __ F. Supp. 3d __, 2016 WL 4249953 (S.D. Fla. Aug. 11, 2016);<br>   o *Flaum v. Doctor's Assocs., Inc. d/b/a/ Subway*, __ F. Supp.3d __, 2016 WL 7015823 (S.D. Fla. Aug. 29, 2016)<br><br>2. Northern District of Georgia<br>   o *Altman v. White House Black Mkt., Inc.*, No. 15-2451, 2016 WL 3946780, at *4 (N.D. Ga. July 13, 2016) |

The Southern District of Florida and the Northern District of Georgia—both within the Eleventh Circuit—are of the view that a defendant's violation of FACTA "constitutes a concrete injury *in and of itself* because Congress created a *substantive* right for individuals to receive printed receipts that truncate their personal credit card information." *Guarisma*, 2016 WL 4017196, at *3 (emphasis added).[8] Accordingly, references to "substantive" harm and/or rights in the SAC are nothing more than Kamal's attempt to get this Court to switch sides and adopt the

---

[8]      Neither this Court, the Seventh Circuit, the Northern District of California, the Western District of Missouri, nor the District of Nevada share that view.

minority view held by the Southern District of Florida and the Northern District of Georgia. (SAC at ¶¶ 3, 36 and pp. 7, 10).

This Court, however, already rejected Kamal's reliance on those cases.  In opposition to J. Crew's motion to dismiss the FAC, Kamal submitted for this Court's consideration *Altman*, *Guarisma*, and *Wood*.[9]  (*See* Dkt. No. 54 (Plaintiff's Notice of Supplemental Authority), submitting *Guarisma* and *Altman*; Dkt. Nos. 57 (Plaintiff's Notice of Additional Supplemental Authority), submitting *Wood*)).  J. Crew responded to Kamal's submissions and distinguished those three decisions.  (Dkt Nos. 56 and 58).  In its Opinion, this Court explicitly acknowledged *Altman*, *Guarisma*, and *Wood*, but did not afford them any weight.  Opinion at *4.  This Court instead based part of its Opinion on the Western District of Missouri's decision *Thompson* and the District of Nevada's decision in *Noble*.  *Id.* at *4, 5.  This Court was correct in rejecting the "substantive" rights argument previously advanced by Kamal.

*First*, the Seventh Circuit in *Meyers v. Nicolet Restaurant of De Pere, LLC* recently found unpersuasive this exact argument that a plaintiff like Kamal had standing to sue because he had a "substantive" right—as opposed to a procedural right—to receive truncated credit card receipts:

> Even at argument, [the plaintiff] would not say that [the defendant's] violation had caused him any concrete harm.  He staked his entire standing argument on the statute's grant of a substantive right to receive a compliant receipt.  **But whether the right is characterized as "substantive" or "procedural," its violation must be accompanied by an injury-in-fact.**  A

---

[9]      Plaintiff did not submit *Flaum* to this Court.  On August 22, 2016, this Court ordered that the Parties "are not permitted to file any additional supplemental briefs without consent of the Court."  (Dkt. No. 60).  *Flaum* was decided one week later.

   *Flaum* does not, however, offer any unique analysis.  In fact, the rationale in *Flaum* is lifted in its near entirety from *Guarisma*.  *Flaum*, 2016 WL 7015823, at *2-5 (quoting *Guarisma*, 2016 WL 4017196, at *2-4).

> violation of a statute the causes no harm does not trigger a federal
> case.  That is one of the lessons of *Spokeo*.

Bunn Decl., Ex. B, slip op. at \*6-7, n.2 (emphasis added).  Thus, it is immaterial how Kamal

labels his rights under FACTA because any such alleged violation of those rights is simply not

"accompanied by an injury-in-fact." *Id.*

Second, even a cursory examination of the decisions by the Southern District of Florida

and Northern District of Georgia confirms this Court's judgment that they should not be viewed

as persuasive authority.  Prior to *Spokeo*, the Eighth Circuit held that "'the actual or threatened

injury required by Art. III may exist *solely* by virtue of statutes creating legal rights, the invasion

of which creates standing.'"  *Hammer v. Sam's East, Inc.*, 754 F.3d 492, 498 (8th Cir. 2014)

(quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975)).  *Flaum*, *Altman*, *Guarisma*, and *Wood* each

cited and/or relied upon *Hammer* in reaching their conclusions. *See Flaum*, 2016 WL 7015823,

at \*3; *Wood*, 2016 WL 4249953 at \*4; *Guarisma*, 2016 WL 4017196, at \*4; *Altman*, 2016 WL

3946780, at \*4.

The Eight Circuit subsequently recognized, however, that *Spokeo* "rejected this absolute

view and superseded our precedent in *Hammer* . . . . 'Article III,' the Court explained, 'requires a

concrete injury even in the context of a statutory violation.'" *Braitberg v. Charter Comm's*, __

F.3d __, 2016 WL 4698283, at \*4 (8th Cir. Sept. 8, 2016)[10] (quoting *Spokeo*, 136 S. Ct. at 1548).

As a result, Courts have acknowledged that *Hammer* is no longer precedential authority:

> However, the Eighth Circuit explicitly stated its precedent in
> *Hammer* was superseded by *Spokeo*.  It follows that claims with
> mostly identical allegations to *Hammer* can no longer survive a
> challenge to Article III standing.  Like *Hammer*, Plaintiff has
> alleged a mere violation of FACTA for the printing of more than
> the last five digits of the credit card number without any concrete

---

[10]     This Court relied upon *Braitberg* in the Opinion.  *See* Opinion at \*4.

harm.  Consequently, the Court concludes Plaintiff does not have an injury in fact.

The Court acknowledges its decision is not in line with other post-*Spokeo* cases examining whether a bare FACTA violation with no allegation of concrete harm is sufficient for Article III standing. However, these cases relied in part on *Hammer*, and, as discussed above, the Eighth Circuit has stated that *Spokeo* superseded *Hammer*.

Bunn Decl., Ex. C, *Thompson*, No. 15-00886, slip op. at 9-10; *see also Detter v. KeyBank N.A.*, No. 16-00498, 2016 WL 2016 6699283, at *3 (W.D. Mo. Nov. 14, 2016) ("*Spokeo* and *Braitberg* used the phrase "bare procedural violation," whereas *Hammer* speaks of violation of a "statutory right."  However, the Eighth Circuit held *Spokeo* superseded *Hammer*.  Given Braitberg did not have standing to bring suit with a claim similar to [plaintiff's in this case], alleging a mere statutory violation without concrete harm, the Court finds reliance on *Hammer* is not appropriate.") (internal citations omitted); *Shoots v. iQor Holdings, US Inc.*, No. 15-563, 2016 WL 6090723, at *8 (D. Minn. Oct. 18, 2016) ("By recognizing—without qualification—that *Spokeo* had superseded *Hammer* . . . the Eighth Circuit has seemingly also recognized that any claim must have some level of actual injury to survive the Article III standing inquiry.")  In fact, the Southern District of Florida itself later found *Braitberg* to be persuasive authority in finding that a plaintiff lacked standing to sue. *Zia v. CitiMortgage, Inc.*, __ F. Supp. 3d __, 2016 WL 5369316, at *4 (S.D. Fla. Sept. 26, 2016) ("The Court finds the Eighth Circuit's reasoning in *Braitberg* persuasive and adopts that reasoning here in holding that [the plaintiff] has not alleged a concrete harm sufficient to establish Article III standing.").

## B.    DISMISSAL IS CONSISTENT WITH THE WEIGHT OF AUTHORITY.

Congress enacted FACTA in order to prevent actual identity theft and harm (*see* Section IV(A)(i)(1)), and the procedure utilized to achieve that goal was the truncation requirement at issue in this case.  The Supreme Court has made clear that a plaintiff cannot "allege a bare

procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Spokeo*, 136 S. Ct. at 1549.

Here, all that Kamal alleges is a bare procedural violation of FACTA without any accompanying harm. Opinion at *6 ("Not all violations of FACTA 'cause harm or present any material risk of harm.'") (quoting *Spokeo*, 136 S. Ct. at 1550); *see also Owner-Operator Indep. Drivers Assoc., Inc. v. U.S. Dep't of Trans.*, __ F. Supp. 3d __, 2016 WL 5674626, at *5 (11th Cir. Sept. 30, 2016) (stating that technical violations "could result in no harm") (internal quotation marks omitted"); *Hancock v. Urban Outfitters, Inc.*, 830 F.3d 511, 514 (D.C. Cir. 2016) ("[T]he Supreme Court cautioned in *Spokeo* that some statutory violations could 'result in no harm' even if they involved producing information in a way that violated the law.").

The majority of federal courts that have addressed this exact issue agree. In addition to *Thompson* and *Noble,* with which this Court is familiar, *see* Opinion at *4-5, the two decisions issued on this topic subsequent to the Opinion both found no standing to sue. In *Meyers v. Nicolet Restaurant of De Pere, LLC*, the plaintiff "was given a copy of his receipt after dining at [the defendant's restaurant]. He noticed that [the] receipt did not truncate the expiration date, as the FACTA requires. Two months later, [the plaintiff] filed a putative class action . . . . He sought only statutory damages." Bunn Decl., Ex. B, slip op. at *2. The Seventh Circuit found that the plaintiff did not have standing to sue under *Spokeo*:

> *Spokeo* compels the conclusion that [the plaintiff's] allegations are insufficient to satisfy the injury-in-fact requirement for Article III standing. The allegations demonstrate that [the plaintiff] did not suffer any harm because of [the defendant's] printing of the expiration date on his receipt. **Nor has the violation created any appreciable risk of harm. After all, [the plaintiff] discovered the violation immediately and nobody else ever saw the non-compliant receipt.** In these circumstances, it is hard to imagine how the expiration date's presence could have increased the risk that [the plaintiff's] identity would be compromised.

*Id.* at *6 (emphasis added).  That same rationale led to dismissal of a FACTA claim by the Northern District of California.  *See Stelmachers*, 2016 WL 6835084, at *4 ("Plaintiff alleges he, and no one else, received the receipt containing more than the last five digits of his credit card number.  Thus, unless a litany of speculative events come about, the risk that Plaintiff will be subjected to the type of 'low tech' identity theft identified in the [complaint] is too attenuated to constitute a qualifying injury in fact for standing, even if Plaintiff successfully alleged a violation of FACTA.").

The reasoning in both *Meyers* and *Stelmachers* mirrors the findings in the Opinion and is further evidence of its correctness.  *See* Opinion at *5 ("There is no evidence that anyone has accessed or attempted to access or will access Plaintiff's credit card information.") (citing *Thompson*, No. 15-00886, at *9); *id.* (finding as "attenuated" Plaintiff's allegations regarding "less sophisticated identity thieves called 'carders' or 'dumpster divers' who supposedly coble together credit card numbers from lost or discarded receipts.").

## VI.    CONCLUSION

Plaintiff Ahmed Kamal has failed to come forward and plead any new allegations in the Second Amended Complaint that would be sufficient to remedy the deficiencies that led to the dismissal of the First Amended Complaint.  In sum, despite three attempts, Kamal still has not pled facts sufficient to demonstrate that he suffered a "concrete" injury-in-fact in accordance with this Court's jurisprudence.  Accordingly, the Second Amended Complaint should be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

Respectfully submitted,


**DLA PIPER LLP (US)**

s/ Andrew O. Bunn

Andrew O. Bunn                          Keara M. Gordon (admitted *pro hac vice*)
James V. Noblett                        DLA Piper LLP (US)
Steven R. Marino                        1251 Avenue of Americas
DLA Piper LLP (US)                      New York, New York 10020-1104
51 John F. Kennedy Parkway, Suite 120   Telephone: (212) 335-4632
Short Hills, New Jersey 07078-2704      Facsimile: (212) 884-8632
Telephone: (973) 520-2562               *Attorneys for Defendants*
Facsimile: (973) 520-2582
*Attorneys for Defendants*


Dated: December 15, 2016