Exhibit A

Plaintiff, Ahmed Kamal, on behalf of himself and all others similarly situated, through his undersigned attorneys, by way of his Seconded Amended Class Action Complaint, alleges as follows:

## OVERVIEW OF THE ACTION

1.      This is a class action based upon Defendants' violation of the Fair and Accurate Credit Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act, 15 U.S.C. §1681, *et seq., as amended*. FACTA is designed to protect credit and debit cardholders'cardholders from identity theft and fraud. The statute prohibits merchants who accept credit cards or debit cards ("Cards") from issuing electronically-generated receipts at the point of sale that display more than the last five digits of the credit card number, as well as the expiration date, thus limiting an identity thief's ability to obtain the consumer's account information, among other things.

2.      Defendants have violated FACTA repeatedly by printing and issuing sales receipts displaying not just the last four, but also the first *six* digits of customer credit card numbers throughout multiple locations across the United States, including the District of New Jersey.

3.      Plaintiff has standing to bring the case because he has suffered a concrete and substantive harm because of Defendants' violation of FACTA. Congress, the Federal Trade Commission, the Department of Justice, and the industry have found that Defendants' conduct here created a real, non-speculative harm, including in the form of increased risk of identity theft.

4.      Defendants were well aware of FACTA from numerous sources including, but not limited to, its contracts with Visa, MasterCard, and other Card issuing companies, and its insurance policies. Defendants' partial compliance with the law is proof of that awareness.

3.5.    Plaintiff seeks, on behalf of himself and the class, statutory damages, punitive damages, costs, and attorneys fees, all of which are made expressly available by statute, 15 U.S.C. §1681, *et seq.*

## JURISDICTION AND VENUE

4.6.    This Court has subject matter jurisdiction under 28 U.S.C. §§1331 and 1337, and 15

U.S.C. §1681p, which provides that "An"[a]n action to enforce any liability created under this title may be brought in any appropriate United States district court, without regard to the amount in controversy . . . ."

1 References to credit cards also include debit cards.

5.     Venue in this district is proper pursuant to 28 U.S.C. §1391 because Defendant 7.

transacts business in this District.

## **PARTIES**

1.8.     Plaintiff Ahmed Kamal purchased products at Defendants' store in this District, as well as stores in Maryland and Delaware, using a credit card and received an electronically printed receipt improperly displaying the first six digits of the credit card number as well as the last four digits, and was damaged thereby. Plaintiff lives in New York, New York, and his family owns a condominium in Ocean City, Maryland.

2.9.     Defendant J. CREW GROUP, INC. is a Delaware for-profit corporation with a registered address for service of process located at c/o Corporation Service Company, 80 State Street, Albany, New York 12207.

3.10.   Defendant J. CREW INC. is a Delaware for-profit corporation with a registered address for service of process located at c/o Corporation Service Company, 830 Bear Tavern Road, Ewing, New Jersey 08628.

4.11.   Defendant J. CREW INTERMEDIATE LLC is a Delaware for-profit limited liability company with a registered address for service of process located at c/o Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

5.   Defendant J. CREW INTERNATIONAL, INC. is a Delaware for-profit corporation with a registered address for service of process located at c/o Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

12.   is a Delaware for-profit corporation with a registered address for service of process located at c/o Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

6.13.   Defendant J. CREW OPERATING CORP. is a Delaware for-profit corporation with a registered address for service of process located at c/o Corporation Service Company, c/o Corporation Service Company, 80 State Street, Albany, New York 12207.

~~7.~~~~11.~~   Defendant J. CREW SERVICES, INC. ~~is a Delaware for-profit corporation with a registered address for service of process located at c/o Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.~~

14.   is a Delaware for-profit corporation with a registered address for service of process located at c/o Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

~~8.~~15.   At all relevant times, the six foregoing defendants comprised the "J. Crew Group," a clothing apparel conglomerate founded in 1983 and former publicly-traded company which owned and operated, and continues to own and operate more than 300 retail stores throughout the United States, including the State of New Jersey.

~~9.~~16.   Defendant CHINOS HOLDINGS, INC. is a Delaware for-profit corporation with a registered address for service of process located at c/o Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

~~10.~~17.   Defendant CHINOS ACQUISITION CORPORATION is a Delaware for-profit corporation and wholly-owned subsidiary of defendant CHINOS HOLDINGS, INC., with a registered address for service of process located at c/o Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

11.18.  Upon information and belief and pursuant to a merger agreement dated November 23, 2011, defendant CHINOS HOLDINGS, INC. acquired the foregoing "J. Crew Group" entities by merging its subsidiary, defendant CHINOS ACQUISITION CORPORATION with defendant J. CREW GROUP, INC., which remained the surviving corporation and became the face of the "J. Crew" name throughout the world.

12.19.  At all relevant times, Defendants comprise a "person that accepts credit cards for the transaction of business" within the meaning of FACTA.

## CLASS ALLEGATIONS

13.20.  This action is brought on behalf of Plaintiff individually and as a class action on behalf of all persons or entities to whom Defendantsany Defendant provided an electronically printed receipt at the point of sale or transaction, in a sale or transaction occurring after January 10, 2010, which receipt displayed more than the last five digits of the customer's credit card number. Excluded from the Class are the officers and directors of Defendants at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendants haveany Defendant has or had a controlling interest.

21.   Because Defendants operate approximately 253 retail stores and 118 factory stores in the U.S. that cater to thousands of customers who paid for their purchases with credit cards, joinder of all individual members would be impracticable. Defendants used standardized computer software to print the receipts and that software printed the receipts the same way for each transaction. While the exact number of Class members can only be determined by appropriate discovery, Plaintiff believes there are thousands of members of the Class since Defendants' entire 371 store business relies on their ability to accept, and the processing of, credit cards. Members of the Class may be identified from records maintained by Defendants

14.   and their credit card processing company and may be notified of the pendency of this action by United States mail.

15.   22.   Plaintiff's claims are typical of the claims of the other members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

~~16.~~    23.    There are common questions of law and fact affecting members of the

class,

which common questions predominate over questions ~~which~~that may affect individual members.

These include the following:

(a)     Whether Defendants ~~had a practice of issuing and providing~~provided customers with electronically printed receipts at the point of sale which show ~~more than~~ the ~~last five digits~~first six characters of the ~~credit~~ card number;

(b)     Whether the printing of too many digits in violation of FACTA is a concrete harm;

(c)     Whether the violation of FACTA creates a real risk of identity theft, which is a concrete harm;

~~(b)~~(d)   Whether Defendants' conduct was willful, knowing or reckless; and

~~(c)~~(e)   Whether Plaintiff and the other members of the class are entitled to statutory damages, punitive damages, costs, or attorneys fees for Defendants' acts and conduct.

24.     Plaintiff will fairly and adequately represent the class members. Plaintiff has no

~~17.~~  interests that conflict with the interests of other class members. Plaintiff has retained

counsel competent and experienced in the prosecution of class action litigation.

~~18.~~   25.    A class action is superior to all other available methods for the fair and efficient

adjudication of this controversy since joinder of all members is impracticable. Furthermore, as

the damages suffered by individual Class members may be relatively small, the expense and

burden of individual litigation make it impossible for members of the Class to redress

individually the wrongs done to them. There will be no difficulty in the management of this

~~action as a class action.~~

action as a class action.

## FACTS

~~BACKGROUND~~

~~The purpose~~**IDENTITY THEFT IS A CONCRETE AND SUBSTANTIVE HARM**

~~19.~~26. At the time of ~~FACTA is~~FACTA's passing by Congress, as discussed in the legislative

history of the law and the public statements leading up to ~~prevent~~ its passage, it was clear that identity theft~~.~~ based on credit and debit card fraud was a huge risk in the United States. The Federal                                                                                     Trade

 Commission estimated that over ~~9~~nine million persons each year have their identity assumed by criminals for financial gain, causing losses in excess of $50 billion.

27.     Identity theft is a problem so pervasive in America that it has topped the Federal Trade Commission's list of consumer complaints for 15 years. As the United States Department of Justice ("DOJ") found in its report "Victims of Identity Theft, 2014," an estimated 17.6 million persons, or 7% of all U.S. residents age 16 or older, were victims of one or more incidents of identity theft in 2014. The majority of these identity theft victims (86%) experienced the fraudulent use of existing account information, such as credit card information. As a result, in 2014 alone, 3% of all Americans experienced at least one incident of the misuse of an existing credit card account. This amounted to almost 8.6 million victims, a slight increase from 7.7 million victims in 2012.

**IDENTITY THEFT HAS BEEN TRACED TO PRINTING TOO MUCH INFORMATION ON CARD RECEIPTS**

~~20.~~28. One common modus operandi of identity thieves is to obtain ~~credit card~~Card receipts

 that

are lost or discarded, or through theft, and use the information on them to commit fraud and theft. Identity thieves who do this are known as "carders" and "dumpster divers." This modus operandi is more common than the use of sophisticated electronic means to obtain the

information. Robin Sidel, "Identity Theft — Unplugged. Despite the High-Tech Threat, When You Get Ripped Off It's Usually Still the Old Way," WALL STREET JOURNAL, Oct. 5, 2006, p. Bl.

21.29.  In early 2003, the payment card industry and Congress announced that they were working together to combat identity theft. A critical part of this joint effort was the redactiontruncation of personal data from credit cardCard receipts presented to consumers at the point of sale.

22.30.  On March 6, 2003, Visa CEO Carl Pascarella held a joint press conference with Senators Judd Gregg, Jon Corzine, Patrick Leahy, and Dianne Feinstein to announce Visa USA's new account truncation program to protect consumers from identity theft. At the press conference, Mr. Pascarella stated:

> Today, I am proud to announce an additional measure to combat identity theft and protect consumers. Our new receipt truncation policy will soon limit cardholder information on receipts to the last four digits of their accounts. The card's expiration date will be eliminated from receipts altogether . . . .
>
> The first phase of this new policy goes into effect July 1, 2003 for all new terminals. I would like to add, however, that even before this policy goes into effect, many merchants have already voluntarily begun truncating receipts, thanks to the groundwork that we began together several years ago.
>
> . . .
>
> Visa USA is pleased to be working with Senator Feinstein, and the other senators here today in the fight to protect consumers from identity theft. After all, we share the same goals. (Emphasis added.)

31.     On July 9, 2003, L. Richard Fischer presented a written statement to the United States House of Representatives Committee on Financial Services on behalf of Visa USA, supporting the truncation requirements of what ultimately became FACTA. Therein, Mr. Fischer stated:

> Although Visa generally believes that the details of preventing identity theft should be left to financial institutions that are best suited to address ever evolving fraud techniques, Title II could provide    important benefits to consumers and

7

financial institutions alike by establishing workable identity theft provisions and ensuring that these provisions benefit from national uniformity. For example, Section 203 of Title II would prohibit any merchant or other entity that accepts credit and debit cards from printing more than the last four digits of the card account number or the expiration date upon receipts provided to cardholders at the point of sale.  (Emphasis added.)

32.    Identity thieves commonly obtain Card receipts that are lost or discarded, or through theft, and use the information to engage in unauthorized credit or debit transactions.

**CONGRESS ACTED TO ~~STEM CREDIT~~REDUCE IDENTITY THEFT THAT IT TRACED TO MERCHANTS PRINTING CARD ~~FRAUD~~ NUMBERS AND EXPIRATION DATES ON CARD RECEIPTS**

~~23.~~33.  ~~The Fair and Accurate Credit Transaction Act~~FACTA was passed by Congress on November 22, 2003, and signed by President George W. Bush on December 4, 2003, to assist in the prevention of identity theft and credit and debit card fraud. The statute created a right and injury that makes it more difficult for identity thieves to obtain consumers' ~~credit card~~Card information by reducing the amount of information identity thieves could retrieve from found or stolen ~~credit~~Card receipts. In his statement during the signing of the bill, President Bush declared that:

This bill also confronts the problem of identity theft. A growing number of Americans are victimized by criminals who assume their identities and cause havoc in their financial affairs. With this legislation, the ~~Federal Government~~federal government is protecting our citizens by taking the offensive against identity theft.

~~24.~~     The main provision of FACTA (codified as 15 U.S.C. §1681c(g) of the Fair

34.____Credit Reporting Act) provides that:

[N]o person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.

~~25.~~     FACTA details the liability for willful noncompliance:

35.____§1681n. Civil liability for willful noncompliance

_(a) In general, any person who willfully fails to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer in an amount equal to the sum of –

(A) Any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or . . .

\*          \*          \*

such amount of punitive damages as the court may allow; and

in the case of any successful action to enforce any liability under this section, the costs of this action together with reasonable attorneys fees as determined by the court ... . . .

## DEFENDANTS' CONDUCT EXPOSED PLAINTIFF TO CONCRETE AND SUBSTANTIVE HARM THAT IS BOTH REAL AND IMMENENT

36.   The purpose of FACTA is to prevent a concrete harm, the printing of the prohibited information itself and the harm caused by such printing increasing the risk of identity theft. The rights conferred to Plaintiff by FACTA are concrete and substantive, and not merely procedural in nature. The extensive legislative findings by Congress, the Federal Trade Commission, the Department of Justice, and the industry have demonstrated that Defendants' conduct here created a real, non-speculative harm in the form of increased risk of identity theft.

37.   Experts, including members of the Card industry, (1) told Congress that both non-redacted Card numbers and expiration dates are particularly dangerous in the hands of sophisticated criminals, and (2) recommended that merchants be required to redact that information from credit card receipts. *See The History, Purpose, and Function of the Fair Credit Reporting Act and Provisions Subject to the Expiring Preemption Provision Specifically; The Growing Problem of Identity Theft; Affiliate Sharing Practices; Accuracy of Credit Report Information; Consumer Awareness and Understanding the Credit Granting Process and Addressing Measures to Enhance the Act: Hearing Before the S. Comm. on Banking, Hous. &*

*Urban Affairs*, 108th Cong., S. Hrg. 108-579 (2003) ("*FACTA Hearing*") (Prepared Statement, Michael D. Cunningham, Senior Vice President, Credit & Fraud Operations, Chase Cardmember Services); *see also FACTA Hearing* (Prepared Statement, Linda Foley, Executive Director, Identity Theft Resource Center).[1]

38.     Congress found risk of identity theft from the prohibited conduct was not merely hypothetical, and Congress's determinations deserve special deference. At the time FACTA was passed, the United States Senate Committee on Banking, Housing, and Urban Affairs (the "Senate") released its report of factual findings, S. Rep. No. 108-166 (2003), which found, among other things, that "[m]illions of Americans have already been victimized by identity theft," and "so many will become victims despite the best efforts of businesses and law enforcement . . . ." S. Rep. 108-166, at 8.

39.     Moreover, the Senate made it clear that the enhanced risk of identity theft from the specific conduct complained of here exposed consumers, such as Plaintiff, to the very harm that FACTA sought to prevent. S. Rep. 108-166, at 3 ("The bill contains numerous measures which protect consumers from identity thieves. The legislation requires the truncation of credit and debit card account numbers on electronically printed receipts to prevent criminals from obtaining easy access to such key information."). (Emphasis added.)

40.     Far from attenuated and unlikely, the Senate made it clear that the risk of identity theft emanating from a FACTA violation like this one is real and imminent. S. Rep. 108-166, at 8 ("Due to the significant costs to consumers and to the economy, and because of the constant efforts of criminals to find new victims, it is vitally important to address measures which will

---

[1] A transcript of *FACTA Hearing* may be viewed at: https://www.gpo.gov/fdsys/pkg/CHRG-108shrg95254/html/CHRG-108shrg95254.htm.

help prevent identity theft and to punish identity thieves."). (Emphases added.)

41.    Most importantly, the Senate found that the specific provision at issue here protected consumers, like Plaintiff, from an intangible harm in the form of enhanced risk of identity theft. As the Senate noted, "[t]he Committee included this provision to limit the number of opportunities for identity thieves to 'pick off' key card account information." S. Rep. 108- 166, at 13.

42.    Congress knew that only persons in Plaintiff's position (those who received from a merchant printed credit/debit card receipts bearing the consumer's private financial information) would suffer harm, and that they would specifically suffer the harm Congress had contemplated (the possibility that identity thieves would be able to piece together credit card numbers and expiration dates to invade consumers' privacy and exploit their financial resources).

43.    Further, the DOJ has explained the mechanism by which Defendants' violations have increased Plaintiff's risk of identity theft by confirming the causal link between the information protected by FACTA and credit card identity theft. In *Papazian v. Burberry Ltd.*, No. 2:07-cv-01479-GPS-RZ (C.D. Cal.), for example, the DOJ filed a brief that explained the purpose of FACTA and why compliance is so important:

> The goal of the provision that became §1681c(g) was "to limit the opportunities for identity thieves to 'pick off' key card account information." S. Rep. No. 108-166 (2003). FACTA followed enactment of laws in at least 20 states with provisions similar to §1681c(g) that prohibited printing the full card number as well as the expiration date on receipts. . . .
>
> . . .
>
> Defendants' argument that a thief would not be able to make fraudulent charges using *only* a truncated card number and the full expiration date misses the point. Thieves might piece together (or 'pick-off,' in the words of Congress) different bits of information from different sources.   26.   Congress gave merchants who accept credit cards three years to truncate the credit

card number   until December 4, 2006.

~~THERE WAS AN EXTENSIVELY ADVERTISED THREE YEAR PHASE-IN PERIOD~~. . . Congress' actions comport with common experience, testimony provided in support of the legislation, and the instructions credit card companies give to merchants. . . .

## THE HARM THAT PLAINTIFF ALLEGES HAS A CLOSE RELATIONSHIP WITH A TRADITIONAL HARM

44.    As the Supreme Court made clear, it is instructive "whether [the] alleged intangible harm [here] has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (citing *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 775–77 (2000)). *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016).

45.    Congress's ability to define the boundaries of privacy rights stems from ancient legal concepts. The right of privacy is "derived from natural law," and was recognized by Roman and early-English jurisprudence. *Pavesich v. New Eng. Life Ins. Co.*, 50 S.E. 68, 70 (Ga. 1905), *cited with approval in Ali v. Playgirl, Inc.*, 447 F. Supp. 723, 731 (S.D.N.Y. 1978); *see also* Samuel D. Warren & Louis D. Brandeis, *The Right to Privacy*, 4 HARV. L. REV. 193, 195 (1890) ("[N]umerous mechanical devices threaten to make good the prediction that 'what is whispered in the closet shall be proclaimed from the house-tops.'").

46.    Moreover, and especially relevant here, English common law has traditionally recognized a specific right to privacy of information pertaining to individuals' financial information. In 1923, the English Court of Appeal identified the common-law right to strict confidence of bank account information, arising from an implied contractual duty of nondisclosure. *See Tournier v. Nat'l Provincial & Union Bank of Eng.*, (1924) 1 K.B. 461, *cited with approval in Sec. & Exch. Comm'n v. Gib. Global Sec., Inc.*, No. 13 Civ. 2575 (GBD) (JCF), 2015 U.S. Dist. LEXIS 43773, at *7 (S.D.N.Y. Apr. 1, 2015).

## DEFENDANTS PLACED THEIR CUSTOMERS AT RISK FOR OVER 13 YEARS

47.    FACTA's requirement that merchants not print more than the last ~~five~~5 digits of the ~~credit card~~

27. Card number and the expiration date was phased in over a three-year period, until December 4, 2006. During the three-year phase-in period, there was extensive publicity regarding the law's requirements.

28.48. In the January 2005 edition of the Massachusetts Restaurant Association Newsletter, an article appeared apprising Association members that both Visa and MasterCard require truncation of the entire expiration date and all but the last four digits of the cardholder account number.

29.49. The April 2005 edition of the FOOD INDUSTRY ADVISOR, the newsletter for the Pennsylvania Food Merchants Association and Pennsylvania Convenience Store Council, included an article regarding the requirements of credit card truncation under FACTA which included the following language:

> [A]ccording to the FACT Act, "no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction. . . ."

30. This same article appeared in the April 2005 Edition of the NACS Magazine, published by the National Association of Convenience Stores.

31.50. The Independent Insurance Agents & Brokers of America circulated a report to its members dated June 5, 2010 titled: "Overview of the Fair Credit Reporting Act, The Fair and Accurate Credit Transactions Act, and the Drivers Privacy Protection Act." In relevant part, this publication stated:

> Under the FACTA Act, businesses and others accepting credit or debit cards for payment may not print more than the last five digits of the card number nor may they print the expiration date upon any receipt provided to the cardholder at the point of sale.

32.51.  The Office of Thrift Supervision, United States Department of Treasury ("OTS"), is responsible, *inter alia*, for monitoring financial institution compliance with FACTA. Toward this end, the OTS publishes an Examination Handbook ("Handbook")"),. which assists OTS field personnel when they perform an examination, or compliance audit, of a given financial institution. The April 2011 Editionedition of the Handbook states, in relevant part:

### Truncation of Credit and Debit Card Account Numbers

Ensure that electronically generated receipts from ATM and POS [("point of sale")] terminals or other machines do not contain more than the last five digits of the card number and do not contain the expiration dates.

33.52.  Many retail trade associations apprised their merchant members that FACTA requires truncation of all but the last five digits of the cardholder account number.

34.53.  For example, the cover-article in the Winter 2007 edition of TEXAS BUSINESS TODAY includes an extensive discussion of the truncation requirements of FACTA.

## CONGRESS WAS FORCED TO CLARIFY THE FACTA PROHIBITIONS IN 2008

54.  On June 3, 2008, in the face of an avalanche of class action lawsuits against such noncomplying merchants, House Bill HR 4008 (known as the Credit and Debit Card Receipt Clarification Act of 2007, Pub. L. 110-241, §3(a), 122 Stat. 1565, 1566 (June 3, 2008)) (the "Clarification Act") (codified as 15 U.S.C. §1681n(d)), was passed by Congress and signed into law by the President.

55.  The Clarification Act did not change FACTA, 15 U.S.C. §1681c(g), but, instead, provided amnesty to those merchants that had printed failed to comply with FACTA prior to June 3, 2008. The Clarification Act does not protect those merchants after June 3, 2008.

56.  The Clarification Act also made clear that partial compliance fails to comply with FACTA.

## CLASS ACTIONS ARE THE ONLY
## VIABLE ENFORCEMENT MECHANISM

57.    Congress, although faced with numerous class actions seeking statutory penalties from FACTA-violating merchants, did not change the penalty provisions. Thus, Congress made clear that it expected consumers to enforce FACTA by filing class actions.

58.    Indeed, since the statutory penalty for willful non-compliance is only $100 to $1,000, class actions are the only viable means for private enforcement.

59.    The statutory penalty provisions, and not the negligence provision, of FACTA are the only enforceable provisions of the statute. The DOJ recognized that should a merchant print a consumer's account number on a receipt, and should that receipt fall into the hands of an identity thief, it is very unlikely that the victim's information will be traceable back to the merchant. Thus, even though 7% of all U.S. residents over 16 experienced identity theft in 2012, very few of those would be able to trace the theft back to a merchant to obtain their rightfully-owed actual damages. For this reason, the statutory damages provisions of 15 U.S.C. § 1681n are necessary to deter violators, while the negligence provision is, essentially, unenforceable.

60.    The passage of the Clarification Act was championed by the pro-business lobbying organization Chamber of Commerce and added to the extensive amount of publicity regarding the requirements of FACTA.

35.61. In May 2007, the Federal Trade Commission published a widely circulated and extensively publicized FTC Business Alert whichthat reiterated the truncation requirements of FACTA.

62.    Since approximately 2007, The Department of Justice ("DOJ") has intervened on behalf of Plaintiffs in private FACTA class actionsMoreover, in July 2007 the DOJ stressed the importance         of         not         printing         more         than the last 5 digits of the Card number in its brief in the private FACTA action in *Papazian*:

36.        . In *Papazian v. Burberry Limited*, 07-cv1479, (C.D. Cal.), for example, the DOJ

filed a brief which, among other things, explained the purpose of FACTA and why compliance is

so important:

> Congress sought with FACTA to "assist-[] consumers in preventing identity theft and for mitigating its consequences once the crime has occurred." *See* 108 H. Rep. No. 263 (2003). The goal of the provision that becameThe goal of the provision that became §1681c(g) was "to limit the opportunities for identity thieves to 'pick off' key card account information." S. Rep. No. 108-166 (2003). FACTA followed enactment of laws in at least 20 states with provisions similar to §1681c(g) that prohibited printing the full card number as well as the expiration date on receipts . . . .

~~Defendant's~~ ~~argument that a thief would not be able to make fraudulent charges using~~ *~~only~~* ~~a truncated card number and the full expiration date misses the point. Thieves might piece together (or 'pick-off,' in the words of Congress) different bits of information from different sources.~~ §1681c(g) was "to limit the opportunities for identity thieves to 'pick off' key card account information." S. Rep. No. 108-166 (2003). FACTA followed enactment of laws in at least 20 states with provisions similar to §1681c(g) that prohibited printing the full card number as well as the expiration date on receipts. . . .

. . .

Defendant claims that expiration dates accompanied only by truncated card numbers need no protection from would-be fraudsters. Defendant submitted with its opposition to Plaintiff's motion the declaration of a former MasterCard employee who stated that a full expiration date and a truncated card number cannot be used to make fraudulent transactions. . . . Defendant also contends, based on the same declaration, that card companies routinely complete transactions with incorrect expiration dates so long as the expiration date provided to the merchant is in the future. . . .

. . .

Defendants' argument that a thief would not be able to make fraudulent charges using only a truncated card number and the full expiration date misses the point. Thieves might piece together (or 'pick-off,' in the words of Congress) different bits of information from different sources. The expiration date of a customer's credit/debit card, until recently printed on ~~Defendant's~~Defendants' receipts, is one of several pieces of information that can make it easier for criminals to rack up fraudulent charges. These dates are worth protecting even when not accompanied by other important financial information. ~~(internal footnote omitted).~~. . .

Congress' actions comport with common experience, testimony provided in support of the legislation, and the instructions credit card companies give to merchants~~.~~. . . .

~~37.    Merchants, however, claimed to have misunderstood FACTA, despite it being not ambiguous.~~

~~**CONGRESS REJECTED THE ARGUMENT THAT PARTIAL COMPLIANCE CANNOT BE WILFULL**~~

~~38.    On June 3, 2008, in the face of an avalanche of class action lawsuits against noncomplying and partially complying merchants, House Bill HR 4008 (known as the Credit and Debit Card Receipt Clarification Act of 2007, Pub.L. 110-241, §3(a), June 3, 2008, 122 Stat.~~

1566) (the "Clarification Act") (15 U.S.C. §1681n(d)), was passed and signed into law.

39.   The Clarification Act explicitly rejects the arguments of those merchants who had claimed that their partial compliance with FACTA was proof that their actions were not wilfull.

(d) Clarification of willful noncompliance. For the purposes of this section, any person who printed an expiration date on any receipt provided to a consumer cardholder at a point of sale or transaction between December 4, 2004, and the date of the enactment of this subsection [enacted June 3, 2008] but otherwise complied with the requirements of section 605(g) [*15 USCS § 1681c(g)*] for such receipt shall not be in willful noncompliance with section 605(g) [*15 USCS § 1681c(g)*] by reason of printing such expiration date on the receipt.

~~CLASS ACTIONS ARE THE ONLY
VIABLE ENFORCEMENT MECHANISM~~

~~40.    Congress, although faced with numerous class actions seeking statutory penalties from merchants that had violated FACTA, did not change the penalty provisions and did not eliminate class action enforcement. Indeed, since the statutory penalty for willful noncomplaince is only $100 to $1,000, class actions are the only viable means for private enforcement.~~

The statutory penalty provisions, and not the negligence provision, of FACTA are the only enforceable provisions of the statute. The DOJ recognized that should a merchant print a consumer's account number on a receipt, and should that receipt fall into the hands of an identity thief, it is very unlikely that the victim's information will be traceable back to the merchant.[2] Thus, even though 7% of all US ~~DOJ Brief at 13–16.~~

~~41.    63.~~ residents over 16 experienced identity theft in 2012, very few of those would be able to trac~~e~~ essentially, unenforceable.

~~42.~~                                                                                    N

ow, over ~~seven~~ eight years after the passage of the Clarification Act, and ~~twelve~~ thirteen years after the passage of FACTA, Defendants still fail to comply, and, on information and belief, Defendants have never complied. By failing to comply Defendants have deprived their customers of the protections that the statute was designed to confer, and exposes cardholders to increased risk of identity theft.

~~2 See Department of Justice, Bureau of Justice Statistics, "Victims of Identity Theft, 2012," at p.5 (68% of identity theft victims don't know how the offender obtained their information (available at http://www.bjs.gov/content/pub/pdf/vit12.pdf )).~~

**DEFENDANTS ~~KNEW NOT TO PRINT MORE THAN THE~~ ~~LAST FIVE DIGITS~~HAD ACTUAL KNOWLEDGE OF ~~THE CREDIT CARD NUMBER~~FACTA**

~~43.~~64. Defendants had actual knowledge of FACTA's truncation requirements specifically including the requirement that no more than the last five digits of the credit card account numbers be printed on receipts presented to consumers at the point of sale.

**65.** Defendants' partial compliance with FACTA is proof of that knowledge. **Defendants Learned Of FACTA From Its Card Issuers**

~~44.~~66. VISA, MasterCard, the PCI Security Standards Council~~—~~ (a consortium founded by VISA, MasterCard, American Express, and JCB~~—~~), companies that sell cash registers and other devices for the processing of credit card and debit card payments, and other entities directly informed Defendants about FACTA, including its specific requirements concerning the redaction of credit card and debit card numbers.

~~45.~~67. Defendants ~~accept~~accepts Discover, American Express, Visa, and MasterCard branded credit and debit cards.

~~46.~~68. Upon information and belief, during all times relevant to this Complaint, Defendants had contracts with their ~~credit card~~Card issuers, including VISA, ~~Mastercard, Discover~~MasterCard, American Express, and others, and those contracts prohibited Defendants from printing more than the last five digits of the ~~credit card numbers~~Card number.

~~47.~~69. Visa USA's contracts with the American merchants ~~which~~that accept Visa brand ~~credit cards~~ Cards are defined in part in a manual entitled CARD ACCEPTANCE GUIDELINES FOR VISA MERCHANTS ("Visa Rules"). The ~~latest edition is~~following language appears in the 2011 edition~~.~~:

*The Card Acceptance Guidelines for Visa Merchants* is a comprehensive manual for all businesses that accept Visa transactions in the card-present and/or ~~card~~absent~~card absent~~ environment. The purpose of this guide is to provide merchants and their back-office sales staff with accurate, up-to-date information and best practices to help merchants process Visa transactions, understand Visa products and rules, and protect cardholder data while minimizing the risk of loss

48.70.  Under the heading "Visa Rules," (page 11), itthe 2011 edition states that "Merchants must follow basic card acceptance rules for all Visa transactions."

49.71.                                                                    Visa Rules (page 13) prohibits the printing of more than the credit card numbers last five digits of the Card number on credit cardCard receipts: **Suppressed Account Number**

> Ensure that the Visa account number is suppressed in accordance with Visa rules and local laws and regulations. Visa recommends that all but the last four digits of the account number be suppressed on the cardholder copy of the transaction receipt, unless otherwise required under local law.

50.72.  The truncation standards set forth in the Visa Rules are part of the contract between Visa and the merchants which accept its credit cardsCards, here, Defendants.

51.73.  Similarly, MasterCard's agreements with the American merchants which accept MasterCard brand credit or debit cards are defined in part in a manual entitled SECURITY RULES AND PROCEDURES, Merchant Edition ("MasterCard Rules"). The latestlanguage below appears in the edition is dated 30 August 30, 2013.

52.74.  Under the heading "Customer Obligations, 1.1 Compliance with the Standards," (page 1-1), it states that "This manual contains Standards. Each Customer must comply fully with these Standards."

53.   MasterCard Rules (pagepages 3-–8) prohibits the printing of more than the firstlast five digits of the Card number of the credit card number on credit card receipts:

**75.    3.11.4 Primary Account Number Truncation and Expiration Date Omission**

> The Cardholder and Merchant receipts generated by all electronic POS Terminals, whether attended or unattended, cash disbursement receipts generated by electronic POS Terminals at financial institutions, and each printed ATM Terminal receipt must omit the Card expiration date. In addition, the Cardholder receipt generated by all electronic POS Terminals, whether attended or unattended, and each printed ATM

Terminal receipt **must reflect only the last four (4) digits of the PAN**. All preceding digits of the PAN must be replaced

with fill characters, such as "X," "K," or "#," that are neither blank spaces nor numeric characters. (Emphasis added.)

54.76.  The truncation standards set forth in the MasterCard Rules are part of the contract between MasterCard and the merchants ~~which~~that accept its ~~debit and/or~~ credit cards~~,~~ here, Defendants.

55.77.  Discover contracts with the American merchants which accept Discover brand credit cards are defined in part in a manual entitled MERCHANT OPERATING REGULATIONS ("Discover Rules"). ~~The latest edition is the 2011 edition.~~

**1.2 Operating Regulations, Agreement, and Other Program Documents**

These Operating Regulations, with the exception of the Revision Summary, are incorporated into your Agreement. Together with the Agreement and other Program Documents, these Operating Regulations contain procedures that you must follow in connection with, as applicable, your acceptance of Cards assigned Card Numbers within the Issuer Identification Number (IIN) Ranges listed in the Technical Specifications.

56.78.  Under the heading "3.2.1 Documentation of Card Sales," (page 10), Discover Rules states that:

For each Card Present Card Sale, you must provide a copy of the Transaction Receipt to the Cardholder. You must include all of the following information on the Cardholder's copy of the Transaction Documentation:

- ~~—~~Card Number, truncated where required by law

57.79.  The truncation standards set forth in the Discover Rules are part of the contract between Discover and the merchants which accept its credit cards, here, Defendants.

58.80.  ~~Defendants~~Defendants' knowledge of and compliance with Visa Rules, MasterCard                                                                                                    Rules, and Discover Rules is ~~promently~~prominently displayed on each credit card receipt they print. On

each such receipt Defendants printed the last **four** digits of the credit card number (in addition to

improperly printing the first six digits). But FACTA allows the printing of the last **five** digits.

81.____Upon information and belief, prior to the transactions at issue, Defendants

59.   received periodic communications from credit card issuers advising them to not print more than the last five digits of the credit card number.

60.82.  Upon information and belief, prior to the transactions at issue, Defendants received statements from their merchant bank (or other similar entity that performed credit card payment clearing services for Defendants) which apprised Defendants of their obligation to not print more than the last five digits of the credit card number.

61.83.  Upon information and belief, prior to the transactions at issue, Defendants received written information from their POS (Point of Sale) provider(s) apprising Defendants of their obligation to not print more than the last five digits of the credit card number.

62.84.  Upon information and belief, prior to the transactions at issue, Defendants received information from trade associations and/or other similar entities apprising Defendants of their obligation to not print more than the last five digits of the credit card number.

63.85.  Defendants' knowledge of the FACTA requirements is also evidenced by its change to the credit card receipts to remove the middle digits of the credit cardCard number and the expiration date.

## PRINTING ONLY THE LAST FIVE DIGITS OF THE CARD NUMBER WAS SO OBVIOUS THAT IT WAS KNOWN

86.   Proof of Defendants' knowledge of the FACTA requirements is evidenced by its change to the Card receipts to remove the middle digits of the Card number and the expiration date.

87.   FACTA, 15 U.S.C. §1681c(g)(1), provides that:

[N]o person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction.

88.   The entire FACTA prohibition consists of only 45 words and is pellucid.

89.     Defendants' printing the first six digits of the Card number was objectively unreasonable.

90.     Defendants' failure to suppress the first six digits of the Card number was reckless because it was an action entailing "an unjustifiably high risk of harm that is either known or so obvious that it should have been known." *Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47, 68 (2007) (emphasis added) (internal quotation marks and citation omitted).

91.     Defendants should, therefore, be held civilly liable.

**DEFENDANTS DECLINED INSURANCE**
**COVERAGE FOR FACTA VIOLATIONS**

64.92.  Upon information and belief, prior to the transactions at issue, Defendants received information from their liability insurance carrier terminating coverage for FACTA liability. Commercial insurance coverage is negotiated for and bound by the signature of senior management and the specifics of the coverage are closely monitored. In addition, the exclusions from an insurance policy can often be added back by riders—at additional cost. That is part of the negotiation.

65.93.  Defendants' failure to eliminate a liability for which they had been denied insurance coverage, for which they were contractually required to comply, for which there was voluminous information available, and where they had partially complied, is ~~willfull~~willful because they not only subjected their customers to an unjustifiably high risk of harm that is either known or so obvious that it should have been known, but they also subjected their shareholders to the risk of an uninsured loss.

66.94.  Upon information and belief, at the time of Plaintiff's transactions described herein, Defendants were routinely presenting receipts to their customers at the point of sale at ~~their various retail stores which displayed the first six digits of the customers credit card number, in violation of the requirements of FACTA.~~

their various retail stores which displayed the first six digits of the customer's credit card number, in violation of the requirements of FACTA.

67.95.  Upon information and belief, Defendants had control over the receipt printers and used standardized computer software to print the offending receipts and that software printed the receipts the same way for each transaction throughout the class period.

96.     In addition, the exclusions from an insurance policy can often be added back in by riders—at additional cost. That is part of the negotiation.

97.     Defendants' refusal to insure for a liability that it was aware of—FACTA—was reckless.

**PLAINTIFF'S TRANSACTIONS**

68.98.  On December 18, 2014, Plaintiff visited Defendants' retail store in Ocean City, Maryland, where his family owns a condominium; made a purchase; and paid with a Discover-branded credit card. At the point of sale, Plaintiff was given a receipt containing the first six digits *and* the last four digits of Plaintiff's credit card number, which is a direct violation of FACTA. (Redacted copies of Plaintiff's credit card receipts discussed herein arewere annexed heretoto previous complaints filed in this Action.)

99.     This printing of the first six digits, in violation of FACTA, harmed Plaintiff. The printing of the first six digits, in violation of FACTA, also created a real risk of identity theft, which further harmed Plaintiff.

69.100.On December 22, 2014, Plaintiff visited Defendants' retail store in Rehoboth Beach, Delaware, which is just outside of Ocean City, Maryland; made a purchase; and paid with a Discover-branded credit card. At the point of sale, Plaintiff was given a receipt containing the

first six digits *and* last four digits of Plaintiff's credit card number, which is a direct violation of FACTA.

101.   This printing of the first six digits, in violation of FACTA, harmed Plaintiff. The printing of the first six digits, in violation of FACTA, also created a real risk of identity theft, which further harmed Plaintiff.

70.102. On January 4, 2015, Plaintiff visited Defendants' retail store in Wayne, New Jersey, while he was out shopping; and paid defendants with a Discover-branded credit card. At the point of sale, Plaintiff was given a receipt containing the first six digits *and* last four digits of Plaintiff's credit card number, which is a direct violation of FACTA.

103.   This printing of the first six digits, in violation of FACTA, harmed Plaintiff. The printing of the first six digits, in violation of FACTA, also created a real risk of identity theft, which further harmed Plaintiff.

## COUNT I

## VIOLATION OF FACTA

71.104. Plaintiff hereby incorporates by reference the allegations contained in the above paragraphs of this Complaint as if fully set forth herein.

72.105. Defendants accept credit cards and debit cards in the course of transacting business                                  with                         persons such as Plaintiff and the other class members. In transacting such business, Defendants have control over and use cash registers or other machines or devices that print receipts electronically for credit card and debit card transactions that are uniform.

106.   After October 10, 2008, the deadline for compliance as extended by the Clarification Act, Defendants, at the point of sale or transaction, provided Plaintiff and the other

73.   Class members with electronically printed receipts, each of which included ~~the~~ more than the last five digits of the credit card number.

107.   This printing of too many digits, in violation of FACTA, harmed Plaintiff and the other Class members. The printing of too many digits, in violation of FACTA, also created a real risk of identity theft, which further harmed Plaintiff and the other Class members.

~~74.~~108. Defendants were willful in printing more than the last five digits of the credit card number on the credit card receipts they gave to their customers.

~~75.~~109. Defendants accept Discover, American Express, Visa, and MasterCard branded credit cards and, therefore, are a party to contracts requiring compliance with the foregoing requirements.

76.   ~~Defendants'~~Defendants use of software, devices and machines that print receipts in violation

110. ___ of FACTA was willful as set forth above.

**WHEREFORE**, Plaintiff requests the Court to enter judgment in favor of Plaintiff and the ~~class~~other members of the class and against Defendants~~,~~ jointly and severally, as follows:

    a.   Statutory damages of $100 to $1,000 per violation;

    b.   Attorneys fees, litigation expenses, and costs;

    c.   Such other and further relief as the Court may deem proper, including punitive damages.

Dated: ~~March 25, 2015~~New York, New York
November 17, 2016

**FRANK LLP**
~~ROBERT A. SOLOMON, P.C.~~

_____

By: _/s/_ ~~Robert A. Solomon~~
~~(RS2895)~~
~~rsolomon@metrolaw.com  91~~
~~Pacific Street~~
~~Newark, Ne Jersey 07105~~
~~(973) 344-6587 Telephone~~
~~(973) 344-7604 Facsimile~~

~~**FRANK & BIANCO LLP**~~
_Marvin L. Frank_ Marvin L.
Frank (MF1436)
~~mfrank@frankandbianco.co~~
~~m~~
Gregory A. Frank (Pro Hac Vice)
275 Madison Avenue, Suite 705
New York, New York 10016
(212) 682-1853 Telephone
(212) 682-1892 Facsimile
mfrank@frankllp.com
gfrank@frankllp.com

**ROBERT A. SOLOMON, P.C.**
Robert A. Solomon (RS2895) 91
Pacific Street
Newark, New Jersey 07105
(973) 344-6587 Telephone
(973) 344-7604 Facsimile
rsolomon@metrolaw.com

**NABLI & ASSOCIATES, P.C.**
~~Peter Y. Lee (PL2405)~~
~~peter.lee@leeadvocates.com~~
~~Khaled (Jim) El Nabli (_pro hac vice pending_)~~
~~Jim.elnabli@nablilaw.com~~
60 East 42nd Street, Suite 1101
New York, New York 10165
(212) 808-0716 Telephone
(212) 808-0719 Facsimile
Khaled (Jim) El Nabli
Jim_ElNabli@NabliLaw.com
Joseph H. Lilly JoeLilly@att.net
Alan J. Harris AlanHarrisEsq@aol.com
Peter Y. Lee Peter.Lee@LeeAdvocates.com

_Counsel for Plaintiff and the Class_

26



Ocean City Tanner Outlet Cente
12711 Ocean Gateway, Suite 760
Ocean City, MD 21812            LO
110-213-7891

Trans: 3758     Date: 12/18/11 2:06 PM
Store: 135      Register: 3
Sales Associate:
399017 (Elise)
Cashier: Lauren

| Item | Qty | Price. | Amount. .4 |
|------|-----|--------|-----------|
| 37804:fty oxford shirt., 06906, XL | | | (,) |
| 099103037002 1, | 29.97 | | 10.19 |
| 60% Off Clearance | | | (17,98) |
| Item Disc (15%) | | | (1.80) |

Subtotal        10.19
Sales Tax        0.61

Total        10.80 ()

Amount Tendered
Discover    '            10.80
        *7908
Auth #: 01809R
Transaction Type: Sale
Entry Method: Swiped
Auth Time: 2:06 PM

                        1 3.

        .

'Change                 0.00

Sales Tax Analysis

| Agency . | Rate% | Taxable | Tax_', |
|----------|-------|---------|--------|
| MARYLAND (State) | 6% | 10.19 | 0,60 |

**"*''''''''*************************************  You
have saved $19.78
*********************************************

J.Crew accepts returns of unworn,
unwashed, undamaged or defective
merchandise for full refund or        (
exchange within 30 days of original
purchase. Original receipt must
accompany merchandise purchased by
cash or check. Resuests to
exchange merchandise received as a
sift must be accompanied by a gift
receipt, See store location or



Rehoboth
36959 Seaside Outlet Drive - S
Rehoboth Beach, DE 19971
302-226-1377

Trans: 7568      Date: 12/22/11 3:31 PM
Store: 38         Register: 2
Sales Associate: 0
 (House)
Cashier: Shawnice

| Item | L | P | R | Amt |
|------|---|---|---|-----|
| (REctq HpH) XL | | | | |
| 099102935709 1 | 19.50 | 8.29 | | |
| Item Disc (50%) | | (9.75) | | |
| Item Disc (15%) | | (1.96) | | |

|  | Subtotal | 8.29 |
|--|----------|------|
| Sales Tax | 0.00 | |
| **Total** | **8.29** | |

Amount Tendered
Discover                          8.29
               ic(7908
   Auth B: 02251R
   Transaction Type: Sale
   Entry Method: Swiped               PO
   Auth Time: 3:30 PM

Chaim                          0.00

Sales Tax Analysis

| Agency | Rate% | Taxable | Tax () |
|--------|-------|---------|--------|
| DELAWARE (State) | 0% | 8.29 | 0.00 |

*****.*****M************************M*****N***** You have
            saved $11.21
*************M***********K*************

J.Crew accepts returns of unworn, unwashed, undamaged or defective merchandise for full refund or
exchange within 30 days of original
Purchase. Original receipt must
accompany merchandise purchased by
 cash or check. Requests to
exchange merchandise received as a
gift muss be accompanied by a gift
 receipt. See store location or
www.jcrew.com for full return policy.

 Read our privacy policy at
http://www.jcrew.com/privacw

Thank you for shopping at J.Crew.

SOLD ITEM COUNT = 1



Customer Copy

J.CREW

Willowbrook
1665 Willowbrook Mall
Wayne, NJ 07170
973-890-7120

Trans: 8100      Date: 1/4/15 2:18 PM
Stire: 614      Register: 1
Sales Associate: 0
  (House)
Cashier: Melissa

| Item | Qty | Price | Amount |
|------|-----|-------|--------|
| 91918:CLASSIC REPP PO POLO, BL8133, XL | | | |
| 099102956775 1 | | 42.50 | 12.50 |

Subtotal      12.50
Sales Tax      0.00

**Total      42.50**

**Amount Tendered**
Discover      12.50
....*****:Auth
if: 00413R Transaction
Type: Sale Entry
Method: Swiped Auth
Time: 2:17 PM

Choose      0.00

**Sales Tax Analysis**

| Agency | Rate% | Taxable | Tax |
|--------|-------|---------|-----|
| NEW JERSEY (State) | 0% | 42.50 | 0.00 |

J.Crew accepts returns of unworn,
unwashed, undamaged or defective
merchandise for Full refund or
exchange within 30 days of original purchase. Original
receipt must accompany merchandise purchased by
cash or check. Requests to
exchange merchandise received as a
gift must be accompanied by a gift
receipt. See store location or
www.Jcrew.com for full return policy.

Read our privacy policy at
http://www.Jcrew.com/privacy

Thank you for shopping at J.Crew.

SOLD ITEM COUNT = 1

Customer Copy