UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| AHMED KAMAL, on behalf of himself and the putative class, | ) ) ) |
| Plaintiff, | ) Case No. 2:15-cv-00190-WJM-MF ) |
| v. | ) ) |
| J. CREW GROUP, INC., *et al.*, | ) Returnable: February 6, 2017 ) |
| Defendants. | ) ) ) |

---

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT

---

**FRANK LLP**
275 Madison Avenue, Suite 705
New York, New York 10016
(212) 682-1853 Telephone
(212) 682-1892 Facsimile

*Co-Counsel for Plaintiff and the Class*

*On the Brief*

    Marvin L. Frank
    Gregory A. Frank

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................ 1

BACKGROUND ........................................................................ 3

STANDARD OF REVIEW ............................................................. 4

ARGUMENT .............................................................................. 5

   I.    J. Crew Incurred Liability When It Printed The Offending Receipts ............................ 5

     A.   The Risk-Based Harm Here Has Always Been—And Remains—Very Real .............. 7

     B.   Congress Intended For J. Crew To Be Held Liable For These FACTA Violations ... 10

     C.   Congress Intended For This Plaintiff To Sue J. Crew For Violating FACTA ........... 12

     D.   FACTA Violations Necessarily Implicate Traditional Privacy Rights ..................... 16

   II.   J. Crew's Willful Misconduct Did Not "Barely" Violate FACTA ............................... 19

   III.   The Weight Of Authority Does Not Tilt In J. Crew's Favor ......................................... 23

   IV.   Plaintiff Has Established All Article III Standing Requirements .................................. 25

CONCLUSION ......................................................................... 26

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alston v. Countrywide Fin. Corp.*, 585 F.3d 753 (3d Cir. 2009) ........................................... 14, 20

*Altman v. White House Black Mkt., Inc.*, No. 1:15-cv-2451-SCJ,
  2016 U.S. Dist. LEXIS 92761 (N.D. Ga. July 13, 2016)............................................. 21, 24, 25

*Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708 (9th Cir. 2010)........................................ 6, 13

*Bellino v. JPMorgan Chase Bank, N.A.*, No. 14-cv-3139 (NSR),
  2016 U.S. Dist. LEXIS 128770 (S.D.N.Y. Sept. 20, 2016).................................................... 25

*Blaha v. First Nat'l Collection Bureau, Inc.*, No. 16-cv-2791 (WHW)(CLW),
  2016 U.S. Dist. LEXIS 157575 (D.N.J. Nov. 10, 2016) .................................................. 20, 25

*Bowman v. Wilson*, 672 F.2d 1145 (3d Cir. 1982)........................................................................ 4

*Braitberg v. Charter Commc'ns, Inc.*, 836 F.3d 925 (8th Cir. 2016) .............................. 21, 22, 24

*Carney v. Goldman*, No. 15-260-BRM-DEA,
  2016 U.S. Dist. LEXIS 177087 (D.N.J. Dec. 22, 2016)................................................... 17, 20

*Church v. Accretive Health, Inc.*, 654 F. App'x 990 (11th Cir. 2016) ....................................... 24

*Coleman v. Miller*, 307 U.S. 433 (1939)................................................................................... 17

*Conn. Nat'l Bank v. Germain*, 503 U.S. 249 (1992)................................................................. 11

*Constitution Party of Pa. v. Aichele*, 757 F.3d 347 (3d Cir. 2014).............................................. 4

*Creative Hospitality Ventures, Inc. v. U.S. Liab. Ins. Co.*,
  444 F. App'x 370 (11th Cir. 2011) ...................................................................................... 18

*Creative Hospitality Ventures, Inc. v. U.S. Liab. Ins. Co.*,
  655 F. Supp. 2d 1316, 1333 (S.D. Fla. 2009) ...................................................................... 17

*Creative Hospitality Ventures, Inc. v. U.S. Liab. Ins. Co.*, No. 08-22302-CIV-ZLOCH,
  2011 U.S. Dist. LEXIS 156271 (S.D. Fla. Mar. 23, 2011)...................................................... 17

*Cruper-Weinmann v. Paris Baguette Am., Inc.*, 653 F. App'x 81 (2d Cir. 2016) ....................... 23

*Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286 (3d Cir. 2005).......................................... 4

*Djowharzadeh v. City Nat'l Bank & Trust Co. of Norman*,
  646 P.2d 616 (Okla. Civ. App. 1982) ................................................................................... 18

*Donoghue v. Bulldog Investors Gen. P'ship*, 696 F.3d 170 (2d Cir. 2012)................................ 16

*Duncan v. Walker*, 533 U.S. 167 (2001).................................................................................. 11

*Fancaster, Inc. v. Comcast Corp.*, No. 08-cv-2922 (DRD),

2012 U.S. Dist. LEXIS 32287 (D.N.J. Mar. 9, 2012)............................................. 14

*Flaum v. Doctor's Assocs., Inc., d/b/a Subway*, No. 16-61198-CIV-ALTONAGA/O'Sullivan,

2016 U.S. Dist. LEXIS 169130 (S.D. Fla., Aug. 29, 2016)............................... 21, 24

*Fraser v. Wal-Mart Stores, Inc.*, No. 2:13-cv-00520-TLN-DB,

2016 U.S. Dist. LEXIS 144351 (E.D. Cal. Oct. 18, 2016) .................................... 25

*Galaria v. Nationwide Mut. Ins. Co.*, Nos. 15-3386/3387,

2016 U.S. App. LEXIS 16840 (6th Cir. Sept. 12, 2016) ...................................... 22

*Geisinger Cmty. Med. Ctr. v. Sec'y U.S. Dep't of Health & Human Servs.*,

794 F.3d 383 (3d Cir. 2015) ................................................................................ 11

*Guarisma v. Microsoft Corp.*, No. 15-cv-24326-ALTONAGA/O'Sullivan,

2016 U.S. Dist. LEXIS 97729 (S.D. Fla. July 26, 2016)....................... 20, 21, 24, 25

*Hammer v. Sam's East, Inc.*, 754 F.3d 492 (8th Cir. 2014).................................... 24

*Hancock v. Urban Outfitters, Inc.*, 830 F.3d 511 (D.C. Cir. 2016) ............................ 25

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) ..................................... 15, 20

*In re Horizon Healthcare Servs., Inc. Data Breach Litig.*, No 2:13-cv-07418-CCC-JBC,

2015 U.S. Dist. LEXIS 41839 (D.N.J. Mar. 31, 2015) .......................................... 22

*In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262 (3d Cir. 2016) ...................... 6, 17, 22

*In re Toys "R" Us—Del., Inc.—Fair & Accurate Credit Transactions Act (FACTA) Litig.*,

300 F.R.D. 347 (C.D. Cal. 2013)........................................................................... 9

*In re Toys "R" Us—Del., Inc.—Fair & Accurate Credit Transactions Act (FACTA) Litig.*,

No. MDL 08-01980 MMM (FMOx),

2010 U.S. Dist. LEXIS 133583 (C.D. Cal. Aug. 17, 2010)..................................... 9

*Jacobson v. Healthcare Fin. Servs.*, 516 F.3d 85 (2d Cir. 2008) ................................. 13

*Jaffe v. Bank of Am., N.A.*, No. 13-cv-4866 (VB),

2016 U.S. Dist. LEXIS 92899 (S.D.N.Y. July 15, 2016) ....................................... 25

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .............................................. 6

*McGuire v. Shubert*, 722 A.2d 1087 (Pa. Super. Ct. 1998) ...................................... 18

*Meyers v. Nicolet Rest. of De Pere, LLC*, No. 16-2075,

2016 U.S. App. LEXIS 22139 (7th Cir. Dec. 13, 2016)......................................... 23

*Murray v. GMAC Mortg. Corp.*, 434 F.3d 948 (7th Cir. 2006) ................................... 15

*Natural. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 710 F.3d 71 (2d Cir. 2013)........ 21

*Perrone v. Gen. Motors Acceptance Corp.*, 232 F.3d 433 (5th Cir. 2000) ...................... 11, 13, 14

*Peterson v. Idaho First Nat'l Bank*, 367 P.2d 284 (Idaho 1961) ................................. 18

*Redman v. Radioshack Corp.*, 768 F.3d 622 (7th Cir. 2014) ............................... 2, 14, 15

*Reilly v. Ceridian Corp.*, 664 F.3d 38 (3d Cir. 2011) ............................................ i, 22

*Reliance Electric Co. v. Emerson Electric Co.*, 404 U.S. 418 (1972) ......................... 16

*Silverman v. Eastrich Multiple Investor Fund*, 51 F.3d 28 (3d Cir. 1995) .................. 12

*Spokeo, Inc. v. Robins*, 578 U.S. ___, 136 S. Ct. 1540 (2016) ............................... passim

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998) ................................ 17, 19

*Stillmock v. Weis Mkts., Inc.*, 385 F. App'x 267 (4th Cir. 2010) ................................. 9

*Strubel v. Comenity Bank*, 842 F.3d 181, No. 15-528-cv,
    2016 U.S. App. LEXIS 21032 (2d Cir. Nov. 23, 2016) ............................... 21, 24

*Tavarez v. Klingensmith*, 372 F.3d 188 (3d Cir. 2004) ......................................... 11

*TKR Cable Co. v. Cable City Corp.*, No. 96-cv-2877(GEB),
    1998 U.S. Dist. LEXIS 24059 (D.N.J. Jan. 26, 1998) ............................................ 4

*Turner Broad. Sys. Inc. v. Fed. Commc'ns Comm'n*, 512 U.S. 622 (1994) ..................... 5

*United States v. Gotti*, No. S5 02 CR 743 (RCC),
    2004 U.S. Dist. LEXIS 3308 (S.D.N.Y. Mar. 2, 2004) ......................................... 12

*United States v. Students Challenging Regulatory Agency Procedures*,
    412 U.S. 669 (1973) .............................................................................. 4

*Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765 (2000) ................ 17, 19

*Whole Enchilada, Inc. v. Travelers Prop. Cas. Co. of Am.*,
    581 F. Supp. 2d 677 (W.D. Pa. 2008) ...................................................... 18

*Wood v. J Choo USA, Inc.*, No. 15-cv-81487-BLOOM/Valle,
    2016 U.S. Dist. LEXIS 106029 (S.D. Fla. Aug. 11, 2016)......................... 11, 24, 25

*Zia v. Citimortgage, Inc.*, No. 15-cv-23026-GAYLES,
    2016 U.S. Dist. LEXIS 131349 (S.D. Fla. Sept. 26, 2016) ................................. 25

*Zink v. First Niagara Bank, N.A.*, No. 13-CV-01076-RJA-JJM,
    2016 U.S. Dist. LEXIS 98104 (W.D.N.Y. July 1, 2016).................................. 25

**Constitutional Provisions**

U.S. Const. art. III, § 2 ............................................................................... passim

**Statutes**

12 U.S.C. § 2605 ...................................................................................... 14

12 U.S.C. § 2607 .................................................................................. 14, 15

15 U.S.C. § 1601 et seq. .................................................................. 11, 13, 21

15 U.S.C. § 1679g ..................................................................................... 16

15 U.S.C. § 1681c(g) ............................................................................ passim

15 U.S.C. § 1681n ................................................................................ passim

15 U.S.C. § 1681o ..................................................................................... 15

15 U.S.C. § 1692 *et seq.* .......................................................... 13, 17, 24, 25

15 U.S.C. § 1693m ..................................................................................... 16

15 U.S.C. § 78p(b) ..................................................................................... 16

17 U.S.C. § 504 ........................................................................................ 16

18 U.S.C. § 2710 ...................................................................................... 22

47 U.S.C. § 227 ........................................................................................ 16

47 U.S.C. § 551 ................................................................................... 22, 24

Credit and Debit Card Receipt Clarification Act of 2007,
   Pub. L. 110-241, 122 Stat. 1565 ....................................................... passim

**Rules**

Fed. R. Civ. P. 12(b)(1) ............................................................................ 1, 4

**Other Authorities**

Brief in Support of Statute by United States of America as Intervenor 13–16,
   *Papazian v. Burberry Ltd.*, No. 2:07-cv-01479-GPS-RZ (C.D. Cal. July 24, 2007) ................. 8

Bureau of Justice Statistics, U.S. Dep't of Justice,
   "Victims of Identity Theft, 2012" (Dec. 2013) ...................................... 10

Case Comment, *Spokeo, Inc. v. Robins*, 130 Harv. L. Rev. 437 (2016) ..................................... 16

Mohammed Aamir Ali et al.,

    *Does the Online Card Payment Landscape Unwittingly Facilitate Fraud?*,

    IEEE Security & Privacy (forthcoming 2017) .......................................................... 9

Prepared Statement, Linda Foley, Executive Director, Identity Theft Resource Center,

    *FACTA Hearing*, 108th Cong., S. Hrg. 108-579 (2003) ........................................... 7

Prepared Statement, Michael D. Cunningham, Senior Vice President,

    Credit & Fraud Operations, Chase Cardmember Services,

    *FACTA Hearing*, 108th Cong., S. Hrg. 108-579 (2003) ........................................... 7

Press Release, Fed. Trade Comm'n,

    "FTC Releases Annual Summary of Consumer Complaints" (Mar. 1, 2016) ......................... 10

Statement by President George W. Bush Upon Signing H.R. 2622,

    39 Weekly Comp. Pres. Doc. 1746 (Dec. 4, 2003) ........................................... 5, 17

*Tournier v. Nat'l Provincial & Union Bank of Eng.*, (1923) 1 K.B. 461 .................................... 18

William B. Rubenstein, *On What A "Private Attorney General" Is—And Why It Matters*,

    57 Vand. L. Rev. 2129 (2004) ................................................................. 13

Plaintiff Ahmed Kamal, by and through his undersigned counsel, respectfully submits this memorandum of law in opposition to Defendants' (collectively, "J. Crew") motion to dismiss the Second Amended Class Action Complaint (Dkt. No. 68), pursuant to Federal Rule of Civil Procedure 12(b)(1).  Plaintiff has adequately pleaded U.S. Const. art. III, § 2 standing.

## PRELIMINARY STATEMENT

This Court previously held that Plaintiff's Amended Class Action Complaint stated a claim upon which relief can be granted.  Subsequently, the Court dismissed that same complaint for lack of subject matter jurisdiction, holding that the complaint failed to set forth a cognizable injury in fact.  In essence, the Court shifted the burden to consumers to shred or burn their credit card receipts (since the receipt can't just be thrown out), versus leaving the burden where Congress had placed it, on retailers not to print unoffending receipts.

Plaintiff's Second Amended Class Action Complaint ("SAC") plausibly pleads that Plaintiff suffered actual harm in the form of increased risk of identity theft as a result of J. Crew's unlawful publication of Plaintiff's credit card number.  Plaintiff's SAC includes facts demonstrating how the card numbers that J. Crew unlawfully printed may easily be manipulated for identity theft.  The SAC describes how computer scientists in the United Kingdom have just released a study confirming the necessity of merchant compliance with the FACTA[1] provision that J. Crew willfully chose to ignore.

It has always been the law of the Third Circuit that Congress may calculate a probability of harm and codify a statutory right to protect that right that stands independent from the probability of harm in each and every instance.  Plaintiff's harm here is no different.  J. Crew's

---

[1]  The Fair and Accurate Credit Transactions Act of 2003 ("FACTA"), *codified as amended at* 15 U.S.C. § 1681c(g).  FACTA is part of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*

conduct unacceptably increased Plaintiff's risk of harm in the manner Congress deemed sufficient to grant him statutory rights under FACTA.

Plaintiff ameliorated J. Crew's wrongdoing in part by collecting and retaining the offending receipts.  This does not release J. Crew from liability for programming its computers to produce thousands of offending receipts.  Receipts must all be eventually thrown out.  In deciding whether to shift the burden to consumers to shred or burn their receipts (since the receipt can't just be thrown out), versus leaving the burden on retailers not to produce unoffending receipts, Congress chose the latter.

J. Crew now seeks to write FACTA out of the statute books.  This result would undermine *Spokeo*[2] along with the well-established principles of standing law that *Spokeo* incorporates—namely, that courts must defer to Congress's authority to use statutes like FACTA to protect consumers against public crises like identity theft and credit card fraud.  If any statute qualifies for the Congressional deference mandated by *Spokeo*, it is FACTA.

Congress intended for this very consumer to sue this very merchant on behalf of a class of consumers also exposed to the very misconduct at issue here.  Congress has <u>twice</u> confirmed that FACTA <u>must</u> empower consumers to file lawsuits just like this one, because it is the best and only way to enforce FACTA, "a serious congressional effort to combat" a "serious problem."[3]

Neither pre- nor post-*Spokeo* case law supports writing FACTA out of the books—in fact, it instructs courts to avoid such a result.  Finding FACTA invalid under *Spokeo* would

---

[2]  *Spokeo, Inc. v. Robins*, 578 U.S. ___, 136 S. Ct. 1540 (2016).

[3]   *Redman v. Radioshack Corp.*, 768 F.3d 622, 639 (7th Cir. 2014) (Posner, J.) (discussing FACTA's statutory framework).

undermine, without basis, the validity of virtually every consumer protection law that Congress sees fit to enact.

## BACKGROUND

Through its Opinion of October 20, 2016 (Dkt. No. 63) ("Opinion"), this Court dismissed Plaintiff's Amended Class Action Complaint without prejudice, reasoning that that pleading failed to set forth a cognizable injury in fact under *Spokeo* and certain recent decisions interpreting that Supreme Court precedent.  Opinion at 4–6.  This Court instructed Plaintiff to file an amended complaint including allegations sufficient to establish Plaintiff's Article III standing under in *Spokeo*.  *Id.* at 6.

Plaintiff accordingly filed the SAC.  (Dkt. No. 65).  The SAC alleges that, among other things:

(1) Congress created FACTA in order to protect consumers against the known risk of identity theft and credit card fraud that results from merchants' printing private financial information on credit card receipts, SAC ¶¶ 26–35;

(2) J. Crew exposed Plaintiff to a risk-based harm that is concrete and substantive, and real and imminent, when it violated FACTA by providing Plaintiff with receipts bearing the first six and last four digits of his card number, *id.* ¶¶ 36–44;[4]

(3) the risk-based harm that Plaintiff suffered as a result of J. Crew's FACTA violations has a close relationship to harms traditionally redressable in civil court under Anglo-American precedent, since those receipts must continually be thrown out, *id.* ¶¶ 44–46; and

---

[4]  Specifically, J. Crew violated Plaintiff's FACTA rights in this fashion on three separate occasions in December 2014 and January 2015.  *Id.* ¶¶ 8, 98–103.

(4) Congress intended for consumers like Plaintiff to file class action suits against merchants like J. Crew for the very FACTA violations at issue here, *id.* ¶¶ 57–62.[5]

J. Crew nevertheless has moved to dismiss the SAC under Rule 12(b)(1).  (Dkt. No. 68).

## STANDARD OF REVIEW

J. Crew argues that this Court lacks subject matter jurisdiction because the facts as pleaded by Plaintiff are insufficient to establish his constitutional standing.  In weighing such a Rule 12(b)(1) motion, a court must consider the plaintiff's allegations, and any documents referenced therein or attached thereto, in the light most favorable to the plaintiff.  *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014).

"Injury-in-fact is not Mount Everest."  *Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286, 294 (3d Cir. 2005) (Alito, J.).  "The contours of the injury-in-fact requirement, while not precisely defined, are very generous.  Once a plaintiff has alleged some specific, 'identifiable trifle' of injury that is fairly traceable to the defendant's conduct, the requirement of a constitutionally adequate stake in the controversy is satisfied."  *Bowman v. Wilson*, 672 F.2d 1145, 1151 (3d Cir. 1982) (quoting *United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669, 689 n.14 (1973)) (internal citations omitted and emphasis added); *accord, e.g.*, *Danvers Motor Co.*, 432 F.3d at 294.

---

[5]  The SAC also recites a number of allegations concerning the willful nature of J. Crew's FACTA violations.  *See, e.g.*, *id.* ¶¶ 47–56, 63–97.  Because this Court has already ruled in Plaintiff's favor with respect to the willfulness of J. Crew's FACTA violations, (Op. Denying Defs.' First Mot. to Dismiss Am. Compl. at 3–4 (Dkt. No. 33)), J. Crew cannot now (as it purports to do) "reserve[] the right" to re-litigate the willfulness issue here at some point in the future, (Defs.' Br. at 4 n.3).  With regard to the willfulness of J. Crew's violations, there have been no changes in fact or law such as would allow for re-litigation of this issue.  *See TKR Cable Co. v. Cable City Corp.*, No. 96-cv-2877(GEB), 1998 U.S. Dist. LEXIS 24059, at *4–11 (D.N.J. Jan. 26, 1998) (Brown Jr., J.) (doctrine of the law of the case barred re-litigation of court's prior ruling that defendant could be held liable for willful statutory violations).

<u>**ARGUMENT**</u>

**I.      J. Crew Incurred Liability When It Printed The Offending Receipts**

As President George W. Bush made clear when he signed FACTA into law, its purpose is to "protect individual privacy" by shifting from consumers to merchants the burden of ensuring that "[s]lips of paper that most people throw away [do] not hold the key to their savings and financial secrets."  Statement by President George W. Bush Upon Signing H.R. 2622, 39 Weekly Comp. Pres. Doc. 1746, 1757 (Dec. 4, 2003). Attempting to turn FACTA's statutory scheme on its head, J. Crew attempts to shift the burden back onto what consumers did or did not do to ameliorate J. Crew's wrongdoing—did the consumer throw the receipt out himself?; or did he burn it or shred it?; or did he bring it in to Court to demonstrate Defendants' wrongdoing?  These arguments are red herrings—the correct analysis of whether Plaintiff suffered a harm in the form of increased risk is whether Plaintiff would have suffered that increased risk had he not been forced to take positive steps to undo Defendants' conduct.

Instead, J. Crew asks this Court to analyze the events under a different chain of causation than Congress codified.  According to J. Crew, the question is whether the consumer took sufficient steps to burn or destroy the fruit of J. Crew's violations such as to interrupt the chain of causation leading to actual harm. Wherever a consumer catches the wrongdoing and brings suit to enforce his rights, J. Crew argues, that consumer cannot prevail.  This circular logic threatens to write FACTA out of the law books.  *See Turner Broad. Sys. Inc. v. Fed. Commc'ns Comm'n*, 512 U.S. 622, 665–66 (1994) ("Congress is far better equipped than the judiciary to amass and evaluate the vast amounts of data bearing upon [consumer protection issues.]" (internal quotation marks and citation omitted)).

Worse, J. Crew's reasoning is directly contradicted by *Spokeo*, which insists that it is Congress's power, not the Courts', to "[']define injuries and articulate chains of causation that

will give rise to a case or controversy where none existed before.'" *Spokeo*, 136 S. Ct. at 1549 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 580 (1992)).   In FACTA, Congress determined that the chain of causation leading to Plaintiff's risk-based injuries was that J. Crew created and gave out a receipt that included data that computer scientists have proven to be sufficient to enable identity thieves.[6]

Asking a Plaintiff to plead his claims based on what risks were manifested <u>after</u> he discovered J. Crew's violations effectively demands that the Plaintiff "allege an[] <u>additional</u> harm beyond the one Congress has identified," expressly contradicting *Spokeo*'s edict that no such harm is required.  *Spokeo*, 136 S. Ct. at 1549 (emphasis original); *see In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 274 (3d Cir. 2016) ("*Nickelodeon II*") ("While perhaps 'intangible,' the harm [from the statutory violation] is also concrete in the sense that it involves a clear *de facto* injury . . . .").[7]

Congress has <u>twice</u> determined that FACTA violations such as J. Crew's here can only be enforced by private individuals like Plaintiff, who file lawsuits like this one <u>in response to observing that the defendant programs its computers to print offending receipts</u>, with or without tangible proof that they have fallen victim to the type of crimes that led to FACTA's enactment. *See* Credit and Debit Card Receipt Clarification Act of 2007 ("Clarification Act"), Pub. L. 110-241 §§ 2(a)(2)–(3), -(6), 3(a), 122 Stat. 1565, 1565–66; 15 U.S.C. § 1681n(a) (guaranteeing private right of action for individuals subjected to FACTA violations); *see also Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 718 (9th Cir. 2010) ("The actual harm that a willful violation of FACTA will inflict on a consumer will often be small or difficult to prove. . . .   That actual

---

[6]  *See* Part I.A *infra*.

[7]  *See* Part I.C *infra*.

loss is small and hard to quantify is why statutes such as th[is one] provide for modest damages without proof of injury." (emphasis added) (internal quotation marks and citation omitted)).

### A.   The Risk-Based Harm Here Has Always Been—And Remains—Very Real

J. Crew's conduct of printing Plaintiff's credit card number created a risk of real harm to Plaintiff until Plaintiff blocked any chain of causation manifesting actual harm by securing J. Crew's offending receipts.   FACTA's prohibition on printing more than the last five card-number digits on receipts is sound public policy.   (Defs.' Br. at 7–8 (discussing FACTA's purpose)).   Indeed, as is discussed in detail below, recent expert analysis of current credit card fraud tactics only confirms Congress's prescience in forbidding merchants from printing card receipts in this manner.

No one has ever disputed the necessity and wisdom of FACTA's card-number truncation requirement.   It certainly was not disputed in 2003, at the time the statute was enacted.   As FACTA's legislative history shows, experts including members of the credit card industry (1) warned Congress that non-truncated card numbers are particularly dangerous in the hands of sophisticated criminals, and (2) recommended that merchants be required to redact from credit card receipts anything other than the last five digits. *See The History, Purpose, and Function of the Fair Credit Reporting Act and Provisions Subject to the Expiring Preemption Provision Specifically; The Growing Problem of Identity Theft; Affiliate Sharing Practices; Accuracy of Credit Report Information; Consumer Awareness and Understanding the Credit Granting Process and Addressing Measures to Enhance the Act: Hearing Before the S. Comm. on Banking, Hous. & Urban Affairs*, 108th Cong., S. Hrg. 108-579 (2003) ("*FACTA Hearing*") (Prepared Statement, Michael D. Cunningham, Senior Vice President, Credit & Fraud

Operations, Chase Cardmember Services); *see also FACTA Hearing* (Prepared Statement, Linda

Foley, Executive Director, Identity Theft Resource Center).[8]  (SAC ¶ 37).

Nor was the need for this requirement disputed five years later, in 2008, when Congress

passed the Clarification Act for the limited purpose of addressing apparent merchant confusion

over the extent of FACTA's second requirement, that card expiration dates be redacted from

receipts.  In fact, the Clarification Act presupposes that truncating card numbers on receipts is a

fundamental, non-discretionary duty incumbent upon every card-accepting merchant.  *See*

Clarification Act § 2(a)(3), -(6), 122 Stat. at 1565 ("Many merchants understood that [FACTA]

would be satisfied by truncating the account number down to the last five digits . . . .  Experts in

the field agree that proper truncation of the card number . . . prevents . . . identity theft or credit

card fraud.").

As the U.S. Department of Justice ("DOJ") noted in a 2007 brief explaining the purpose

of FACTA and the necessity of merchant compliance with it:

> The goal of the provision that became § 1681c(g) was "to limit the
> opportunities for identity thieves to 'pick off' key card account information." S.
> Rep. No. 108-166 (2003). FACTA followed enactment of laws in at least 20 states
> with provisions similar to § 1681c(g) that prohibited printing the full card number
> as well as the expiration date on receipts. . . .
>
>                                          . . .
>
> <u>Defendant's argument that a thief would not be able to make fraudulent
> charges using only a truncated card number and the full expiration date misses the
> point</u>.  Thieves might piece together (or 'pick-off,' in the words of Congress)
> different bits of information from different sources. . . .  Congress' actions
> comport with common experience, testimony provided in support of the
> legislation, and the instructions credit card companies give to merchants. . . .

Brief in Support of Statute by United States of America as Intervenor 13–16, *Papazian
v. Burberry Ltd.*, No. 2:07-cv-01479-GPS-RZ (C.D. Cal. July 24, 2007) (emphasis
added), filed as Exhibit A to Ex Parte Application to Intervene, ECF No. 24.  (SAC
¶ 43).

---

[8]   A transcript of *FACTA Hearing* may be viewed at: https://www.gpo.gov/fdsys/pkg/CHRG-
108shrg95254/html/CHRG-108shrg95254.htm.

Just a few weeks ago, computer scientists in the United Kingdom released a study whose results provide a startling reminder of the need to truncate card numbers. *See* Mohammed Aamir Ali et al., *Does the Online Card Payment Landscape Unwittingly Facilitate Fraud?*, IEEE Security & Privacy (forthcoming 2017) (attached as Exhibit A to the Declaration of Marvin L. Frank in Support of Plaintiff's Opposition to Defendants' Motion to Dismiss the Second Amended Class Action Complaint ("Frank Decl.")).[9]

These computer scientists investigated the ease with which hackers can deduce consumers' credit card details by systematically trying different combinations of cardholder data on hundreds of websites simultaneously. *See* Frank Decl. Ex. B, at 2. For a credit card fraudster, access to <u>both</u> the first six digits of the card number—which identify the issuing bank and card type—<u>and</u> its last several digits—which are always unique to that particular cardholder—can mean "the difference between a quick and practical attack, and a tedious, close to impractical attack." Frank Decl. Ex. A, at 3; *see* Frank Decl. Ex. B, at 2 ("[E]ven starting with no details at all other than the first six digits . . . a hacker can obtain the three essential pieces of information to make an online purchase within as little as six seconds.").[10]

---

[9]   Attached as Exhibit B to the Frank Declaration is the December 2, 2016 press release summarizing the researchers' study and conclusions.

[10]   J. Crew thus can no longer rely on outdated arguments that printing the first six digits of the card number, in addition to the last four, constitutes a harmless violation of FACTA. (Defs'. Br. at 9 n.7 (citing discussion of expert witness testimony in *In re Toys "R" Us—Del., Inc.—Fair & Accurate Credit Transactions Act (FACTA) Litig.*, No. MDL 08-01980 MMM (FMOx), 2010 U.S. Dist. LEXIS 133583, at *45 (C.D. Cal. Aug. 17, 2010) ("*Toys "R" Us I*"))). In addition, although *Toys "R" Us I* denied class certification to the plaintiffs in that FACTA action, the same court reversed itself roughly two years later and certified the class. *See In re Toys "R" Us—Del., Inc.—Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 300 F.R.D. 347, 358 (C.D. Cal. 2013) ("*Toys "R" Us II*") ("FACTA's actual and statutory damages provisions . . . serve a deterrent purpose, as they prevent businesses from willfully making consumer financial data available, <u>even where no actual harm results</u>." (emphasis added) (internal quotation marks and citation omitted)).

Just as the DOJ warned in 2007, total FACTA compliance remains critical, because any risk that criminals might acquire private financial information is an unacceptable risk.  *Cf. Stillmock v. Weis Mkts., Inc.*, 385 F. App'x 267, 270, 273 (4th Cir. 2010) (consumers alleging merchant failed to truncate card numbers "were exposed to the same risk of harm every time the defendant violated [FACTA] in the identical manner").[11]

B.  Congress Intended For J. Crew To Be Held Liable For These FACTA Violations

J. Crew pretends that "Congressional intent behind FACTA does not help" Plaintiff establish standing to sue J. Crew for violating the statute by failing to truncate his card number (on three separate occasions).  (Defs.' Br. at 7) (emphasis original).  Focusing on off-hand remarks from the Clarification Act that, if anything, validate the truncation requirement at issue here, J. Crew conveniently ignores that Congress has twice confirmed that merchants are subject to unqualified liability for printing too many card-number digits on receipts.

When Congress passed FACTA, it made clear that any merchant that printed more than the last five digits of a card number on any receipt would be liable to the affected consumer, for either any actual damages or for statutory damages between $100 and $1,000.  *See* 15 U.S.C. §§ 1681c(g), -n(a).  When Congress passed the Clarification Act, it stressed the continued importance of FACTA's card-number truncation requirement, *see* Clarification Act § 2(a)(3), -(6), 122 Stat. at 1565, and amended FACTA only so as to create a brief grace period for merchants in violation of FACTA's expiration-date redaction requirement, *see id.* § 3(a), 122 Stat. at 1566 (amending 15 U.S.C. § 1681n).

---

[11]  Indeed, identity theft is a problem so pervasive in America that it has topped the Federal Trade Commission's list of consumer complaints for 15 years.  *See* Press Release, Fed. Trade Comm'n, "FTC Releases Annual Summary of Consumer Complaints" (Mar. 1, 2016), *available at* https://www.ftc.gov/news-events/press-releases/2016/03/ftc-releases-annual-summary-consumer-complaints.  In 2012, roughly 7% of all U.S. residents age 16 or older were victims of at least one incident of identity theft.  Bureau of Justice Statistics, U.S. Dep't of Justice, "Victims of Identity Theft, 2012" (Dec. 2013), *available at* http://www.bjs.gov/content/pub/pdf/vit12.pdf; *see* SAC ¶ 27.

The precision and clarity of the Clarification Act debunk any suggestion that, in passing it, Congress intended to protect merchants like J. Crew against suits brought by consumers like Plaintiff.  The Clarification Act identified precisely which merchants Congress had determined should be granted temporary reprieve from FACTA liability—*i.e.*, those that did not immediately grasp the scope of the law's expiration-date redaction requirement—and narrowly tweaked 15 U.S.C. § 1681n so as to create the brief grace period for that category of merchants.  *See* Clarification Act §§ 2(a)(2)–(3), -(3)(a), 122 Stat. at 1565–66.

That Congress knew how to shield FACTA violators from private-action liability, but chose <u>not</u> to do so with respect to the FACTA violations at issue here, begins and ends any inquiry into Congress's intent concerning J. Crew's unlawful conduct here.  "['']We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.'"  *Geisinger Cmty. Med. Ctr. v. Sec'y U.S. Dep't of Health & Human Servs.*, 794 F.3d 383, 391 (3d Cir. 2015) (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992)); *accord Wood v. J Choo USA, Inc.*, No. 15-cv-81487-BLOOM/Valle, 2016 U.S. Dist. LEXIS 106029, at *14 (S.D. Fla. Aug. 11, 2016) ("Defendant's submission that the enactment of the Clarification Act demonstrates Congress' intent to limit current recovery under FACTA . . . is untenable."); *cf. Perrone v. Gen. Motors Acceptance Corp.*, 232 F.3d 433, 439 (5th Cir. 2000) ("If Congress had meant for restitution to be the measure of actual damages [under the Truth in Lending Act], it could have easily said so in the statute.  It did not.").  Courts must avoid any proposed interpretation of a statute that might render certain portions of the statute mere "'surplusage.'"  *Tavarez v. Klingensmith*, 372 F.3d 188, 190 (3d Cir. 2004) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)); *accord Wood*, 2016 U.S. Dist. LEXIS 106029, at *14.

J. Crew would have this Court read into the Clarification Act changes to the FACTA framework that conflict with the plain language of the act and that would render meaningless key provisions of the original statute. *See Wood*, 2016 U.S. Dist. LEXIS 106029, at *15–16 ("Any argument that Congress intended to approach post-Clarification Act violations resulting from the improper truncation of a card number in a different manner than [they were treated before] defies the plain language of the statute . . . ."). For example, J. Crew impermissibly proposes that FACTA's card-number truncation requirement should "be written out of the statute"—a proposal that begs this Court to violate that most "'basic tenet of statutory construction[:] that [a text] should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another[.]'" *United States v. Gotti*, No. S5 02 CR 743 (RCC), 2004 U.S. Dist. LEXIS 3308, at *9 (S.D.N.Y. Mar. 2, 2004) (quoting *Silverman v. Eastrich Multiple Investor Fund*, 51 F.3d 28, 31 (3d Cir. 1995)).

C. Congress Intended For This Plaintiff To Sue J. Crew For Violating FACTA

Just as Congress intended for merchants like J. Crew to be held liable for the FACTA violations that occurred here, so did it intend for consumers like Plaintiff here to file lawsuits just like this one. In passing FACTA, Congress recognized that the wrongs complained of herein affect large numbers of consumers at once. The consumers who are most attentive to their receipts are both least likely to suffer huge increases in risk, and most likely to bring a class action enforcing FACTA on behalf of everyone else. Congress determined that the small increased-risk of a consumer who catches a merchant's wrongdoing is sufficient harm to grant a statutory right. It would be inappropriate for this Court to overturn Congress's determination that the risk-based harm of such a plaintiff is sufficient, as doing so would eviscerate FACTA's protective scheme. Only those who do not look at their credit card receipts—and thus cannot know they suffer a violation—would be able to bring suit. With this paradox precluding

liability, retailers would have no incentive to take up the financial costs of compliance with FACTA.

Congress intended for FACTA to include a robust "private attorney general" provision that empowers consumers, like Plaintiff, to directly seek statutory damages from merchants that willfully violate FACTA.  *See* 15 U.S.C. § 1681n(a) ("<u>Any</u> person who willfully fails to comply with <u>any</u> requirement imposed under this subchapter with respect to <u>any</u> consumer is liable to that consumer [for actual <u>or</u> statutory damages.]" (emphases added)); *Bateman*, 623 F.3d at 719 ("Congress expressly created a statutory damages scheme that intended to compensate individuals for actual or potential damages resulting from FACTA violations, without requiring individuals to prove actual harm.").

Congress acts deliberately when it includes a private attorney general clause in a statutory framework, doing so in order to increase the likelihood that violators will be held accountable for misconduct that the government lacks the resources to investigate and prosecute on a case-by-case basis.  *See* William B. Rubenstein, *On What A "Private Attorney General" Is—And Why It Matters*, 57 Vand. L. Rev. 2129, 2151 (2004) ("[I]n the securities field, for example, . . . the SEC itself has repeatedly acknowledged that private litigation enables a level of compliance that would be impossible to achieve if enforcement were limited to the government." (internal ellipsis, quotation marks, and citation omitted)); *see also Jacobson v. Healthcare Fin. Servs.*, 516 F.3d 85, 91 (2d Cir. 2008) (The Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, "enlists the efforts of sophisticated consumers [to act] as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others."); *Perrone*, 232 F.3d at 436–37 ("The caselaw confirms that statutory damages may be imposed as a means to encourage private attorneys general to police disclosure

13

compliance even where no actual damages exist. . . .   Few if any [Truth in Lending Act] plaintiffs have proven or can prove actual damages." (internal quotation marks and citation omitted)).[12]

When, as with FACTA, the harm stemming from the violation of a statutory right is likely to be difficult to prove quantifiably, Congress crafts the statute's private attorney general provision so as to encourage private lawsuits by affected consumers, regardless of their ability to prove actual damages.  *See* 15 U.S.C. § 1681n(a)(1)(A) (permitting consumers to directly sue FACTA violators for actual <u>or</u> statutory damages); *see also, e.g.*, Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607(a)–(b), -(d)(2) (homebuyers exposed to kickbacks or fee-splitting between mortgage loan servicers can sue for statutory damages regardless of proof of actual damages).

Congress carefully considers which types of harm must be addressed by a statute containing an especially robust private attorney general provision.  *Compare, e.g.*, RESPA, 12 U.S.C. § 2605(a)–(c), -(f)(1) (homebuyers must have proof of actual damages in order to sue loan servicers for technical violations in statutorily mandated informational letters), *with* RESPA, 12 U.S.C. § 2607(d)(2) (no proof of actual damages required when homebuyers sue over kickbacks or fee-splitting); *see also Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 759 (3d Cir. 2009) ("The plain language of RESPA section [2607] does not require plaintiffs to allege an overcharge [stemming from the kickback scheme].  The best indication of Congress's

---

[12]   As Judge Posner put it, "[s]tatutory damages are in effect bounties—means of inducing private persons to enforce a regulatory law." *Redman*, 768 F.3d at 627 (discussing FACTA's statutory framework).   The "general policy behind statutory damages provisions" is that plaintiffs whose substantive statutory rights have been violated do not need to "present[] evidence of actual damages to redress an injury in fact for standing purposes," as "'[s]tatutory damages . . . are reserved for cases in which the damages caused by a violation are small or difficult to ascertain.'" *Fancaster, Inc. v. Comcast Corp.*, No. 08-cv-2922 (DRD), 2012 U.S. Dist. LEXIS 32287, at *17–18 n.6 (D.N.J. Mar. 9, 2012) (Debevoise, J.) (quoting *Perrone*, 232 F.3d at 436).

intent in this regard is the method it prescribed for the calculation of statutory damages in section [2607]d(2)].").

In fact, Congress is <u>expected</u> "to identify intangible harms that meet minimum Article III requirements," and accordingly enact statutes that bestow upon private citizens substantive procedural rights that, when violated, automatically result in injuries in fact redressable via private litigation. *Spokeo*, 136 S. Ct. at 1549; *see also Redman*, 768 F.3d at 639 ("We are mindful that recipients of statutory damages are not being compensated for actual injury, but in effect are being paid bounties to assist in efforts to reduce identity theft. But identity theft is a serious problem, and FACTA is a serious congressional effort to combat it.").[13]

Courts have long appreciated that Congress cannot even <u>attempt</u> to resolve certain high-priority problems—such as the risk that consumers will fall prey to identity theft and credit card fraud—if it cannot incentivize private individuals to take the lead in enforcing violations of statutorily created rights as soon as those violations occur. *See Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 954 (7th Cir. 2006) (Consumer subjected to FCRA violations "did not accept compensation to put herself in the way of injury—though 'testers,' who do this in housing and employment litigation, usually are praised rather than vilified.") (citing, *inter alia*, *Havens Realty*, 455 U.S. at 374–75 (Article III standing for "tester plaintiff" in housing discrimination action)); *see also Spokeo*, 136 S. Ct. at 1553 (Thomas, J., concurring) ("A plaintiff seeking to

---

[13] FACTA's private attorney general framework is particularly well balanced. A consumer cannot prosecute a statutory-damages-only suit against a merchant unless he can prove that the merchant's violations were willful, while a consumer with proof of actual damages need only show that the violations were due to negligence. *Cf. Redman*, 768 F.3d at 627 (comparing 15 U.S.C. § 1681n(a)(1)(A) (civil liability for willful noncompliance), with 15 U.S.C. § 1681o (civil liability for negligent noncompliance)).

vindicate a statutorily created private right need not allege actual harm beyond the invasion of that private right.") (citing, *inter alia*, *Havens Realty*).[14]

Endorsing J. Crew's proposed misapplication of *Spokeo* (and of all preceding standing jurisprudence) would not only undermine FACTA and the Congressional intent behind—it would also "jeopardize[] the breadth of many laws whose enforcement is likewise premised on suits by classes of persons whom the proscribed conduct has a tendency to injure, regardless of proof of consequential damages."  Case Comment, *Spokeo, Inc. v. Robins*, 130 Harv. L. Rev. 437, 446 (2016) (listing as examples the Copyright Act of 1976, 17 U.S.C. § 504(a), -(c); the Credit Repair Organizations Act, 15 U.S.C. § 1679g(a); the Electronic Fund Transfer Act, 15 U.S.C. § 1693m(a); and the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227(b)(3)).

D.  <u>FACTA Violations Necessarily Implicate Traditional Privacy Rights</u>

J. Crew also continues to argue that its FACTA violations do not implicate the sort of traditional Anglo-American legal concepts of which *Spokeo* demands recognition.  (Defs.' Br. at 9).  Respectfully, the only way to arrive at this conclusion is to misread *Spokeo* and ignore longstanding precedent from both American and English courts.

As *Spokeo* explains, a plaintiff who has suffered an "intangible harm" as a result of the violation of a statutory right enjoys Article III standing so long as there is some "<u>relationship</u> to a

---

[14]  Congress similarly acts within its authority when, as with FACTA, it employs a flat-rule prohibition as a means of deterring conduct resulting in risk-based harm that is difficult to trace or quantify.  *See, e.g.*, Section 16(b) of the Securities Exchange Act of 1934 (codified at 15 U.S.C. § 78p(b)) (per se ban on corporate insiders engaging in short-swing trading); *Reliance Electric Co. v. Emerson Electric Co.*, 404 U.S. 418, 422 (1972) (discussing Section 16(b)) ("[C]ourts have recognized that the only method Congress deemed effective to curb the evils of insider trading was <u>a flat rule</u> taking the profits out of a <u>class of transactions</u> in which the <u>possibility of abuse was believed to be intolerably great</u>. . . .  In order to achieve its goals, Congress chose a relatively <u>arbitrary rule capable of easy administration</u>.") (emphases added) (internal quotation marks and citation omitted), *quoted in Donoghue v. Bulldog Investors Gen. P'ship*, 696 F.3d 170, 174 (2d Cir. 2012).

harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 136 S. Ct. at 1549 (emphasis added) (citing *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 775–77 (2000)); *accord Nickelodeon II*, 827 F.3d at 273.  This language sets a low threshold; statutes targeting ills of the modern era are not deemed unrelated to traditional law merely because they lack an exact historical analog.  *See Carney v. Goldman*, No. 15-260-BRM-DEA, 2016 U.S. Dist. LEXIS 177087, at *12 (D.N.J. Dec. 22, 2016) (Martinotti, J.) (FDCPA plaintiff enjoys Article III standing under traditional-law analysis because "<u>Congress</u> has long provided plaintiffs with the right to seek redress from debt collectors . . . ." (emphasis added)) (citing *Nickelodeon*, 827 F.3d at 274).

The purpose of this low threshold of harm is to ensure that the courts are not drawn into unfolding legislative skirmishes—it is not meant to bar claims by private plaintiffs whose own, established statutory rights have been violated.  *See Coleman v. Miller*, 307 U.S. 433, 460–64 (1939) (Frankfurter, J.) (no standing for Kansas state legislators attempting to use courts to block passage of a bill); *see also Vt. Agency of Natural Res.*, 529 U.S. at 774 ("Article III's restriction of the judicial power to 'Cases' and 'Controversies' is properly understood to mean 'cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process.'" (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998))).

As President Bush made clear when signing FACTA into law, Congress "was 'acting to protect <u>individual privacy</u>.'"  *Creative Hospitality Ventures, Inc. v. U.S. Liab. Ins. Co.*, 655 F. Supp. 2d 1316, 1333 (S.D. Fla. 2009) ("*Creative Hospitality I*") (quoting Statement by President George W. Bush Upon Signing H.R. 2622, 39 Weekly Comp. Pres. Doc. 1746, 1757 (Dec. 4, 2003)) (emphasis added) (internal brackets omitted); *see Creative Hospitality Ventures, Inc. v. U.S. Liab. Ins. Co.*, No. 08-22302-CIV-ZLOCH, 2011 U.S. Dist. LEXIS 156271, at *16 (S.D. Fla. Mar. 23, 2011) ("*Creative Hospitality II*") ("Here, the source of the [consumer's] right to

privacy is the FACTA, a federal statute which endeavors to protect consumer privacy. This statute could be recognized to protect a secrecy interest . . . . Thus, the [consumer's] Complaint can fairly be read to allege a violation of a right of privacy, by alleging [the merchant] violated the FACTA." (citation omitted)).[15]

English and American courts have long recognized that an individual citizen's expectation of privacy under the law extends to his or her personal financial information, and that merchants that gain access to such information in the course of business assume a duty to protect this information from being compromised through careless disclosure. *See McGuire v. Shubert*, 722 A.2d 1087, 1090 (Pa. Super. Ct. 1998) (citing, *inter alia*, *Tournier v. Nat'l Provincial & Union Bank of Eng.*, (1923) 1 K.B. 461; *Peterson v. Idaho First Nat'l Bank*, 367 P.2d 284, 290 (Idaho 1961)) (Anglo-American law places banks and their employees under implied contractual duty to ensure secrecy of customers' account information).[16]

The law imposes such obligations on the merchant because of its position of power relative to that of the consumer. *See Djowharzadeh v. City Nat'l Bank & Trust Co. of Norman*, 646 P.2d 616, 619 (Okla. Civ. App. 1982) (citing *Peterson*) (The consumer's "intimate, private information is not furnished to any bank official lightly, nor, strictly speaking, voluntarily.

---

[15]   J. Crew incorrectly argues that the *Creative Hospitality* litigation concluded with a finding that FACTA does not implicate traditional privacy rights. (Defs.' Br. at 9–10 (citing *Creative Hospitality Ventures, Inc. v. U.S. Liab. Ins. Co.*, 444 F. App'x 370, 376 (11th Cir. 2011) ("*Creative Hospitality III*"))). In reality, the *Creative Hospitality* decisions—which did not address Article III standing—focused on the narrow question of whether a FACTA violation constituted "publication" under the terms of merchants' liability insurance policies; the *Creative Hospitality* courts presumed that, at a fundamental level, "the FACTA violations at issue constituted a violation of a person's right to privacy." *Creative Hospitality III*, 444 F. App'x at 375 n.6. Similarly, the court in *Whole Enchilada, Inc. v. Travelers Prop. Cas. Co. of Am.*, 581 F. Supp. 2d 677 (W.D. Pa. 2008) (cited by J. Crew at Defs.' Br. at 10), was only focused on the narrow question of whether a FACTA violation amounted to "publication" for the purposes of the merchant's liability policy. *Id.* at 699.

[16]   As *McGuire* noted, numerous American jurisdictions have recognized the consumer-protection duty first articulated in *Tournier*. *See McGuire*, 722 A.2d at 1090 (listing decisions from Florida, Indiana, Maryland, New York, Minnesota, and Idaho).

Rather, the borrower is compelled to disclose the information.  The delicately balanced relationship thus temporarily created is not, in ordinary cases, one composed of equals because of the inordinate power of the bank.  The precarious position of the borrower and the relative superior position of the bank mandates there be a counterbalancing special duty imposed on the part of the bank.").

FACTA merely represents a new facet of the well-established, yet ever-evolving, body of Anglo-American law addressing personal financial security in a consumer society.  Nor is FACTA's connection to traditional concepts of invasion of privacy tenuous, merely because the statute targets modern problems.  Again, the key historical inquiry for Article III standing purposes is whether the statute protects an individual right that simply has some connection to a class of rights already recognized at law.  *See Spokeo*, 136 S. Ct. at 1549 (Courts must "consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts."); *Vt. Agency of Natural Res.*, 529 U.S. at 774 ("[A]s we have said elsewhere, Article III's restriction of the judicial power to 'Cases' and 'Controversies' is properly understood to mean 'cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process.'" (quoting *Steel Co.*, 523 U.S. at 102)).

**II.      J. Crew's Willful Misconduct Did Not "Barely" Violate FACTA**

J. Crew's conduct did not "barely" violate FACTA.  It put a bullet in it.  Recognizing that printing the first six digits of the credit card number on a credit receipt brings about an unacceptable risk of identity theft, Congress codified that harm with statutory damages.  As a single merchant can put thousands of consumers at risk, Congress's regulatory regime depends on Congress's codification of the risk-based harm into statutory damages.  The individual court determinations demanded by J. Crew are a paradox intended to frustrate Congress's intent—

those most likely to represent the class and bring suit are those who caught the receipt violation and are thus least likely of having the risk they were exposed to manifest into actual harm.

To the contrary, Congress has <u>twice</u> expressly stated that merchants like J. Crew will be held liable for violating FACTA for J. Crew's exact conduct.  *See* Clarification Act §§ 2(a)(2)–(3), -(6), 3(a), 122 Stat. at 1565–66.  FACTA thus does not fall within the class of statutes that, as the *Spokeo* Court hypothesized, might be susceptible to "bare procedural violation[s] divorced from any concrete harm."  *Spokeo*, 136 S. Ct. at 1549–50.

As Third Circuit courts have explained in both pre-and post-*Spokeo* decisions, whenever a defendant's conduct has exposed a consumer to the "precise[]" risk-based harm "which the statute was intended to guard against," the consumer has automatically suffered an injury in fact, even if the harm is an unquantifiable one.  *Blaha v. First Nat'l Collection Bureau, Inc.*, No. 16-cv-2791 (WHW)(CLW), 2016 U.S. Dist. LEXIS 157575, at *23 (D.N.J. Nov. 10, 2016) (Walls, J.) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373 (1982) (Injury in fact "may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing."));  [17] *see Alston*, 585 F.3d at 763 ("Certainly, the fact that plaintiffs' injury is non-monetary is not dispositive.  A plaintiff need not demonstrate that he or she suffered actual monetary damages, because 'the actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing.'" (quoting *Havens Realty*, 455 U.S. at 373)).

"The right Congress sought to protect in enacting [FACTA] was therefore not merely procedural, but substantive and of great importance."  *Blaha*, 2016 U.S. Dist. LEXIS 157575, at *23; *see Guarisma v. Microsoft Corp.*, No. 15-cv-24326-ALTONAGA/O'Sullivan, 2016 U.S. Dist. LEXIS 97729, at *11–12 (S.D. Fla. July 26, 2016) (Article III standing for FACTA

---

[17]  *Accord Carney*, 2016 U.S. Dist. LEXIS 177087, at *12 (discussing and relying upon *Blaha*).

plaintiff where merchant printed more than last five digits of card number); *Altman v. White House Black Mkt., Inc.*, No. 1:15-cv-2451-SCJ, 2016 U.S. Dist. LEXIS 92761, at *11–21 (N.D. Ga. July 13, 2016) (same).[18]

FACTA's card-number truncation requirement does "not operate in a vacuum," but rather "serves to protect a consumer's concrete interested in avoiding [credit card fraud], a core object of [FACTA]." *Strubel v. Comenity Bank*, 842 F.3d 181, ___, No. 15-528-cv, 2016 U.S. App. LEXIS 21032, at *17 (2d Cir. Nov. 23, 2016) (internal brackets, quotation marks, and citation omitted) (confirming Article III standing of consumer alleging that credit card company violated substantive procedural requirements of the Truth in Lending Act); *see* Clarification Act, §§ 2(a)(2)–(3), -(6), 122 Stat. at 1565 (stressing importance of FACTA's card-number truncation requirement).

A corporation's violation of FACTA subjects the affected consumer to "concrete" risk-based harm "as soon as" the violation occurs. *Guarisma*, 2016 U.S. Dist. LEXIS 97729, at *11 (emphasis added); *see also, e.g.*, *Natural. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 710 F.3d 71, 80–84 (2d Cir. 2013) (Article III standing where defendant allowed soap possibly containing carcinogens to enter the marketplace, even though plaintiffs were aware of this potential risk and could easily avoid using the soap in question). Plaintiff is "not required to allege 'any additional harm' to demonstrate the concrete injury necessary for standing." *Strubel*, 2016 U.S. App. LEXIS 21032, at *17 (quoting *Spokeo*, 136 S. Ct. at 1549 (emphasis original)).

In contrast to the harms at issue here and in cases including *Strubel*—where Congress identified a clear risk of harm and codified it into a statutory right—J. Crew relies on precedent where Congress has performed no such assessment. (Defs.' Br. at 13–14 (citing *Braitberg v. Charter Commc'ns, Inc.*, 836 F.3d 925 (8th Cir. 2016))). Where Congress has not performed a

---

[18]  *Accord Flaum v. Doctor's Assocs., Inc., d/b/a Subway*, No. 16-61198-CIV-ALTONAGA/ O'Sullivan, 2016 U.S. Dist. LEXIS 169130, at *11–12 (S.D. Fla., Aug. 29, 2016).

risk-of-harm assessment and codified that risk of harm into statutory rights, the alleged harms may be "speculative or hypothetical"—and thus insufficient to confer Article III standing upon the plaintiff.  *See Braitberg*, 836 F.3d at 929–31 (no Article III standing for plaintiff alleging ex-cable provider failed to his destroy customer information, in violation of Cable Communications Policy Act); *see also* Br. of Pl.-Appellant at 6, *Braitberg*, No. 14-1737 (8th Cir. May 20, 2014) (acknowledging that Congress was not concerned about any specific, known privacy-invasion threat when it passed Cable Communications Policy Act).

A.  Data Breach Cases are Inapposite

Similarly, in *Reilly v. Ceridian Corp.*, 664 F.3d 38 (3d Cir. 2011), the Third Circuit denied Article III standing for alleged victims of data breaches, which have not been the subject of Congressional investigation and legislation.  *Id.* at 41–46; *but see Galaria v. Nationwide Mut. Ins. Co.*, Nos. 15-3386/3387, 2016 U.S. App. LEXIS 16840, at \*9–13 (6th Cir. Sept. 12, 2016) (confirming Article III standing of data-breach victims).[19]  However, in *Nickelodeon II* the Third Circuit notably rejected the lead defendant's request to apply *Reilly* in cases that, like Plaintiff's here, involve the violations of <u>Congressionally granted</u> statutory rights.  *Compare* Br. of Appellee Viacom Inc. at 13, *Nickelodeon II*, No. 15-1441 (3d Cir. June 15, 2015) (citing *Reilly*), *with Nickelodeon II*, 827 F.3d at 267, 272–74 (no reference to *Reilly*; Article III standing affirmed for plaintiffs alleging violations of, among other laws, the federal Video Privacy Protection Act).

---

[19]  The plaintiffs in *Reilly* and other similar cases do not rely on Congressional determinations of harm, but instead attempt to weave a theory of harm by alchemizing the FCRA's mandate to institute "reasonable procedures" for the "furnishing of consumer reports" into a requirement to implement specific computer data security.  15 U.S.C. §§ 1681a(f), 1681b, 1681e; *see, e.g.*, Consol. Class Action Compl. ¶¶ 77–83, *In re Horizon Healthcare Servs., Inc. Data Breach Litig.*, No 2:13-cv-07418-CCC-JBC (D.N.J. June 27, 2014), Dkt. No. 36, *dismissed*, 2015 U.S. Dist. LEXIS 41839 (D.N.J. Mar. 31, 2015).

**III.       The Weight Of Authority Does Not Tilt In J. Crew's Favor**

J. Crew improperly mischaracterizes recent post-*Spokeo* precedent.  First, it incorrectly categorizes the Seventh Circuit's recent decision in *Meyers v. Nicolet Rest. of De Pere, LLC* as undermining Plaintiff's standing here.  (Defs.' Br. at 11–13 (citing *Meyers v. Nicolet Rest. of De Pere, LLC*, No. 16-2075, 2016 U.S. App. LEXIS 22139 (7th Cir. Dec. 13, 2016))).  *Meyers* involved the failure to redact the expiration date from a credit card receipt, and, according to the *Meyers* Court's logic, a violation of the <u>card-number</u> truncation requirement <u>does</u> give rise to an injury in fact, because Congress reiterated the necessity of this requirement in the Clarification Act.  *See Meyers*, 2016 U.S. App. LEXIS 22139, at *7–8 (citing Clarification Act, § 2(a)(6)).[20]

The *Meyers* Court's emphasis on the importance of FACTA's card-number truncation requirement, *see id.*, deflates the various district-court citations upon which J. Crew relies for the proposition that violations of this requirement somehow do not concretely harm consumers.  (Defs.' Br. at 11).  As discussed above, *see* Part I.A *supra*, the more experts learn about how credit card fraud is actually effectuated, the more obvious becomes the necessity of strict compliance with FACTA's card-number truncation requirement.

---

[20]   Plaintiff also notes that the *Meyers* Court did not have the benefit of replete briefing concerning the Article III issues in that case. In June 2016, just a few weeks after the Supreme Court issued its decision in *Spokeo*, the plaintiff in *Meyers* appealed the district court's denial of class certification; the plaintiff's standing was not in dispute as of that time.  *See* Appellant Br. of Pl.-Appellant Jeremy Meyers at 1–3, *Meyers*, No. 16-2075 (7th Cir. June 21, 2016), Dkt No. 8. The defendant, in its appellate brief, challenged the plaintiff's Article III standing, citing the recent Supreme Court decision in *Spokeo*.  *See* Br. of Def.-Appellee, Nicolet Rest. of De Pere, LLC at 1, 27–28, *Meyers*, No. 16-2075 (7th Cir. July 20, 2016), Dkt No. 11.  The plaintiff then addressed the defendant's standing challenge for the first time in its reply brief.  *See* Reply Br. of Pl.-Appellant Jeremy Meyers at 1–14, *Meyers*, No. 16-2075 (7th Cir. Aug. 3, 2016), Dkt No. 13. The Seventh Circuit, rather than remanding *Meyers* to the district court for fulsome briefing of the Article III issues in the case, instead chose to issue its decision based on an incomplete record.  *Compare Meyers*, 2016 U.S. App. LEXIS 22139, at *3–9, *with Cruper-Weinmann v. Paris Baguette Am., Inc.*, 653 F. App'x 81, 81–82 (2d Cir. 2016) (remanding FACTA case on appeal at time *Spokeo* was issued, so that district court could resolve in the first instance any Article III issues).

Second, J. Crew incorrectly argues that the four decisions confirming Plaintiff's standing here must be disregarded because they rely upon invalid precedent. (Defs.' Br. at 11, 13–14 (discussing *Altman*, *Flaum*, *Guarisma*, and *Wood*)). According to J. Crew, these well-reasoned opinions lack persuasive value because they cite in part to the Eighth Circuit's decision in *Hammer v. Sam's East, Inc.*, 754 F.3d 492 (8th Cir. 2014)—a pre-*Spokeo* decision that confirmed FACTA plaintiffs' Article III standing, but that, as J. Crew reads it, was rendered invalid by the Eighth Circuit's post-*Spokeo* decision in *Braitberg*.

*Braitberg* stands for the unremarkable proposition that a consumer lacks Article III standing to sue over a technical statutory violation that does not implicate the statute's core purpose. *See Braitberg*, 836 F.3d at 930 (no Article III standing for plaintiff alleging ex-cable provider failed to his destroy customer information, in violation of obscure provision of Cable Communications Policy Act). The *Braitberg* Court did not overturn *Hammer*—it simply explained that the plaintiff in *Braitberg* could not rely on *Hammer* to <u>automatically</u> avoid Article III scrutiny of the concreteness of the purported harm resulting from the defendant's statutory violation. *See Braitberg*, 836 F.3d at 929–30. Far from undermining the Article III standing of FACTA plaintiffs in the Eighth Circuit, *Braitberg* simply suggests that the Eighth Circuit might find it appropriate to re-confirm FACTA plaintiffs' Article III standing under *Spokeo*.

J. Crew conveniently ignores what courts have recognized as perhaps the most important takeaway from *Spokeo*: that when a statutorily granted right concerns the statute's "core object" of protecting consumers against risk-based harm—as does FACTA's card-number truncation requirement—a consumer whose statutory right has been violated is "not required to allege 'any <u>additional</u> harm' to demonstrate the concrete injury necessary for standing." *Strubel*, 2016 U.S. App. LEXIS 21032, at *17–18 (quoting *Spokeo*, 136 S. Ct. at 1549); *see Church v. Accretive Health, Inc.*, 654 F. App'x 990, 992–95 (11th Cir. 2016) (Article III standing for consumer who

24

sued over debt collector's failure to provide disclosures mandated by FDCPA), *cited with approval in Flaum*, 2016 U.S. Dist. LEXIS 169130, at *9–10 (Article III standing for FACTA plaintiff); *Wood*, 2016 U.S. Dist. LEXIS 106029, at *9–10 (same); *Guarisma*, 2016 U.S. Dist. LEXIS 97729, at *9–10 (same); *Altman*, 2016 U.S. Dist. LEXIS 92761, at *13–14 (same); *see also Blaha*, 2016 U.S. Dist. LEXIS 157575, at *23 (citing *Church*) (Judge Walls of this District confirms FDCPA plaintiff's Article III standing because "[t]he right Congress sought to protect in enacting this legislation was . . . not merely procedural, but substantive and of great importance[, and] the harm claimed by Plaintiff is precisely that which the statute was intended to guard against.").[21]

## IV.    Plaintiff Has Established All Article III Standing Requirements

J. Crew's motion argues <u>only</u> that Plaintiff has not alleged an injury in fact for failure to allege a concrete harm. (Defs.' Br. at 1–2). J. Crew does not dispute that Plaintiff has established the other elements of Article III standing, namely, that: (1) J. Crew violated

---

[21]    J. Crew additionally relies upon cases in which courts have addressed the separate question of whether the violation of a <u>state</u> statute can ever be sufficient to confer Article III standing. (Defs.' Br. at 14–15 (citing *Zia v. Citimortgage, Inc.*, No. 15-cv-23026-GAYLES, 2016 U.S. Dist. LEXIS 131349, at *23–24 (S.D. Fla. Sept. 26, 2016) (no Article III standing for plaintiff seeking statutory damages for violation of New York State mortgage-recordation statutes, because "states cannot alter the limited role of the Federal Judiciary under Article III simply by issuing to private parties who otherwise lack standing a ticket to the federal courthouse" (internal brackets, quotation marks, and citation omitted)); *Hancock v. Urban Outfitters, Inc.*, 830 F.3d 511, 512, 514 (D.C. Cir. 2016) (no Article III standing for plaintiff suing under local law prohibiting merchants from requesting consumers' zip codes at point of sale))). Notwithstanding that FACTA is a <u>federal</u> statute—and thus subject to analysis under *Spokeo*'s Congressional deference mandate—J. Crew fails to mention that courts are split on whether plaintiffs suing under the state laws in question enjoy Article III standing. *Compare Zia*, 2016 U.S. Dist. LEXIS 131349, at *23–24, *with Bellino v. JPMorgan Chase Bank, N.A.*, No. 14-cv-3139 (NSR), 2016 U.S. Dist. LEXIS 128770, at *25–28 (S.D.N.Y. Sept. 20, 2016) (Article III standing for consumers alleging violation of New York State mortgage-recordation statutes), *and Jaffe v. Bank of Am., N.A.*, No. 13-cv-4866 (VB), 2016 U.S. Dist. LEXIS 92899, at *9–12 (S.D.N.Y. July 15, 2016) (same), *and Zink v. First Niagara Bank, N.A.*, No. 13-CV-01076-RJA-JJM, 2016 U.S. Dist. LEXIS 98104, at *8–16 (W.D.N.Y. July 1, 2016) (same); *and compare Hancock*, 830 F.3d at 514, *with Fraser v. Wal-Mart Stores, Inc.*, No. 2:13-cv-00520-TLN-DB, 2016 U.S. Dist. LEXIS 144351, at *1–2, *15 (E.D. Cal. Oct. 18, 2016) (Article III standing for consumer alleging merchant violated state law prohibiting requests for zip codes at point of sale).

Plaintiff's own, particularized, legally protected interest, by printing more than five digits of his credit card number on the sales receipts at the points of sale; (2) this Court can redress J. Crew's violation of FACTA by awarding statutory and/or punitive damages as provided by the statute, *see* 15 U.S.C. § 1681n (a)(1)(A), -(2); and (3) the scourge of credit card identity theft through printed receipts presented such an actual threat that it twice merited Congressional legislation in the past 13 years.

## CONCLUSION

J. Crew asks this Court to write FACTA out of the statute books.  For the reasons set forth above, Plaintiff respectfully requests that this Court reject J. Crew's attempt to undermine *Spokeo* and the long-held standing principles it reconfirms.  In the event that this Court agrees with any part of J. Crew's motion, Plaintiff requests leave to amend so as to cure any deficiencies in the SAC.

Dated: January 12, 2017

**FRANK LLP**

By: */s/ Marvin L. Frank*
Marvin L. Frank (MF1436)
Gregory A. Frank (Pro Hac Vice)
mfrank@frankllp.com
gfrank@frankllp.com
275 Madison Avenue, Suite 705
New York, New York 10016
(212) 682-1853 Telephone
(212) 682-1892 Facsimile

**ROBERT A. SOLOMON, P.C.**
Robert A. Solomon (RS2895)
rsolomon@metrolaw.com
91 Pacific Street
Newark, NJ 07105
(973) 344-6587 Telephone
(973) 344-7604 Facsimile

**NABLI & ASSOCIATES, P.C.**
Peter Y. Lee (PL2405)
peter.lee@leeadvocates.com
Khaled (Jim) El Nabli (Not Admitted)
Jim_elnabli@nablilaw.com
60 East 42nd Street, Suite 1101
New York, New York 10165
(212) 808-0716 Telephone
(212) 808-0719 Facsimile

*Counsel for Plaintiff and the Class*