## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---------------------------------------- X
:
AHMED KAMAL, on behalf of himself and :
the putative class, : Case No. 2:15-cv-00190-WJM-MF
:
               Plaintiff, : *ELECTRONICALLY FILED*
:
        v. :
:
J. CREW GROUP, INC., et al. :
: Returnable: February 6, 2017
              Defendants. :
: ORAL ARGUMENT REQUESTED
:
---------------------------------------- X

---

### DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1) DUE TO LACK OF STANDING

---

**DLA PIPER LLP (US)**
51 John F. Kennedy Parkway, Suite 120
Short Hills, New Jersey 07078-2704
Telephone No.: (973) 520-2550
Fax No.: (973) 520-2551
*Attorneys for Defendants*

Of Counsel:
    Keara M. Gordon (admitted *pro hac vice*)
    Andrew O. Bunn

On the Brief:
    James V. Noblett
    Steven R. Marino

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................. 1

II. ARGUMENT ......................................................................................................... 2

    A. THE SOLE ISSUE BEFORE THIS COURT IS WHETHER KAMAL HAS ALLEGED A "CONCRETE" INJURY-IN-FACT ..................................... 2

    B. THE SAC SHOULD BE DISMISSED FOR LACK OF SUBJECT-MATTER JURISDICTION BECAUSE KAMAL HAS STILL NOT ALLEGED A "CONCRETE" INJURY-IN-FACT ............................................... 3

        i. Dismissal is Required for the Same Reasons this Court Articulated in its Opinion ................................................................................ 3

            1. This Court Has Already Given Congressional Intent the Appropriate Deference .................................................................. 4

            2. The Court Has Already Found that a Traditional Privacy Right is Not Implicated .................................................................. 7

            3. Kamal Has Not Alleged A Risk of Harm ...................................... 8

    C. KAMAL HAS NOT DISTINGUISHED THE WEIGHT OF AUTHORITY ................................................................................................. 10

    D. DATA BREACH DECISIONS DO NOT WARRANT FINDING STANDING TO SUE ............................................................................... 10

III. CONCLUSION .................................................................................................... 12

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Altman v. White House Black Mkt.*,
  2016 WL 3946780 (N.D. Ga. July 13, 2016)..................................................................8

*Blaha v. First Nat'l Collection Bureau, Inc., et al.*,
  No. 16-cv-2791, slip op. (D.N.J. Nov. 10, 2016)...........................................................7

*Flaum v. Doctor's Assocs., Inc. d/b/a/ Subway*,
  __ F. Supp.3d __, 2016 WL 7015823 (S.D. Fla. Aug. 29, 2016) .................................8

*Guarisma v. Microsoft Corp.*,
  __ F. Supp. 3d __, 2016 WL 4017196 (S.D. Fla. July 26, 2016) ................................8

*In re Franklin Mut. Funds Fee Litig.*,
  388 F. Supp. 2d 451 (D.N.J. 2005) ................................................................................6

*In re: Horizon Healthcare Servs., Inc. Data Breach Litig.*,
  No. 15-2309, slip op. (3d Cir. Jan. 20, 2017) ........................................................ passim

*In re: Michaels Stores, Inc. Fair Credit Reporting Act (FCRA) Litig.*,
  Nos. 14-7563, 15-2547, 15-5504, slip op. (D.N.J. Jan. 24, 2017).........................1, 5

*Meyers v. Nicolet Restaurant of De Pere, LLC*,
  843 F.3d 724 (7th Cir. 2016) .....................................................................................9, 10

*Noble v. Nevada Checker CAB Corp.*,
  No. 15-02322, 2016 WL 4432685 (D. Nev. Aug. 19, 2016) ......................................10

*Spokeo Inc. v. Robins*,
  __ U.S. __, 136 S. Ct. 1540 (2016).......................................................................... passim

*Stelmachers v. Verifone Sys.*,
  No. 14-04912, 2016 WL 6835084 (N.D. Cal. Nov. 21, 2016) ........................4, 9, 10

*Thompson v. Rally House of Kansas City, et al.*,
  No. 15-00886, slip op. (W.D. Mo. Oct. 6, 2016)............................................4, 9, 10

*Wood v. J Choo USA, Inc.*,
  __ F. Supp. 3d __, 2016 WL 4249953 (S.D. Fla. Aug. 11, 2016) ...............................8

**OTHER AUTHORITIES**

Fed R. Civ. P. 12(b)(1)........................................................................................................6

## I. INTRODUCTION

Plaintiff Ahmed Kamal argues that he has Article III standing to sue because Congress "empower[ed] consumers, like Plaintiff, to directly seek statutory damages from merchants that . . . violate FACTA." Opp'n Br. at 13. In other words, Kamal argues that the purported act by J. Crew of printing more than the last five digits of his credit card number constitutes, in and of itself, an injury-in-fact sufficient to confer him with standing to sue. Kamal's position renders meaningless the Supreme Court's decision in *Spokeo, Inc. v. Robins*, and would require a substantial extension of the Third Circuit's recent interpretation of that decision.

Whereas the Supreme Court observed that the "history and judgment" of Congress is "important," Kamal ignores that the Supreme Court *also held* that Congress cannot override the requirements of Article III:

> Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. *Article III standing requires a concrete injury even in the context of a statutory violation.*

*Spokeo Inc. v. Robins*, __ U.S. __, 136 S. Ct. 1540, 1549 (2016) (emphasis added). This Court made that distinction clear to Kamal in its Opinion granting dismissal of the First Amended Complaint ("FAC") (the "Opinion"). Opinion at 5-6.

The law has not changed. The Third Circuit recently reiterated (in a non-FACTA context) that the "Supreme Court cautioned . . . that congressional power to elevate intangible harms into concrete injuries *is not without limits*." *See In re: Horizon Healthcare Servs., Inc. Data Breach Litig., No. 15-2309*, slip op. at *24 (3d Cir. Jan. 20, 2017) (emphasis added); *see also In re: Michaels Stores, Inc. Fair Credit Reporting Act (FCRA) Litig.*, Nos. 14-7563, 15-2547, 15-5504, slip op. at *5 (D.N.J. Jan. 24, 2017) (*Spokeo* teaches . . . that the mere wave of

the Congressional hand is not enough to render an abstract injury concrete."). In fact, the Third Circuit explicitly recognized that it is "clear from *Spokeo* that there are some circumstances where the mere technical violation of a procedural requirement of a statue *cannot, in and of itself*, constitute an injury in fact." *In re: Horizon Healthcare Servs., Inc. Data Breach Litig., No. 15-2309*, slip op. at *26 (emphasis added). Thus, both the Supreme Court and Third Circuit recognize that district courts can and will identify such circumstances, and this Court correctly determined that the FAC was one of them.

For the reasons stated in J. Crew's opening brief, and for the additional reasons stated below, Kamal has not presented any new allegations in the Second Amended Complaint ("SAC") that demonstrate that, standing alone, "printing ten rather than five credit card digits on a sales receipt elevates the risk of fraud enough to work a 'concrete' injury for the purpose of Article III standing." *Id.* at 4.

## II. ARGUMENT

### A. THE SOLE ISSUE BEFORE THIS COURT IS WHETHER KAMAL HAS ALLEGED A "CONCRETE" INJURY-IN-FACT.

J. Crew's motion to dismiss raises a single, narrow issue—whether Kamal has alleged a "concrete" injury-in-fact necessary to confer standing to sue under Article III of the Constitution. Kamal's opposition contains several arguments that attempt to distract the Court from this discrete issue and that should be rejected:

- Kamal hyperbolically claims that J. Crew "seeks to write FACTA out of the statute books." Opp'n Br. at 2, 5, 26. Not true. The question here is solely whether *this plaintiff*, Ahmed Kamal, has alleged facts sufficient to comprise a "concrete" injury-in-fact. A finding that Kamal lacks standing to sue has no bearing on whether some hypothetical future plaintiff with his own unique facts will have standing to sue—*i.e.*, a plaintiff whose receipts were actually stolen or otherwise misappropriated, or who actually was the victim of fraud or identity theft.

- Kamal argues about "private attorney general" clauses in statutory schemes. *Id.* at 13-16. J. Crew does not dispute that FACTA authorizes private rights of action. The

existence of a statutory right to sue does not, however, answer the separate question of whether Kamal has Article III standing to sue.

- Kamal proffers a discussion about the policy behind statutory damages. *Id.* at 14, n. 12; *id.* at 15. Statutory damages are not implicated in the threshold issue of subject-matter jurisdiction.

- Kamal asserts that "data breach cases are inapposite." *Id.* at 22. J. Crew did not cite to or otherwise rely on data breach cases in its opening brief. J. Crew instead relied primarily on the decisions by other courts addressing this precise issue of post-*Spokeo* standing to assert a putative FACTA class action, the majority of which found that plaintiffs, like Kamal, lack standing to sue.

- Kamal cites to federal statutory schemes that are wholly distinguishable from FACTA. *Id.* at 14 (referring to the Real Estate Settlement Procedures Act); *id.* at 16, n. 14 (referring to Section 16(b) of the Securities Exchange Act of 1934); *id.* at 21 (referring to the Truth in Lending Act).

The Court should focus solely on whether the SAC cures the deficiencies identified in the Opinion as to the FAC. The SAC does not do so.

### B. THE SAC SHOULD BE DISMISSED FOR LACK OF SUBJECT-MATTER JURISDICTION BECAUSE KAMAL HAS STILL NOT ALLEGED A "CONCRETE" INJURY-IN-FACT.

#### i. Dismissal is Required for the Same Reasons this Court Articulated in its Opinion.[1]

Pursuant to *Spokeo*, there are three main considerations in assessing whether an intangible harm constitutes a "concrete" injury-in-fact: (1) the "history and judgment of Congress"; (2) "whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts"; and (3) that "Article III standing requires a concrete injury even in the context of a statutory

---

[1]   The Opinion is the centerpiece of the analysis here because neither the Third Circuit nor any other district court within the Third Circuit has addressed squarely a plaintiff's post-*Spokeo* standing to assert a FACTA claim. *See, e.g.*, *See In re: Horizon Healthcare Servs., Inc.*, No. 15-2309, slip op. at *26 ("It is nevertheless clear from *Spokeo* that there are some circumstances where the mere technical violation of a procedural requirement of a statute cannot, in and of itself, constitute an injury in fact. Those limiting circumstances are not defined in *Spokeo and we have no occasion to consider them now*.") (internal citation omitted) (emphasis added).

violation." 136 S. Ct. at 1549. This Court has already rejected Kamal's arguments as to all three considerations with respect to the FAC, and the same result is required here as to the SAC.

### 1. This Court Has Already Given Congressional Intent the Appropriate Deference.

Kamal devotes the majority of his opposition to arguing that the enactment of a statutory right to sue by Congress automatically confers him with Article III standing to sue. *See* Opp'n Br. at 15 ("Congress is expected . . . [to] enact statutes that bestow upon private citizens substantive procedural rights that, when violated, *automatically result* in injuries in fact redressable via private litigation.") (emphasis added). In other words, Kamal argues that because Congress granted him the right to sue to address purported violations of FACTA, he therefore has *per se* Article III standing to sue. Kamal is incorrect. *See* Moving Br. at 6-8.

Kamal's position is directly at odds with the Supreme Court's pronouncement that "Congress' role in identifying and elevating intangible harms *does not* mean that a plaintiff *automatically satisfies* the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo,* 136 S. Ct. at 1549 (emphasis added).[2] The Third Circuit has recognized this principle both before and after *Spokeo*. For example, prior to *Spokeo*, the Third Circuit "reject[ed] the idea" that in some cases "the violation of a statute can, by itself, cause an injury sufficient for purposes of Article III standing":

> The proper analysis of standing focuses on whether the plaintiff suffered an actual injury, not on whether a statute was violated. Although Congress can expand standing by enacting a law

---

[2] In addition to this Court, other courts that have dismissed putative FACTA class actions for lack of standing cited to this principle from *Spokeo*. *See* Opinion at 5-6; *see also Stelmachers v. Verifone Sys.*, No. 14-04912, 2016 WL 6835084, at *4 (N.D. Cal. Nov. 21, 2016); *Thompson v. Rally House of Kansas City, et al.*, No. 15-00886, slip op. at *6-7 (W.D. Mo. Oct. 6, 2016) (attached as Ex. C to the 12/15/16 Declaration of Andrew O. Bunn, Dkt. No. 68-5).

> enabling someone to sue on what was already a de facto injury to that person, *it cannot confer standing by statute alone*.

*In re: Horizon Healthcare Servs., Inc.*, No. 15-2309, slip op. at *19 (quoting *Doe v. Nat'l Bd. of Med. Exam'rs*, 199 F.3d 146, 153 (3d Cir. 1999)). Moreover, in its most recent interpretation of *Spokeo*, the Third Circuit confirmed that "congressional power to elevate intangible harms into concrete injuries *is not without limits*" and "there are some circumstances where the mere technical violation of a procedural requirement of a statute *cannot, in and of itself*, constitute an injury in fact." *Id.* at *24, 26 (emphasis added).

Indeed, in an opinion subsequent to *In re: Horizon Healthcare Services, Inc.*, Judge McNulty reiterated that "not every bare violation of a procedural right granted by statute is inherently injurious; to constitute an injury-in-fact, such a violation must result in concrete harm." *In re: Michaels Stores, Inc. Fair Credit Reporting Act (FCRA) Litig.*, Nos. 14-7563, 15-2547, 15-5504, slip op. at *5. Thus, while Kamal alleges a statutory violation, that does not excuse his obligation to allege an accompanying "concrete" injury-in-fact (which he has still failed to do). *See Spokeo*, 136 S. Ct. at 1549 ("Article III standing requires a concrete injury *even in the context of a statutory violation*.") (emphasis added).

Moreover, Congressional intent behind FACTA does not help Kamal. *See* Moving Br. at 7-8. First, it is well-established that Congress contemplated that a receipt would be first discarded, lost, stolen, or otherwise misappropriated. *Id*. While Kamal attempts to dispute this, the very "authority" he relies upon contradicts his position. Specifically, Kamal argues that "[j]ust a few weeks ago,[3] computer scientists in the United Kingdom released a study whose

---

[3] A summary of the Study was released on December 2, 2016 (Frank Decl., Ex. B), and the copyright date on the cover page of the Study is "2017" (*Id.*, Ex. A). Kamal nonetheless states that "*[t]he SAC describes* how computer scientists in the United Kingdom have just released a study . . ." Opp'n Br. at 1. The SAC makes no such reference to the Study. Nor can

results provide a startling reminder of the need to truncate card numbers" (the "Study")." Opp'n Br. at 9. Putting aside whether a study done in the United Kingdom nearly a decade-and-a-half after FACTA was passed could even be probative of Congressional intent, the Study states that "[o]nce the issuing bank is known"—*i.e.*, the first six digits of the credit card number—"the attacker can increase the probability of guessing" the remaining digits of the card number. Ex. A to the Declaration of Marvin Frank ("Frank Decl."), Dkt. No. 69-2, at 5. But, in order for the attacker to know the cardholder's issuing bank and then use that information to his or her advantage, *it necessarily follows that the attacker would have to obtain or see the cardholder's receipt* that contains the first six digits of the cardholder's credit card number. The SAC does not include any allegation that any of Kamal's receipts were lost, misplaced or stolen, or were ever in the possession of or seen by an unauthorized third party. *See* Moving Br. at 1, 3, 9. Thus, the Study is wholly inapposite to Kamal's situation because the attackers hypothesized in the Study never had—and never will have—access to the alleged non-compliant receipts *in Kamal's possession*.

Second, as this Court recognized, it is well-established that Congress sought to prevent consumers from suffering "actual" harm. *See* Opinion at 6; Moving Br. at 8. Kamal argues that "whenever a defendant's conduct has exposed a consumer to the 'precise[]' risk-based harm 'which the statute was intended to guard against,' the consumer has automatically suffered an injury in fact, even if the harm is an unquantifiable one." Opp'n Br. at 20 (quoting *Blaha v. First*

---

it, as the SAC was filed on November 17, 2016 (Dkt. No. 65), weeks before the Study was released. Because the Study was not referenced in or attached to the SAC, it is improper for consideration in connection with a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1). *See In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d 451, 459-60 (D.N.J. 2005) (Martini, J.) ("'In reviewing a facial attack [on subject matter jurisdiction], the court must only consider the allegations of the complaint and documents referenced therein and attached thereto . . . .'") (quoting *Gould Elecs. Inc. v. U.S.*, 220 F.3d 169, 176 (3d Cir. 2000)). Even if this Court does consider the Study, it is consistent with J. Crew's arguments in support of dismissal.

*Nat'l Collection Bureau, Inc., et al.*, No. 16-cv-2791, slip op. at 16 (D.N.J. Nov. 10, 2016)). *Blaha* is distinguishable because it involves a violation of the Fair Debt Collection Practices Act ("FDCPA"), and the risk-based harm underlying FDCPA is not the same as FACTA. *See Blaha*, slip op. at *15 ("Congress enacted the FDCPA as a result of 'abundant evidence of the use of abusive, deceptive, and unfair debt collection practices' . . . .) (quoting 15 U.S.C. § 1692(b)).[4] However, even if that principle could be applied to FACTA, the risk-based harm that FACTA was intended to protect against was actual harm—*i.e.*, "an increased risk of suffering fraud or identity theft sometime in the future." Opinion at 3. Kamal is simply not a plaintiff who can demonstrate that he suffered or will suffer an actual or imminent risk of fraud or identity theft. (*Id.* at 6) ("Not all violations of FACTA 'cause harm or present any material risk of harm.'") (quoting *Spokeo*, 136 S. Ct. at 1550).

### 2. The Court Has Already Found that a Traditional Privacy Right is Not Implicated.

This Court has already found that "[w]hile FACTA as a whole may implicate traditional privacy interest, *Plaintiff's alleged injury does not*." Opinion at 6 (emphasis added); *see also* Moving Br. at 9-10. There is no basis for this Court to reconsider that finding.

The Supreme Court stated in *Spokeo* that "[i]n determining whether an intangible harm constitutes injury in fact . . . . it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a

---

[4] Based on the Congressional intent underlying the FDCPA, this Court found in *Blaha* that "[t]he right Congress sought to protect in enacting *this legislation* was therefore not merely procedural, but substantive and of great importance." *Blaha*, No. 16-cv-2791, slip op. at 16 (emphasis added). Kamal quotes this sentence from *Blaha*, but erroneously substitutes "this legislation" with "FACTA." Opp'n Br. at 20.

The only courts to find FACTA conferred a "substantive" rights are those within the 11th Circuit, and this Court already declined to find that those decisions were persuasive authority. *See* Moving Br. at 10-14.

lawsuit in English or American courts." *Spokeo*, 136 S. Ct. at 1549. In addition to this Court, the four courts that dismissed similar putative FACTA class action lawsuits implicitly declined to find that the plaintiff's injury implicated a "traditional" privacy right. Moreover, the district courts within the Eleventh Circuit that did finding standing to sue did not engage in this analysis because they side-stepped *Spokeo*'s analytical framework—i.e., they found that FACTA implicated a "substantive" right to sue and did not go down the "procedural" violation route in *Spokeo*. *See* Moving Br. at 11-12. Accordingly, the term "traditional privacy" interest is also absent from those decisions. *See Flaum v. Doctor's Assocs., Inc. d/b/a Subway*, __ F. Supp. 3d __, 2016 WL 7015823 (S.D. Fla. Aug. 29, 2016) (no reference to "traditional privacy" interests); *Wood v. J Choo USA, Inc.*, __ F. Supp. 3d __, 2016 WL 4249953 (S.D. Fla. Aug. 11, 2016) (same); *Guarisma v. Microsoft Corp.*, __ F. Supp. 3d __, 2016 WL 4017196 (S.D. Fla. July 26, 2016) (same); *Altman v. White House Black Mkt.*, 2016 WL 3946780 (N.D. Ga. July 13, 2016) (same). As a result, no post-*Spokeo* court has found that the harm alleged by a plaintiff in a FACTA lawsuit implicates "traditional privacy" interests.

Kamal simply cannot overcome this Court's finding that "[t]he purpose of credit card truncation is to limit incremental risk of fraud or identity theft, not safeguard one's freedom for 'injurious disclosure[] as to private matters' or 'intrusion upon the domestic circle' or some other traditional privacy interest." Opinion at 4 (alteration in original) (citations omitted).

### 3. Kamal Has Not Alleged A Risk of Harm.

The only allegations in the SAC regarding a risk of harm are the following conclusory statements repeated in three separate paragraphs of the SAC: "The printing of the first six digits, in violation of FACTA, also created a real risk of identity theft, which further harmed Plaintiff." SAC at ¶¶ 99, 101, 103. Despite the passage of more than two years since he received the purported non-compliant receipts, Kamal cannot allege that they were lost, misplaced or stolen,

or were ever in the possession of or seen by an unauthorized third party. *See* Moving Br. at 1, 3, 9. The omission of such allegations is critical because it was an important factor in dismissing the FAC:

> There is no evidence that anyone has accessed or attempted to access or will access Plaintiff's credit card information. Nothing has been disclosed to third parties. Nor does the record indicate that anyone will *actually* obtain one of Plaintiff's discarded J. Crew receipts, and—through means left entirely to the Court's imagination—identify the remaining six digits of the card number and then proceed undetected to ransack Plaintiff's Discover account.

Opinion at 5 (emphasis in original) (citations omitted). The absence of such allegations was also an important factor in the decisions by other courts finding that a plaintiff did not have standing to assert a putative FACTA class action:

| Case Name | Lack of Allegations |
|---|---|
| *Meyers* | "Nor has the violation created any appreciable risk of harm. After all, [the plaintiff] discovered the violation immediately and nobody else ever saw the non-compliant receipt. In these circumstances, it is hard to image how the expiration date's presence could have increased the risk that [the plaintiff's] identity would be compromised." *Meyers v. Nicolet Restaurant of De Pere, LLC* , 843 F.3d 724, 727 (7th Cir. 2016). |
| *Stelmachers* | "…Plaintiff alleges he, and no one else, received the receipt containing more than the last five digits of his credit card number. Thus, unless a litany of speculative events come about, the risk that Plaintiff will be subjected to the type of 'low tech' identity theft identified in the [complaint] is too attenuated to constitute a qualifying injury in fact for standing . . . ." 2016 WL 6835084, at *4. |
| *Thompson* | "[Plaintiff] does not allege the receipt was ever seen by anyone besides himself and Defendants' employee handling the transaction. The receipt was not lost or otherwise missing from Plaintiff's possession at any time."   No. 15-00886, slip op. at *3. |
| *Noble* | No allegations in the First Amended Class Complaint that the receipt(s) at issue were ever lost, stolen, or otherwise misappropriated. *See* Ex. A to 1/26 Declaration of Andrew O. Bunn. |

### C.  KAMAL HAS NOT DISTINGUISHED THE WEIGHT OF AUTHORITY.

Kamal does not even address or attempt to distinguish three of four FACTA decisions in which other courts found no standing to sue.[5]  *Stelmachers*, 2016 WL 6835084; *Thompson*, No. 15-00886, *Noble v. Nevada Checker CAB Corp.*, No. 15-02322, 2016 WL 4432685 (D. Nev. Aug. 19, 2016).  Instead, Kamal addresses only the Seventh Circuit's opinion in *Meyers v. Nicolet Restaurant of De Pere, LLC*.  Opp'n Br. at 23.  His attempts to distinguish *Meyers* are unavailing.

Kamal first criticizes the Seventh Circuit because "rather than remanding *Meyers* to the district court for the fulsome briefing of the Article III issues in the case, [it] instead chose to issue its decision based on an incomplete record."  *Id.*  The procedural determinations made by the Seventh Circuit do not weaken its substantive holding.  Kamal next claims that "according to the *Meyer* Court's logic, a violation of the <u>card-number</u> truncation requirement <u>does</u> give rise to an injury in fact."  *Id.* (emphasis in original).  That is not true.  Although *Meyers* addressed the alleged printing of credit card expiration dates, the technical nature of the alleged FACTA violation is immaterial because, as stated above, the Seventh Circuit reasoned that "nobody else ever saw the non-compliant receipt."  *Meyers*, 843 F.3d at 727.  As a result, the logic in *Meyers* also applies to card numbers and mirrors the reasoning in the Opinion.

### D.  DATA BREACH DECISIONS DO NOT WARRANT FINDING STANDING TO SUE.

Kamal argues that "data breach cases are inapposite."  Opp'n Br. at 22.  As a factual matter, J. Crew agrees that data breach cases are distinguishable.

---

[5]  Kamal instead focuses on advocating in favor of the district court decisions in the Eleventh Circuit that found standing to sue.  Opp'n Br. at 23-25.  This Court has already rejected the line-of-reasoning in those decisions, and J. Crew incorporates by reference its analysis of those decisions from its moving brief.  *See* Moving Br. at 12-14.

Data breach cases inherently involve the unauthorized *disclosure* of information to a third party. For example, in *In re: Horizon Healthcare Services, Inc. Data Breach Litigation*, laptops "containing the unencrypted personal information of the named Plaintiffs . . . were stolen from Horizon's headquarters." *In re: Horizon Healthcare Servs., Inc.*, No. 15-2309, slip op. at *6. The Third Circuit concluded that underlying theft—*i.e.* disclosure to an unauthorized third party—was sufficient to confer standing even in the absence of any allegation that the plaintiffs' information was actually used by the thieves. *Id.* at *4 ("the alleged *disclosure* of their personal information created a *de facto* injury.").

In this case, in contrast, Kamal does not allege that the extraneous card numbers allegedly printed on his receipts were ever *disclosed* to unauthorized third parties—the receipts remained in his possession, custody, or control at all times. *See* Moving Br. at 9-10 ("'In sum, providing a customer a contemporaneous record of a retail transaction involves no dissemination of information to the general public . . . .") (quoting *Creative Hosp. Ventures, Inc. v. U.S. Liab. Ins. Co.*, 444 F. App'x 370, 376 (11th Cir. 2011)). This Court recognized that disclosure distinction and used it as a *further basis* to demonstrate that Kamal had not alleged an actual or imminent risk of harm—without an underlying disclosure, Kamal's "injury would be further removed" from the risk of harm in a data breach context. Opinion at 5.

Accordingly, Kamal's standing to sue does not rise or fall based on standing decisions in the data breach context, which are distinguishable because Kamal's credit card information is not alleged to have been disclosed to an unauthorized third party. To date, six district courts and one circuit court have addressed the precise issue before this Court, and those decisions provide persuasive authority by which the allegations in the SAC should be adjudged. Unfortunately for

Kamal, the majority of those decisions confirm that he does not have standing to sue in this Court.

## III. CONCLUSION

In the absence of any allegations that the alleged non-compliant receipts have been—or ever will be—discarded, lost, stolen, or otherwise misappropriated, this is one of the circumstances in which a plaintiff does not have post-*Spokeo* standing to sue. The SAC should be dismissed.

Respectfully submitted,

**DLA PIPER LLP (US)**

s/ Andrew O. Bunn

| | |
|---|---|
| Andrew O. Bunn | Keara M. Gordon (admitted *pro hac vice*) |
| James V. Noblett | DLA Piper LLP (US) |
| Steven R. Marino | 1251 Avenue of Americas |
| DLA Piper LLP (US) | New York, New York 10020-1104 |
| 51 John F. Kennedy Parkway, Suite 120 | Telephone: (212) 335-4632 |
| Short Hills, New Jersey 07078-2704 | Facsimile: (212) 884-8632 |
| Telephone: (973) 520-2562 | *Attorneys for Defendants* |
| Facsimile: (973) 520-2582 | |
| *Attorneys for Defendants* | |

Dated:  January 26, 2017